**BAKER & HOSTETLER LLP**
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri Sakaue, SBN 301043
1900 Avenue of the Stars Suite 2700
Los Angeles, CA 90067-4301
Telephone:  310.820.8800
Facsimile:   310.820.8859
Email:      *mkane@bakerlaw.com*
            *abeverlin@bakerlaw.com*
            *ksakaue@bakerlaw.com*

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone:  415.659.2600
Facsimile:   415.659.2601
Email:      *sjkim@bakerlaw.com*

Attorneys for Defendant
MCLANE FOODSERVICE, INC.

## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN OROZCO MADERO and ESTEBAN OROSCO on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MCLANE FOODSERVICE, INC., a Texas Corporation, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 5:24-cv-00073-KK-DTB<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT [DKT. #90]**<br><br>**Date:     September 19, 2024**<br>**Time:     9:30 a.m.**<br>**Ctrm:     3 (Riverside)**<br>**Judge:    Hon. Kenly Kiya Kato** |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# RESPONSE TO STATEMENT OF GENUINE DISPUTES
# OF MATERIAL FACT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56-3, Defendant McLane Foodservice, Inc. ("MFS") submits the following Response to Plaintiffs' Statement of Genuine Disputes of Material Fact[1] (the "Statement") [Dkt. #90] filed by Plaintiffs in support of their Opposition [Dkt. #89] to MFS's Motion for Partial Summary Judgment on Applicability of the FLSA's Motor Carrier Act Overtime Exemption to the Named Plaintiffs (the "MPSJ") [Dkt. #83]:

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 1.    McLane Foodservice, Inc. ("MFS") is a nationwide foodservice distributor.[2] | Undisputed. However, this is not a material fact. |
| 2.    MFS maintains a nationwide network of distribution centers ("DCs), one of which is located in Riverside, CA (the "Riverside DC"). | Undisputed. However, this is not a material fact. |
| 3.    MFS's customers supplied from the Riverside DC are (1) national restaurant chains or their affiliated cooperative purchasing entity ("Chain Customers"), including but not limited to Chick-Fil-A ("CFA"), Kentucky | Undisputed. However, this is not a material fact |

[1] Plaintiffs' Statement contains a paragraph suggesting that they only responded to UF 1-49 and then added "additional material facts and supporting evidence" thereafter.  Dkt. #90 at 1:5-8. However, Plaintiffs' Statement responds to MFS's UF 1-108 and does not include any "additional material facts."  As such, it appears that this statement was inadvertently included in Plaintiffs' Statement.

[2] Pursuant to L.R. 56-2, Plaintiffs were required to include in the left-hand column of their Statement all of MFS's uncontroverted facts "in the same order, using the same numbers, and with all citations to the supporting evidence identified by the moving party."  L.R. 56-2 (emph. added).  Plaintiffs did not include "all citations to the supporting evidence identified by the moving party."  *See* Dkt. #90.  As such, their Statement of Genuine Disputes does not comply with the Local Rules.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Fried Chicken, Long John Silvers, A&W, Taco Bell, Pizza Hut, and Buffalo Wild Wings ("BWW"), and (2) those chains' respective affiliated franchisee and corporate-owned restaurant locations ("Restaurant Customers"). | |
| 4.    MFS procures and distributes food, produce, supplies, and promotional and other items on behalf of its Chain Customers to sell and distribute them to their affiliated Restaurant Customers throughout the country. | Undisputed that McLane distributes food, produce, supplies and promotional and other items for sale and distribution. Disputed that McLane does this "on behalf of its Chain Customers." |

**4.    Moving Party's Response**

Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement.   Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."  L.R. 56-2 (emph. added).  As such, Plaintiffs have failed to properly dispute this fact.  *See, e.g.*, *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

| | |
|---|---|
| 5.    During the time period of January 2021 through the present, MFS has distributed and delivered products from the Riverside DC to Restaurant Customers in California, Arizona, Nevada and Utah. | Undisputed. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 6.    MFS operates under national distribution agreements with each of its Chain Customers to supply and distribute proprietary and non-proprietary food, produce, supplies, promotional items, and other products to their discrete populations of affiliated Restaurant Customers. | Undisputed that MFS has some distribution agreements.

[1] Disputed as to "each of its Chain Customers" statement because MFS only disclosed a sampling of these agreements.

[2] Disputed to the extent that this statement assumes MFS is a "supplier." MFS' corporate testimony is that MFS is a "distributor." Hayes Depo., 11:15-13:16. |

**6.    Moving Party's Response** [3]

**[1]** Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement.  Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."  L.R. 56-2 (emph. added).  As such, Plaintiffs have failed to properly dispute this fact.  *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved motion to compel further discovery responses (the "MTC") [Dkt. #36], the parties agreed that MFS would produce its agreements with customers <u>to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period</u>.  Second Supplemental Declaration of Matthew C. Kane ("2d Supp. Kane Decl."), ¶¶ 9, 12.  As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does <u>not</u> contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers."  *See* Taub Decl., ¶ 7;

---

[3] All terms used in MFS's responses have the same meaning as defined in MFS's opening briefing [Dkt. #83] and its concurrently-filed reply briefing and response to Plaintiffs' evidentiary objections, unless otherwise defined herein.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

Hayes Decl., ¶ 5; *see also* Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework).

**[2]** This UF does not use the word "supplier." Indeed, it states that "MFS operates under national *distribution* agreements with each of its Chain Customers to supply *and distribute* ..." (Emph. added). In the testimony cited by Plaintiff, Mr. Hayes testifies as to the role that RSCS plays vis-à-vis MFS's national distribution agreements with its Chain Customers. Such testimony does not conflict with UF 6.

| 7.     Based on its national distribution agreements with its Chain Customers, MFS purchases products from suppliers and resells and distributes them to the Restaurant Customers. | Undisputed that McLane resells and distributes them to restaurants. Disputed as to the applicability of this statement to all "its Chain Customers" because MFS only disclosed a sampling of these agreements. |
|---|---|

## 7.    **Moving Party's Response**

Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement. Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved MTC [Dkt. #36], the parties agreed that MFS would produce its agreements with customers <u>to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period</u>. 2d Supp. Kane Decl., ¶¶ 9, 12. As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does <u>not</u> contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers." *See* Taub Decl., ¶ 7; Hayes Decl., ¶ 5; *see also*

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework). | |
| 8.    MFS's procurement department is responsible for ordering products on behalf of Chain Customers to be purchased by their respective affiliated Restaurant Customers from MFS's DCs, including the Riverside DC, for last mile delivery by MFS to those Restaurant Customers.<br><br>Taub Decl., ¶ 6. | Disputed. See Response to No. 4.<br><br>Disputed as to "last mile delivery", which is a legal conclusion and not a "fact."<br><br>*See also* Plaintiffs' Evidentiary Objections filed separately. |

## 8.    Moving Party's Response

Plaintiffs do not cite to any evidence supporting their attempt to dispute this UF (and similarly did not cite to any evidence supporting their attempt to dispute UF 4). Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added).[4] Plaintiffs also do not cite any authority or evidence in support of their contention that "last mile delivery" is "a legal conclusion and not a 'fact.'" As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

---

[4] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton v. Cnty. of Los Angeles*, 2015 WL 13915732, at *2 (C.D. Cal. May 18, 2015) (Guilford, J.). As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 9.    While some of the products ordered for the Riverside DC for delivery by MFS to Restaurant Customers originate in California, the majority of the products are ordered from suppliers in states outside of California. | Undisputed that MFS has some distribution agreements.<br><br>[1] Disputed as to the applicability of this statement to all "Restaurant Customers" because MFS only disclosed a sampling of these agreements.<br><br>[2] Disputed because McLane's corporate witness said he did not know the breakdown of out-of-state and in-state products that were shipped into the distribution center. Tiblier Depo., 14:4-15.<br><br>*See also* Plaintiffs' Evidentiary Objections filed separately. |

## 9.   <u>Moving Party's Response</u>

**[1]** Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement.  Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added).  As such, Plaintiffs have failed to properly dispute this fact.  *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved MTC [Dkt. #36], the parties agreed that MFS would produce its agreements with customers <u>to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period</u>. 2d Supp. Kane Decl., ¶¶ 9, 12.  As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does <u>not</u> contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers." *See* Taub Decl., ¶ 7; Hayes Decl., ¶ 5; *see also*

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework).

**[2]** Plaintiffs' cited evidence does not contradict the stated fact.  In the cited testimony, Plaintiffs' counsel is referring Mr. Tiblier to an undescribed document during his deposition.  Nowhere in the cited deposition testimony does Mr. Tiblier state that "he did not know the breakdown of out-of-state and in-state products. *See id*.  It is neither the Court's nor MFS's responsibility to "paw over files in order to make a party's clam."  *See, e.g., Lessin v. Ford Motor Co.*, 2024 WL 3746257, at *1 (S.D. Cal. Aug. 8, 2024) (int. quot. marks omitted) ("[I]t bears repeating the familiar maxim: 'judges are not like pigs, hunting for truffles buried in briefs.'").  However, even if Mr. Tiblier did state during his deposition that he did not know the breakdown between out-of-state and in-state products received at the Riverside DC off the top of his head at his deposition without the benefit of being able to reference necessary documents and information, he fully explained that breakdown in his subsequent declaration.  *See* Tiblier Decl., ¶¶ 9, 29-30 & Exhs. C-F.

| | |
|---|---|
| 10.   Under its national distribution agreements with its Chain Customers, MFS purchases products to fulfill the anticipated orders for those products from the Chain Customers' affiliated Restaurant Customers, and MFS purchases the products only from designated suppliers specified or approved by the Chain Customer. | [1] Disputed. *See* Response to No. 4.  Disputed as to "its National distribution agreements with its Chain Customers" statement because MFS only disclosed a sampling of these agreements.  [2] Disputed that McLane "anticipates" any ordering. McLane's corporate witnesses testified that products it receives at its Riverside distribution center remain in "general inventory" *unless and until* the local franchises in California place *separate* orders for those products, which McLane then **resells** on the retail market for a profit. *See* Hayes Depo., 17:15-23, 18:20-21:13, 25:21-26:15, 37:11-14; Taub Dep., 8:17-10:12, 19:12-17, 20:9-22:14, 36:3-7. Tiblier Dep., 44:1-17. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| | *See also* Plaintiffs' Evidentiary Objections filed separately. |

### 10. <u>Moving Party's Response</u>

**[1]** Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement (and similarly did not cite to any evidence supporting their attempt to dispute UF 4). Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'").

In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved MTC [Dkt. #36], the parties agreed that MFS would produce its agreements with customers <u>to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period</u>. 2d Supp. Kane Decl., ¶¶ 9, 12. As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does <u>not</u> contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers." *See* Taub Decl., ¶ 7; Hayes Decl., ¶ 5; *see also* Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework).

**[2]** Plaintiffs' machinated "dispute" is based on a blatant misrepresentation of deposition testimony. To wit, Mr. Taub testified that RSCS or the Chain Customer may send forecast projections to MFS to use in purchasing items from the suppliers for promotional, test, or "limited time only" ("LTO") products. 2d Supp. Kane Decl., Exh. 1 (Taub Depo.) at 31:3-32:25, 34:5-35:11. He further testified that MFS uses its *own* forecast projections for products that are *not* promotional, LTO, or test products. *Id.* at 35:12-36:2. Plaintiffs tellingly fail to cite to that testimony from Mr. Taub.

Moreover, *none* of Mr. Hayes's or Mr. Tiblier's cited testimony contradicts this UF. First, Mr. Tiblier's cited testimony is a line of questioning about how products are received and tracked at the Riverside DC. *See* Tiblier Dep., 44:1-17. Second,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Mr. Hayes testified that products ordered by MFS from suppliers are delivered to the Riverside DC and that Restaurant Customers place orders with MFS for those products to be delivered to their restaurant locations. *See* 2d Supp. Kane Decl., Exh. 2 (Hayes Depo.) at 17:15-23; *see also id.* at 23:13-24:5. Indeed, Mr. Hayes also testified that MFS is "bringing [in] products only specifically for [Restaurant Customers'] needs and the specific products that they have designated." *Id.* at 26:16-25. The fact that MFS places orders with suppliers in anticipation of orders from Restaurant Customers is not contradicted by Mr. Hayes's (or any other deponent's) testimony that Restaurant Customers subsequently place "separate orders" for those products – which orders have been anticipated (or projected) by MFS.[5] | |
| 11.   Each Chain Customer designates various suppliers from which MFS is required to purchase the food, produce, supplies, and promotional and other items that MFS will be distributing to the Chain Customer's affiliated Restaurant Customers. | Disputed as to what "each Chain Customer" does since McLane only produced samples of various master services agreements.<br><br>*See* Response to No. 4, 10. |

**11.   Moving Party's Response**

Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement (and similarly did not cite to any evidence supporting their attempt to dispute UF 4 and 10). Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g., Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search

---

[5] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at \*2. As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."). In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved MTC [Dkt. #36], the parties agreed that MFS would produce its agreements with customers <u>to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period</u>. 2d Supp. Kane Decl., ¶¶ 9, 12. As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does <u>not</u> contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers." *See* Taub Decl., ¶ 7; Hayes Decl., ¶ 5; *see also* Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework). | |
| 12.   The Chain Customer, in turn, enters into agreements or understandings with those suppliers for them to supply a certain volume of their product for the Chain Customer's affiliated Restaurant Customers—which MFS purchases from those suppliers to fulfill orders from those Restaurant Customers. | Undisputed that Chain Customers enter into agreements with suppliers that ship directly to McLane where they are then inventoried and stored for general inventory. *See* Response to No. 4, 10. Tiblier Depo., 40:22-24, 43:4-7, 47:4-24 (confirming that McLane's suppliers ship directly to the distribution center; 43:4-7, 46:4-24, 48:4-10. (explaining explained that shipper, Simmons Foods, Inc. according to **one order** ships boxes of chicken wings from Gentry, Arkansas **directly to** Defendant's distribution center in Riverside, California); Hayes Dep., 24:2-5 (all products are for resale); Corporate FRCP 30(b)(6) Representative Mike Taub Deposition ("Taub Dep."), 36:3-7 (same). Disputed that McLane is a "purchaser." *See* Response to No. 4. Declaration of Anthony Klish ISO Plaintiffs MSA, ¶ 3 (Restaurants do not have pre-set orders to McLane for products...A Restaurant |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| | employee looks at the inventory in their individual store and then determines what products are needed to replenish the inventory based upon needs and expected business... Typically, the Restaurant's orders are fulfilled by McLane within 2-3 days."). |

### 12.    Moving Party's Response

This UF does not use the word "purchaser."  In any event, it is **undisputed** that MFS purchases the food, produce, supplies, and promotional and other items that it will be distributing to the Chain Customer's affiliated Restaurant Customers.  *See* Plaintiffs' Responses to UF 4, 7, 8, 10 (not disputing that MFS purchases products). Indeed, the "evidence" cited by Plaintiffs does not contradict this UF because it has *nothing* to do with whether MFS purchases products for distribution to Restaurant Customers.   Instead, it is simply a statement from an individual purportedly employed by a franchisee of MFS Chain Customer BWW as to how Restaurant Customer's place *their* orders with MFS.

| 13.   If a Chain Customer has designated more than one supplier for a particular product (e.g., fresh chicken), it dictates and allocates how much of that product MFS can purchase from each such supplier for the Chain Customer's affiliated Restaurant Customers. | Disputed that McLane is a "purchaser." See Response to No. 4 *See also* Plaintiffs' Evidentiary Objections filed separately. |

### 13.    Moving Party's Response

MFS's UF does not use the word "purchaser."  In any event, it is **undisputed** that MFS purchases the food, produce, supplies, and promotional and other items that it will be distributing to the Chain Customer's affiliated Restaurant Customers.  *See* Plaintiffs' Responses to UF 4, 7, 8, 10 (not disputing that MFS purchases products).

Moreover, Plaintiffs do not cite to any evidence supporting their attempt to dispute the quoted statement (and similarly did not cite to any evidence supporting their attempt to dispute UF 4).  Under the Local Rules, "[f]or each disputed fact, the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").[6]

| 14.   A majority of the products MFS orders for sale and delivery to the Restaurant Customers that are supplied by the Riverside DC are proprietary products, which are specific to and can only be purchased by and delivered to a Chain Customer's affiliated Restaurant Customers (*e.g.*, BWW or CFA restaurants). | Undisputed that some of the items are proprietary but this is not material.<br><br>Disputed to the extent that this statement assumes MFS is a "supplier." MFS' corporate testimony is that MFS is a "distributor." Hayes Depo., 11:15-13:16.<br><br>*See also* Plaintiffs' Evidentiary Objections filed separately. |

## 14.   Moving Party's Response

The fact that a majority of the products that MFS orders for sale and delivery to the Restaurant Customers supplied by the Riverside DC *are* proprietary products *is material* because it tends to make it *more* likely that products ordered by MFS from out-of-state suppliers are intended from the outset for delivery to the particular Chain Customer's affiliated Restaurant Customers.

This UF does not use the word "supplier." In any event, in the testimony cited by Plaintiff, Mr. Hayes testifies as to the role that RSCS plays vis-à-vis MFS's national distribution agreements with its Chain Customers. His references in that testimony to MFS as a "distributor" in the cited testimony does not contradict UF 14. Indeed,

---

[6] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Mr. Hayes repeatedly testifies that products ordered by MFS from suppliers to be delivered to the Riverside DC are sold and distributed to Restaurant Customers in response to their orders for the same. *See* Hayes Depo. at 13:23-15:10, 15:16-16:7, 23:13-24:5. As such, MFS "supplies" Restaurant Customers with products from the Riverside DC.[7] | |
| 15. For example, when MFS orders chicken wings for BWW, it orders them from a supplier designated and approved by BWW. | Undisputed. |
| 16. BWW's designated supplier typically packages the chicken wings MFS orders in BWW-branded cases (*i.e.*, boxes). | Undisputed. |
| 17. MFS can only sell and deliver those BWW-branded cases of chicken wings it purchases to BWW-affiliated Restaurant Customers and not to any non-affiliated Restaurant Customers that are supplied by the Riverside DC. | Undisputed that certain cases may be branded. Disputed that McLane tracks any single case of chicken wings to any one restaurant. McLane's corporate witnesses testified that after McLane receives and stores the shipped products, it does not track the actual products in their interstate journey (only the pallets or boxes they come in) or know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. Taub Depo., 11:11-13:1, 36:8-25; Tiblier Dep., 61:21-62:18. |

---

[7] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **17.    Moving Party's Response**<br><br>The deposition testimony cited by Plaintiffs does not support their statements made in an attempt to dispute this UF.  First, this UF has nothing to do with tracking products in and out of the Riverside DC.  It states that BWW-branded cases of chicken can only be delivered to BWW-affiliated Restaurant Customers.  None of the cited deposition testimony contradicts this fact.<br><br>Moreover, even if this UF *did* have to do with tracking products in and out of the Riverside DC, Mr. Taub repeatedly testified that MFS tracks <u>each</u> case of products as they come into <u>and are delivered out of the Riverside DC</u>.  Taub Depo. at 13:24-14:5, 15:3-16, 23:1-9.  In his declaration, he again stated that MFS tracks the cases of products as they come into and are delivered out of the Riverside DC.  Taub Decl., ¶¶ 16-20.  Mr. Taub further testified that MFS can track inbound shipments depending on the carrier used for those shipments.  Taub Depo. at 13:24-15:2; Taub Decl., ¶ 16.  Finally, Mr. Taub testified that MFS does not track "the individual bottle of water or the individual chicken wing" upon being received at the Riverside DC, Taub Depo. at 36:8-25—which does not contradict the statement that BWW-branded cases of chicken can only be delivered to BWW-affiliated Restaurant Customers.<br><br>Additionally, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC"—he did *not* testify that they are not tracked. 2d Supp. Kane Decl., Exh. 3 (Tiblier Depo.) at 61:9-20.  Moreover, he testified that products are tracked by lot number "as far as [he knew]," *id.* at 61:21-62:5—which is consistent with Mr. Taub's testimony regarding the same, Taub Depo. at 18:19-20:1.  Mr. Tiblier subsequently expanded on MFS's tracking procedures in his declaration, explaining that MFS can and does track the products received from suppliers and delivered to Restaurant Customers from the Riverside DC.  Tiblier Decl., ¶¶ 10, 13, 29.<br><br>Finally, in their own Statement of Undisputed Facts, Plaintiffs <u>admit</u> that MFS tracks "the pallets or boxes" in which products are delivered to and out of the Riverside DC.  *See* PUF 18 [Dkt. #82]. | |
| 18.    MFS does not and cannot repackage proprietary products at the Riverside DC because they must be delivered to the affiliated Restaurant | Disputed. MFS own Separate Statement includes a contrary "fact": "The cases of product on the pallet received at the Riverside DC are usually shrink |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Customer in their proprietary packaging. | wrapped together to avoid cases moving during transit." Since products are not delivered to restaurants in shrink wrapped pallets, then they are "repackaged." |

**18.** <u>**Moving Party's Response**</u>

Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement (and similarly did not cite to any evidence supporting their attempt to dispute UF 4 and 10). Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Moreover, the "contrary 'fact'" cited by Plaintiffs is not contrary. Indeed, Plaintiffs only deem it "contrary" because they dispute whether breaking down pallets into separate lots constitutes "processing and modification of products" for purposes of the Court's MCA exemption analysis. In other words, Plaintiffs' purported "dispute" is not based on any record evidence; it is based on their incorrect legal arguments set forth in their Opposition [Dkt. #89]. *See, e.g.*, *Smith v. Coastal Produce Distribs., Inc.*, 2021 WL 1026910, at *7 (E.D. Mich. Mar. 17, 2021) (repackaging of produce did not amount to processing).

| 19.  MFS places product purchase orders with Chain Customers' designated suppliers across the United States to fulfill orders projected to be placed by Restaurant Customers supplied by the Riverside DC. | **Disputed.** *See* Response to No. 4.<br><br>[1] Disputed to the extent that this statement assumes MFS is a "purchasers." MFS' corporate testimony is that MFS is a "distributor." Hayes Depo., 11:15-13:16. MFS' corporate witness testified that RSCS, not McLane, is the "exclusive domestic purchasing agent" for all the products and "negotiates agreements with |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| | suppliers providing for price and other terms." Hayes Depo., 11:15-13:6.<br><br>[2] Disputed as to the applicability of this to all "Chain Customers" because MFS only disclosed a sampling of these agreements.<br><br>[3] Disputed that McLane uses "projections". McLane's corporate witnesses testified that products it receives at its Riverside distribution center remain in "general inventory" *unless and until* the local franchises in California place *separate* orders for those products, which McLane then **resells** on the retail market for a profit. *See* Hayes Depo., 17:15-23, 18:20-21:13, 25:21-26:15, 37:11-14; Taub Dep., 8:17-10:12, 19:12-17, 20:9-22:14, 36:3-7. Tiblier Dep., 44:1-17.<br><br>*See also* Plaintiffs' Evidentiary Objections filed separately. |

**19.  Moving Party's Response**

Each of Plaintiffs' purported "disputes" is entirely without merit.

**[1]** This UF does not use the word "purchaser."  In any event, it is **undisputed** that MFS purchases the food, produce, supplies, and promotional and other items that it will be distributing to the Chain Customer's affiliated Restaurant Customers.  *See* Plaintiffs' Responses to UF 4, 7, 8, 10 (not disputing that MFS purchases products).  Indeed, the "evidence" cited by Plaintiffs does not contradict this UF because it has *nothing* to do with whether MFS purchases products for distribution to Restaurant Customers.  Instead, Mr. Hayes testified as to the role that RSCS plays vis-à-vis MFS's national distribution agreements with its Chain Customers.

Moreover, in his deposition, Mr. Hayes stated that RSCS is "the purchasing entity for the Yum! Brands restaurants.  It's a co-op."  Hayes Depo. at 11:18-24.  When

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
| --- | --- |

Plaintiffs' counsel later asked Mr. Hayes how that works, Mr. Hayes testified that RSCS will "have the relationship, they negotiate with suppliers, they select suppliers and tell us at what price and from whom to purchase." *Id.* at 13:17-22. Mr. Hayes further stated that ***MFS*** "purchase[s] items for restaurants as designated by the purchasing co-op, the RSCS." *Id.* at 13:23-14:11. Indeed, in a later question, Plaintiffs' counsel demonstrated his understanding that MFS – and not RSCS – purchases products from suppliers for resale to Restaurant Customers. *Id.* at 15:7-10 ("So at the time that -- that *McLane purchases the items*, all those go to the Riverside distribution center?" (emph. added)).

**[2]** Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement. Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved MTC [Dkt. #36], the parties agreed that MFS would produce its agreements with customers <u>to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period</u>. 2d Supp. Kane Decl., ¶¶ 9, 12. As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does <u>not</u> contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers." *See* Taub Decl., ¶ 7; Hayes Decl., ¶ 5; *see also* Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework).

**[3]** Plaintiffs' machinated "dispute" is based on a blatant misrepresentation of deposition testimony. For example, Mr. Taub testified that RSCS or the Chain Customer may send forecast projections to MFS to use in purchasing items from the suppliers <u>for promotional, test, or LTO products</u>. Taub Depo. at 31:3-32:25, 34:5-35:11. He further testified that MFS uses its *own* forecast projections for products that are *not* promotional, LTO, or test products. *Id.* at 35:12-36:2. Plaintiffs tellingly fail to cite to that testimony from Mr. Taub.

17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Moreover, *none* of Mr. Hayes's or Mr. Tiblier's cited testimony contradicts this UF. <u>First</u>, Mr. Tiblier's cited testimony is a line of questioning about how products are received and tracked at the Riverside DC. *See* Tiblier Dep., 44:1-17. <u>Second</u>, Mr. Hayes testified that products ordered by MFS from suppliers are delivered to the Riverside DC and that Restaurant Customers place orders with MFS for those products to be delivered to their restaurant locations. *See* Hayes Depo. at 17:15-23; *see also id.* at 23:13-24:5. Indeed, Mr. Hayes also testified that MFS is "bringing products only specifically for [Restaurant Customers'] needs and the specific products that they have designated." *Id.* at 26:16-25. The fact that MFS places purchase orders with suppliers based on its forecast projections of orders to be received from Restaurant Customers is not contradicted by Mr. Hayes's (or any other deponent's) testimony that Restaurant Customers subsequently place "separate orders" for those products – which orders have been projected by MFS.[8] | |
| 20. Although MFS may not know the specific Restaurant Customer locations to which the products it purchases will ultimately be delivered when they are ordered and shipped by a Chain Customer's designated suppliers, it does know at that time that they will be sold and delivered to the Restaurant Customers affiliated with a specific Chain Customer. | Undisputed that McLane **does not know** which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. Taub Depo., 11:11-13:1, 36:8-25; Tiblier Dep., 61:21-62:18. |

**20.  Moving Party's Response**

It is unclear whether Plaintiffs dispute any portion of this UF. The record evidence establishes that MFS tracks the cases of products shipped into and out of the Riverside DC from the date of receipt from the supplier through the date of delivery to Restaurant Customers. Tiblier Decl., ¶¶ 10, 29 & Exhs. C-F; Taub Decl., ¶¶ 16-

---

[8] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

18

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 20 & Exh. A; Taub Depo. at 17:2-25; *see also* PUF 18 (MFS tracks "the pallets or boxes" coming in and going out of the Riverside DC). | |
| 21.   All purchase orders placed by MFS's procurement department with Chain Customers' designated suppliers are placed to fulfill orders that MFS and/or the Chain Customer projects will be placed by affiliated Restaurant Customers. | [1] Disputed that McLane makes orders based on "projections." *See* Responses to No. 4, 10, 13. Declaration of Anthony Klish ISO Plaintiffs MSA, ¶ 3 (Restaurants do not have pre-set orders to McLane for products... A Restaurant employee looks at the inventory in their individual store and then determines what products are needed to replenish the inventory based upon needs and expected business... Typically, the Restaurant's orders are fulfilled by McLane within 2-3 days.").

[2] Disputed to the extent that this statement assumes MFS is a "purchaser." MFS' corporate testimony is that MFS is a "distributor." Hayes Depo., 11:1513:16. MFS' corporate witness testified that RSCS, not McLane, is the "exclusive domestic purchasing agent" for all the products and "negotiates agreements with suppliers providing for price and other terms." Hayes Depo., 11:1513:6.

*See also* Plaintiffs' Evidentiary Objections filed separately. |

**21.  Moving Party's Response**

**[1]** The "evidence" cited by Plaintiffs does not contradict this UF because it is has *nothing* to do with whether purchase orders placed by MFS with suppliers are placed to fulfill orders that MFS and/or the Chain Customer projects will be placed by affiliated Restaurant Customers.  Instead, it is simply a statement from an individual purportedly employed by a franchisee of MFS Chain Customer BWW

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

as to how Restaurant Customer's place *their* orders with MFS—which would have been projected by MFS.

**[2]** This UF does not use the word "purchaser." In any event, it is **undisputed** that MFS purchases the food, produce, supplies, and promotional and other items that it will be distributing to the Chain Customer's affiliated Restaurant Customers. *See* Plaintiffs' Responses to UF 4, 7, 8, 10 (not disputing that MFS purchases products). Indeed, the "evidence" cited by Plaintiffs does not contradict this UF because it has *nothing* to do with whether MFS purchases products for distribution to Restaurant Customers. Instead, Mr. Hayes testified as to the role that RSCS plays vis-à-vis MFS's national distribution agreements with its Chain Customers.

Moreover, in his deposition, Mr. Hayes stated that RSCS is "the purchasing entity for the Yum! Brands restaurants. It's a co-op." Hayes Depo. at 11:18-24. When Plaintiffs' counsel later asked Mr. Hayes how that works, Mr. Hayes testified that RSCS will "have the relationship, they negotiate with suppliers, they select suppliers and tell us at what price and from whom to purchase." *Id.* at 13:17-22. Mr. Hayes further stated that *MFS* "purchase[s] items for restaurants as designated by the purchasing co-op, the RSCS." *Id.* at 13:23-14:11. Indeed, in a later question, Plaintiffs' counsel demonstrated his understanding that MFS – and not RSCS – purchases products from suppliers for resale to Restaurant Customers. *Id.* at 15:7-10 ("So at the time that -- that *McLane purchases the items*, all those go to the Riverside distribution center?" (emph. added)).[9]

| | |
|---|---|
| 22. Each purchase order for a product MFS places with suppliers for the Riverside DC is based on historical aggregate sales information for the Restaurant Customers that order that product from the Riverside DC, which takes into consideration the weighted moving average of MFS's product sales | Disputed that McLane's customers dictate the amount McLane purchases from suppliers since these needs change weekly so McLane has a general inventory of items. *See* Responses to No. 4, 10. See Declaration of Anthony Klish ISO Plaintiffs MSA, ¶ 3 (Restaurants do not have pre-set orders |

---

[9] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| to them over the prior eight weeks as well as MFS's and/or the Chain Customer's institutional knowledge of the Restaurant Customers' past seasonal and anticipated promotional product needs. | to McLane for products... A Restaurant employee looks at the inventory in their individual store and then determines what products are needed to replenish the inventory based upon needs and expected business... Typically, the Restaurant's orders are fulfilled by McLane within 2-3 days."). |
|  | Disputed to the extent that this statement assumes MFS is a "purchaser." MFS' corporate testimony is that MFS is a "distributor." Hayes Depo., 11:15-13:16 |
|  | *See also* Plaintiffs' Evidentiary Objections filed separately. McLane produced no actual projections. |

## 22.  Moving Party's Response

**[1]** The "evidence" cited by Plaintiffs does not contradict this UF because it has *nothing* to do with whether purchase orders placed by MFS with suppliers are placed to fulfill orders that MFS and/or the Chain Customer projects will be placed by affiliated Restaurant Customers.  Instead, it is simply a statement from an individual purportedly employed by a franchisee of MFS Chain Customer BWW as to how Restaurant Customers place *their* orders with MFS—which would have been projected by MFS.

Moreover, the fact that Mr. Klish contends that "[t]he store's needs could change based on how busy the store is and how quickly the products are depleted" does not contradict this UF.  Indeed, each restaurant's "changing needs" are taken into account by MFS's projection, which takes into consideration the weighted moving average of MFS's product sales to particular Restaurant Customers over the prior eight weeks as well as other information.  Taub Decl., ¶¶ 12-14.

Finally, if a promotional, test, or LTO product is entirely new (*i.e.*, the Chain Customer has not previously offered that product and thus MFS does not have historical purchase and shipment information for that product), the Chain Customer, or its affiliated procurement cooperative on behalf of the Chain

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

Customer, may provide MFS with forecast projections to use in purchasing those items from the suppliers (*i.e.*, the Chain Customer's forecasted customer demand for the promotional, test, or LTO product). Supp. Taub Decl., ¶ 8; Taub Depo. at 31:3-32:25, 34:5-36:2. Mr. Klish's statement in his declaration does not conflict with Mr. Taub's testimony—especially given that Mr. Klish works for a Restaurant Customer and *not* a Chain Customer. *See* Dkt. #81-5, ¶ 2.

**[2]** This UF does not use the word "purchaser." In any event, it is **undisputed** that MFS purchases the food, produce, supplies, and promotional and other items that it will be distributing to the Chain Customer's affiliated Restaurant Customers. *See* Plaintiffs' Responses to UF 4, 7, 8, 10 (not disputing that MFS purchases products). Indeed, the "evidence" cited by Plaintiffs does not contradict this UF because it has *nothing* to do with whether MFS purchases products for distribution to Restaurant Customers. Instead, Mr. Hayes testified as to the role that RSCS plays vis-à-vis MFS's national distribution agreements with its Chain Customers.

Moreover, in his deposition, Mr. Hayes stated that RSCS is "the purchasing entity for the Yum! Brands restaurants. It's a co-op." Hayes Depo. at 11:18-24. When Plaintiffs' counsel later asked Mr. Hayes how that works, Mr. Hayes testified that RSCS will "have the relationship, they negotiate with suppliers, they select suppliers and tell us at what price and from whom to purchase." *Id.* at 13:17-22. Mr. Hayes further stated that *MFS* "purchase[s] items for restaurants as designated by the purchasing co-op, the RSCS." *Id.* at 13:23-14:11. Indeed, in a later question, Plaintiffs' counsel demonstrated his understanding that MFS – and not RSCS – purchases products from suppliers for resale to Restaurant Customers. *Id.* at 15:7-10 ("So at the time that -- that *McLane purchases the items*, all those go to the Riverside distribution center?" (emph. added)).[10]

| | |
|---|---|
| 23. All orders placed by MFS for products that will be sold and delivered to Restaurant Customers supplied by the Riverside DC are based on MFS's | Disputed that McLane's customers dictate the amount McLane purchases from suppliers since these needs change weekly so McLane has a general |

---

[10] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. As such, Plaintiff's reference to their Evidentiary Objections does not in fact dispute this UF. *See id.*

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| and/or the Chain Customer's forecasting of such purchases that will made by those Restaurant Customers | inventory of items. *See* Responses to No. 4, 10.<br><br>**Objection:** This evidence should be stricken because MFS failed to disclose any information or produce any documents related to forecasting and customer projections and purchase orders, in response to discovery, despite several meet and confers and hearings to resolve Plaintiffs' motion to compel discovery related to the MCA exemption. See Fed. R. Civ. P. 37(c)(1); *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). |

23. **Moving Party's Response**

Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement (and similarly did not cite to any evidence supporting their attempt to dispute UF 4). Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Moreover, the "evidence" cited in Plaintiffs' Response to UF 10 does not even tend to support their so-called "dispute" of UF 23. For example, Mr. Taub testified that RSCS or the Chain Customer may send forecast projections to MFS to use in purchasing items from the suppliers for promotional, test, or LTO products. Taub Depo. at 31:3-32:25, 34:5-35:11. He further testified that MFS uses its *own* forecast projections for products that are *not* promotional, LTO, or test products. *Id.* at 35:12-36:2. Plaintiffs tellingly fail to cite to that testimony from Mr. Taub in their Response to UF 10.

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Moreover, *none* of Mr. Hayes's or Mr. Tiblier's cited testimony contradicts this UF (or, for that matter, UF 10). <u>First</u>, Mr. Tiblier's cited testimony is a line of questioning about how products are received and tracked at the Riverside DC. *See* Tiblier Dep., 44:1-17. <u>Second</u>, Mr. Hayes testified that products ordered by MFS from suppliers are delivered to the Riverside DC and that Restaurant Customers place orders with MFS for those products to be delivered to their restaurant locations. *See* Hayes Depo. at 17:15-23; *see also id.* at 23:13-24:5. Indeed, Mr. Hayes also testified that MFS is "bringing products only specifically for [Restaurant Customers'] needs and the specific products that they have designated." *Id.* at 26:16-25. The fact that MFS places orders with suppliers in anticipation of orders from Restaurant Customers is not contradicted by Mr. Hayes's (or any other deponent's) testimony that Restaurant Customers subsequently place "separate orders" for those products – which orders have been anticipated (or projected) by MFS.<br><br>Finally, nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. MFS has substantively responded to Plaintiffs' meritless Evidentiary Objections in its concurrently-filed response thereto. | |
| 24. MFS's distribution agreements with its Chain Customers require that MFS order products for the Riverside DC based on orders projected to be 'laced b the Restaurant Customers supplied by the Riverside DC. | [1] Disputed as to the applicability o [*sic*] this statement to all of "its Chain Customers" since McLane only produced a sampling of agreements.<br><br>[2] Disputed that McLane's uses projections since the supplies it receives are placed in general inventory. *See* Responses to No. 4, 10. |

## 24. <u>Moving Party's Response</u>

**[1]** Plaintiffs do not cite to <u>any</u> evidence supporting their attempt to dispute the quoted statement. Under the Local Rules, "[f]or each disputed fact, the Statement

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

In any event, in resolving the discovery disputes raised in Plaintiffs' since-resolved MTC [Dkt. #36], the parties agreed that MFS would produce its agreements with customers to which Plaintiffs delivered products during their employment with MFS in the applicable FLSA limitations period. 2d Supp. Kane Decl., ¶¶ 9, 12. As such, the fact that MFS produced "a sampling" of agreements that were limited to customers Plaintiffs delivered products to does not contradict MFS's uncontroverted evidence that it "operates under national distribution agreements with each of its Chain Customers." *See* Taub Decl., ¶ 7; Hayes Decl., ¶ 5; *see also* Hayes Decl., ¶ 8 (noting that MFS's master distribution agreements follow a similar general framework).

**[2]** Plaintiffs do not cite to any evidence supporting their attempt to dispute the quoted statement (and similarly did not cite to any evidence supporting their attempt to dispute UF 4). Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, Plaintiffs have failed to properly dispute this fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Moreover, the "evidence" cited in Plaintiffs' Response to UF 10 does not even tend to support their so-called "dispute" that MFS does not use projections simply because items ordered by MFS pursuant to those projections are temporarily stored in the Riverside DC before being delivered to Restaurant Customers. *See* Taub Decl., ¶ 19. For example, Mr. Taub testified that RSCS or the Chain Customer may send forecast projections to MFS to use in purchasing items from the suppliers for promotional, test, or LTO products. Taub Depo. at 31:3-32:25, 34:5-35:11. He further testified that MFS uses its *own* forecast projections for items that are *not* on

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

promotional, LTO, or test products. *Id.* at 35:12-36:2. Plaintiffs tellingly fail to cite to that testimony from Mr. Taub in their Response to UF 10.

Moreover, *none* of Mr. Hayes's or Mr. Tiblier's cited testimony contradicts this UF (or, for that matter, UF 10). <u>First</u>, Mr. Tiblier's cited testimony is a line of questioning about how products are received and tracked at the Riverside DC. *See* Tiblier Dep., 44:1-17. <u>Second</u>, Mr. Hayes testified that products ordered by MFS from suppliers are delivered to the Riverside DC and that Restaurant Customers place orders with MFS for those products to be delivered to their restaurant locations. *See* Hayes Depo. at 17:15-23; *see also id.* at 23:13-24:5. Indeed, Mr. Hayes also testified that MFS is "bringing products only specifically for [Restaurant Customers'] needs and the specific products that they have designated." *Id.* at 26:16-25. The fact that MFS places orders for products with suppliers in anticipation of orders from Restaurant Customers is not contradicted by Mr. Hayes's (or any other deponent's) testimony that those products are temporarily stored at the Riverside DC before being delivered to Restaurant Customers.

| 25. MFS bears the cost of the inbound and outbound transportation of products at the Riverside DC. | Disputed. MFS' corporate witness testified that McLane is reimbursed for these costs. Hayes Dep., 26:215 [*sic*].W |
|---|---|

25. Moving Party's Response

The cited testimony does not result in a dispute of this UF. Mr. Hayes testified only that MFS's transportation costs associated with inbound freight are baked into the price of the products subsequently sold to Restaurant Customers. Hayes Depo. at 25:16-26:15. But that does not change the *undisputed* fact that MFS bears the ultimate payment for transportation costs for inbound freight.

| 26. MFS pays carriers for inbound shipments of products to the Riverside DC, and it pays its employee drivers for the outbound shipments of products to Restaurant Customers. | Disputed. MFS' corporate witness testified that McLane is reimbursed for transportation charges. Hayes Dep., 26:2-15. |
|---|---|

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **26.  Moving Party's Response**<br><br>The cited testimony does not result in a dispute of this UF.  Mr. Hayes testified only that MFS's transportation costs associated with inbound freight are baked into the price of the products subsequently sold to Restaurant Customers.  Hayes Depo. at 25:16-26:15.  That does not change the *undisputed* fact that MFS bears the ultimate payment for transportation costs for inbound freight. | |
| 27.   MFS also manages the transportation of certain products from suppliers shipped to the Riverside DC by using its own in-house third-party freight provider, Vantix. | Disputed that MFS uses "Vantix" or any other in-house third-party freight provider. MFS' corporate witnesses made no mention about this when asked about McLane as a distributor, and McLane disclosed no information about this in discovery. Moreover, the McLane does not manage or control any out of state suppliers. The terms of any management or control of these suppliers are set by the Master Services Agreement. Hayes Dep., 14:14-24 (RCSC "both negotiates agreements with suppliers providing for the price and other terms pursuant to which suppliers will sell products to operators for use in retail outlets.").<br><br>*See also* Plaintiffs' Evidentiary Objections filed separately. |
| **27.   Moving Party's Response**<br><br>Plaintiff's cited evidence does not create a dispute of fact.  In the testimony cited by Plaintiff, Mr. Hayes testifies as to the role that RSCS plays vis-à-vis MFS's national distribution agreements with its Chain Customers—and not to anything having to do with MFS's management of inbound freight.  Indeed, Mr. Hayes testified the master distribution agreements permit MFS to "elect to manage … inbound freight" or not.  *See* Hayes Depo. at 30:19-32:2 ("Q.  That's a choice that McLane gets to make … correct?  A.  It is, yes.").  Plaintiffs' counsel, however, never asked Mr. Hayes *how* MFS manages inbound freight when it chooses to do | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| so.  Plaintiffs' failure to examine Mr. Hayes regarding matters on which they (falsely) claim MFS "refused to produce" documents and information does <u>not</u> amount to a failure to disclose by MFS.  Indeed, MFS produced a list of inbound shipments to the Riverside DC handled by Vantix (MFS-0006395).[11] | |
| 28.  Approximately 40-50% of inbound freight to the Riverside DC is managed by Vantix. | Undisputed but not material.<br><br>*See also* Plaintiffs' Evidentiary Objections filed separately. |

**28.  <u>Moving Party's Response</u>**

The fact MFS uses Vantix to transport up to one-half of the inbound freight to the Riverside DC *is material* because it tends to make it *more* likely that MFS pays for the inbound transportation of supplier product shipments received at the Riverside DC.[12]

| 29.  MFS can and does track the products received from suppliers and delivered to Restaurant Customers from the Riverside DC, including without limitation: date received at the Riverside DC, shipment and delivery date to the Restaurant Customer, vendor and source location, purchasing | Disputed. Defendant does not track or otherwise maintain records regarding the date a particular product from outside the state of California leaves for delivery to its Riverside distribution center.11:11-13:1, 36:8-25; Tiblier Dep., 61:2162:18. |

---

[11] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed.  In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful.  They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2.  MFS has substantively responded to Plaintiffs' meritless Evidentiary Objections in its concurrently-filed response thereto.

[12] Nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed.  In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful.  They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2.  MFS has substantively responded to Plaintiffs' meritless Evidentiary Objections in its concurrently-filed response thereto.

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Restaurant Customer and location, and product purchased and delivered including type, size, weight, quantity and expiration or use by date (the "Tracking Data"). | |

**29.** <u>Moving Party's Response</u>

Plaintiffs do not identify any dispute. This UF states that MFS tracks the products received from suppliers *at the Riverside DC.* It says nothing about tracking products on their interstate journey *to the Riverside DC.*

| | |
|---|---|
| 30.  Depending on the carrier transporting ordered products to the Riverside DC, MFS may also be able to track the location of the truck carrying those inbound products. | Disputed. *See* Response to No. 29. |

**30.** <u>Moving Party's Response</u>

Plaintiffs' cited evidence in their Response to UF 29 does not create a dispute of fact as to UF 30. <u>First</u>, Plaintiff <u>only</u> cites to testimony from Mr. Taub regarding how MFS tracks products *once they have been received at the Riverside DC.* This does not create a dispute of fact as to whether MFS tracks products on their interstate journey *to the Riverside DC.* <u>Second</u>, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC." Tiblier Depo. at 61:9-20. Such testimony does not create a dispute of fact as to whether MFS tracks products on their interstate journey to the Riverside DC.

| | |
|---|---|
| 31.  Products ordered by MFS typically are received at the Riverside DC in cases on pallets. | Undisputed. |

| | |
|---|---|
| 32.  Upon arrival of a product shipment at the Riverside DC, a MFS receiver unloads the pallets from the truck. | Undisputed. |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 33.   The cases of product on the pallet received at the Riverside DC are usually shrink wrapped together to avoid cases moving during transit. | Undisputed. |
| 34.   At least one adhesive label with a scannable barcode has been affixed by the supplier to the shrink-wrapped pallet received at the Riverside DC (*i.e.*, the "pallet tag"). | Undisputed. |
| 35.   The MFS receiver receiving the supplier shipment at the Riverside DC uses a handheld scanner to scan the barcode on the pallet tag to identify the product on the pallet, the supplier location, and the expiration or use-by date for the product. | Undisputed. |
| 36.   The information scanned from the supplier's pallet tag on product shipments received at the Riverside DC is saved in MFS's JD Edwards inventory management system. | Undisputed.<br><br>However, this information should be stricken since no information was disclosed about "JD Edwards inventory management system." *See also* Plaintiffs' Evidentiary Objections filed separately. |

**36.   Moving Party's Response**

Plaintiffs' Evidentiary Objections do not raise any issues regarding MFS's alleged failure to disclose information "about [the] 'JD Edwards inventory management system.'"  *See* Dkt. #89-1.  In any event, there is simply no basis for striking "this information" or the evidence proffered by MFS in support thereof.  Mr. Taub testified to the existence of the JD Edwards system and MFS's use thereof during his deposition.  *See* Taub Depo. at 29:2-16 ("Q.  And how did you order inventory? A.  With our JD Edwards ERP at the time.").  Plaintiffs' failure to examine Mr.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Taub further about how the JD Edwards system was and is used by MFS does not amount to a "failure to disclose" by MFS. | |
| 37.   The MFS receiver will then generate an internal pallet label (a "license plate") for the product shipment received at the Riverside DC that includes a unique "lot" number, which is a unique MFS- created next-number identifier for products, and it ties back to the supplier, the inbound purchase order, and the receipt date of a product. | Disputed. Defendant does not track or otherwise maintain records regarding the date a particular product from outside the state of California leaves for delivery to its Riverside distribution center.11:11-13:1, 36:8-25; Tiblier Dep., 61:2162:18. |

**37.   Moving Party's Response**

Plaintiffs do not identify any dispute.  This UF states that MFS tracks the products received from suppliers *upon receipt at the Riverside DC*.  It says nothing about tracking products on their interstate journey *to the Riverside DC*.  Indeed, the testimony cited by Plaintiffs *supports* MFS's UF.  *See* Taub Depo. at 11:11-13:1, 36:8-25 (testifying that MFS tracks products by the pallet and by the case upon receipt at the Riverside DC).  The cited testimony says nothing about tracking products on their interstate journey *to the Riverside DC*.  Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC."  Tiblier Depo. at 61:9-20.  Such testimony does not create a dispute of fact as to whether MFS tracks products once they are received at the Riverside DC and through delivery to Restaurant Customers.

| 38.   The MFS-generated license plate tracks the item number, lot number, receipt date, expiration or use-by date, inbound purchase order number, and DC location. | Disputed. Defendant does not track or otherwise maintain records regarding the date a particular product from outside the state of California leaves for delivery to its Riverside distribution center.11:11-13:1, 36:8-25; Tiblier Dep., 61:2162:18. |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **38. Moving Party's Response**<br><br>Plaintiffs do not identify any dispute. This UF says nothing about tracking products on their interstate journey to the Riverside DC. Plaintiff cites to testimony from Mr. Taub in which he confirms that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC. They do not cite to any testimony from Mr. Taub regarding the MFS-generated license plate. Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC." Tiblier Depo. at 61:9-20. Such testimony does not create a dispute of fact as to whether MFS generates a "license plate" to aid in tracking products while they are in the Riverside DC. | |
| 39.  The license plate is affixed by the MFS receiver to the bottom right case on the unwrapped pallet for each lot received at the Riverside DC. | Undisputed that McLane only tracks products by their lot. |
| **39. Moving Party's Response**<br><br>This UF does <u>not</u> state that "McLane only tracks products by their lot." The MFS-generated license plate tracks the item number, lot number, receipt date, expiration or use-by date, inbound purchase order number, and DC location of each pallet or lot. Taub Decl., ¶ 18; *see also* Taub Depo. at 18:6-19:4. However, when a product is selected for delivery to a Restaurant Customer, an order selector scans each case of each product as it is picked, places each case on a pallet for delivery to the Restaurant Customer, and affixes the printed labels to each selected case placed on the pallet for delivery. Taub Decl., ¶ 20. When a MFS driver delivers those ordered cases to the Restaurant Customer, the driver scans the barcode on each of the printed labels affixed by the selector on each of the cases they are delivering, capturing the delivery time and location for each case. *Id.* As such, MFS tracks each case of product. *See* PUF 18 (admitting as *undisputed* the fact that MFS tracks "the pallets or boxes" in which products are delivered to and out of the Riverside DC). | |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 40.   The license plate is scanned by Riverside DC personnel and tracked in MFS's JD Edwards inventory management system each time the product is moved or selected for delivery within the Riverside DC. | [1] Undisputed that McLane only tracks products by their lot. [2] Disputed that McLane tracks each product case. McLane does not know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. [3] Defendant does not track or otherwise maintain records regarding the date a particular product from outside the state of California leaves for delivery to its Riverside distribution center.11:11-13:1, 36:8-25; Tiblier Dep., 61:2162:18. |

### 40.   Moving Party's Response

**[1]** This UF does <u>not</u> state that "McLane only tracks products by their lot." The MFS-generated license plate tracks the item number, lot number, receipt date, expiration or use-by date, inbound purchase order number, and DC location of each pallet or lot.  Taub Decl., ¶ 18; *see also* Taub Depo. at 18:6-19:4.  However, when a product is selected for delivery to a Restaurant Customer, an order selector scans each case of each product as it is picked, places each case on a pallet for delivery to the Restaurant Customer, and affixes the printed labels to each selected case placed on the pallet for delivery.  Taub Decl., ¶ 20.  When a MFS driver delivers those ordered cases to the Restaurant Customer, the driver scans the barcode on each of the printed labels affixed by the selector on each of the cases they are delivering, capturing the delivery time and location for each case.  *Id.*  As such, MFS tracks each case of product.  *See* PUF 18 (admitting as *undisputed* the fact that MFS tracks "the pallets or boxes" in which products are delivered to and out of the Riverside DC).

**[2]** Plaintiffs' cited testimony does not create a dispute as to the fact that the MFS-generated license plate is scanned by Riverside DC personnel each time product is moved within the Riverside DC because the cited deposition testimony *has nothing to do with* scanning the MFS-generated license plate.  At his deposition, Mr. Taub testified that, after a pallet is received at the Riverside DC, "our warehouse teammates would scan the pallet label when they're moving it from one location to

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| another in the distribution center."  Taub Depo. at 11:11-19; *see also id.* at 16:10-17:14, 19:5-11 (same).<br><br>**[3]**  This UF says nothing about tracking products on their interstate journey to the Riverside DC.  Plaintiff cites to testimony from Mr. Taub in which he confirms that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC.  Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC."  Tiblier Depo. at 61:9-20.  Such testimony does not create a dispute of fact as to whether the MFS-generated license plate is scanned when products are moved around the Riverside DC. | |
| 41.   There may be more than one lot number assigned to a single pallet of products received at the Riverside DC where, for example, there are different types of products or products with different expiration dates on a single pallet. | [1] Undisputed that McLane only tracks products by their lot. [2] Disputed that McLane tracks each product case. McLane does not know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. [3] Defendant does not track or otherwise maintain records regarding the date a particular product from outside the state of California leaves for delivery to its Riverside distribution center.11:11-13:1, 36:8-25; Tiblier Dep., 61:2162:18. |

## 41.  Moving Party's Response

**[1]** This UF does not state that "McLane only tracks products by their lot."  The MFS-generated license plate tracks the item number, lot number, receipt date, expiration or use-by date, inbound purchase order number, and DC location of each pallet or lot.  Taub Decl., ¶ 18; *see also* Taub Depo. at 18:6-19:4.  However, when a product is selected for delivery to a Restaurant Customer, an order selector scans each case of each product as it is picked, places each case on a pallet for delivery to the Restaurant Customer, and affixes the printed labels to each selected case placed on the pallet for delivery.  Taub Decl., ¶ 20.  When a MFS driver delivers those ordered cases to the Restaurant Customer, the driver scans the barcode on each of the printed labels affixed by the selector on each of the cases they are delivering, capturing the delivery time and location for each case.  *Id.*  As such,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| MFS tracks each case of product. *See* PUF 18 (admitting as *undisputed* the fact that MFS tracks "the pallets or boxes" in which products are delivered to and out of the Riverside DC).<br><br>**[2]** Plaintiffs' cited testimony does not create a dispute as to the fact that there may be more than one lot number assigned to a single pallet of products received at the Riverside because the cited deposition testimony has nothing to do with MFS's processes when a pallet contains more than one lot number.<br><br>**[3]** This UF says nothing about tracking products on their interstate journey to the Riverside DC. Plaintiff cites to testimony from Mr. Taub in which he confirms that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC. Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC." Tiblier Depo. at 61:9-20. Such testimony does not create a dispute of fact as to whether the MFS-generated license plate is scanned when products are moved around the Riverside DC. | |
| 42.   The MFS receiver typically would separate different lots received at the Riverside DC on one supplier pallet onto separate pallets. | Undisputed. |
| 43.   No processing, repacking, or modification of products received from suppliers occurs at the Riverside DC. | Disputed. As McLane's own facts establish, McLane separates products into lots, labels them, assigns them to a pallet, and places them in in "general inventory" *unless and until* the local franchises in California place *separate* orders for those products, which McLane then **resells** on the retail market for a profit. Hayes Depo., 17:15-23, 18:20-21:13, 25:21-26:15, 37:1114; Taub Dep., 8:17-10:12, 19:12-17, 20:9-22:14, 36:3-7. Tiblier Dep., 44:1-17. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **43.  Moving Party's Response**<br><br>Plaintiffs' cited testimony does not create a dispute of fact because Plaintiffs do not cite to *any* testimony in which a deponent testified that MFS repackages, processes (i.e., changes the nature of), or otherwise modifies products prior to delivering those products to Restaurant Customers.  Indeed, Mr. Taub testified that MFS ships items "by full master case" and would "never open the master case itself."  Taub Depo. at 17:2-25; *see also* Taub Decl., ¶ 21.  Plaintiffs only deem this UF disputed because they *argue* in their Opposition to the MPSJ that MFS's process of breaking pallets down into separate lots, labeling those lots, and labeling cases prior to delivery constitutes "processing and modification of products" for purposes of the Court's MCA exemption analysis.  In other words, Plaintiffs' purported "dispute" is not based on any record evidence; it is based on their incorrect legal arguments set forth in their Opposition [Dkt. #89].  *See, e.g.*, *Smith*, 2021 WL 1026910, at *7 (repackaging of produce did not amount to processing).  In short, Plaintiffs have identified a legal dispute – not a dispute of fact. | |
| 44.  Products selected for delivery to Restaurant Customers at the Riverside DC are generally full case picks—meaning order selectors pick an entire case of product from a rack storage location. | Undisputed. |
| 45.  If a product is ordered by a Restaurant Customer and sold to them in a quantity of less than a full case (which is rare), the products may be removed from a case as necessary, but they are not processed, repackaged, or modified in any way at the Riverside DC. | Disputed. As McLane's own facts establish, McLane separates products into lots, labels them, assigns them to a pallet, and places them in in "general inventory" *unless and until* the local franchises in California place *separate* orders for those products, which McLane then resells on the retail market for a profit. Hayes Depo., 17:15-23, 18:20-21:13, 25:21-26:15, 37:1114; Taub Dep., 8:17-10:12, 19:12-17, 20:9-22:14, 36:3-7. Tiblier Dep., 44:1-17. |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

### 45.  Moving Party's Response

Plaintiffs' cited testimony does not create a dispute of fact because Plaintiffs do not cite to *any* testimony in which a deponent testified that MFS repackages, processes (i.e., changes the nature of), or otherwise modifies products prior to delivering those products to Restaurant Customers.  Indeed, Mr. Taub testified that MFS ships items "by full master case" unless they are a "break-case item," in which case they would be shipped "in a smaller inner pack unit."  Taub Depo. at 17:2-25; *see also* Taub Decl., ¶ 21.  Plaintiffs only deem this UF disputed because they *argue* in their Opposition to the MPSJ that MFS's process of breaking pallets down into separate lots, labeling those lots, and labeling cases prior to delivery constitutes "processing and modification of products" for purposes of the Court's MCA exemption analysis.  In other words, Plaintiffs' purported "dispute" is not based on any record evidence; it is based on their incorrect legal arguments set forth in their Opposition [Dkt. #89].  *See, e.g.*, *Smith*, 2021 WL 1026910, at *7 (repackaging of produce did not amount to processing).  In short, Plaintiffs have identified a legal dispute – not a dispute of fact.

| 46.  Products are delivered by MFS to Restaurant Customers in the same packaging in which they are received from the suppliers. | Disputed. McLane's UF included a contrary statement: "The cases of product on the pallet received at the Riverside DC are usually shrink wrapped together to avoid cases moving during transit." Since products are not delivered to McLane's customers in shrink wrapped pallets, they cannot be delivered in the "same packaging as they are received from the suppliers." |
|---|---|

### 46.  Moving Party's Response

Plaintiffs do not cite to any evidence supporting their attempt to dispute the quoted statement.  Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."  L.R. 56-2 (emph. added).  As such, Plaintiffs have failed to properly dispute this fact.  *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted,

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."). | |
| 47.   Products received by MFS from suppliers at the Riverside DC for delivery to Restaurant Customers are temporarily stored in aisles of inventory racks while awaiting distribution to the Restaurant Customers. | Undisputed that items from suppliers are stored in general inventory. Disputed that storage is "temporary." After McLane receives and stores the shipped products, it does not track the actual products in their interstate journey (only the pallets or boxes they come in) or know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. Taub Depo., 11:1113:1, 36:8-25; Tiblier Dep., 61:2162:18.

McLane corporate witness also testified that he did not know how long items are stored in the distribution center. Hayes Depo., 21:14-22:16. |

**47.   Moving Party's Response**

First, this UF does not state that "items from suppliers are stored in general inventory."  In any event, Plaintiffs do not proffer *any* evidence to support their "dispute" that "storage is 'temporary.'"  Instead, Plaintiffs cite to testimony regarding how products are tracked at the Riverside DC.  But Plaintiffs' cited testimony does not create a dispute as to whether products received at the Riverside DC for delivery to Restaurant Customers are only temporarily stored in inventory.  Indeed, MFS can and does track the date on which each case of product is received *at the Riverside DC* and the date on which each case of product is delivered to a Restaurant Customer—and from that information can derive how long products stay in the Riverside DC before being delivered to a customer.  *See* Taub Decl., ¶ 22 (providing average days in inventory for products at the Riverside DC); Tiblier Decl., ¶ 29, Exhs. C-D (tracking products from date of receipt at Riverside DC through date of delivery by Plaintiffs); *id.*, ¶ 30, Exhs. E-F (providing days in inventory for each case of product delivered by Plaintiffs during their employment).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

<u>Second</u>, this UF says nothing about tracking products on their interstate journey to the Riverside DC. Plaintiff cites to testimony from Mr. Taub in which he confirms that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC. Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC." Tiblier Depo. at 61:9-20. Such testimony does not create a dispute of fact as to whether products received by MFS from suppliers at the Riverside DC for delivery to Restaurant Customers are temporarily stored in inventory at the Riverside DC.

<u>Third</u>, Mr. Hayes was identified by MFS as a Rule 30(b)(6) deponent on "the terms of defendant's distribution and other service agreements with its customers serviced from the Riverside distribution center that have been produced in discovery." Hayes Depo. at 8:15-19. Any testimony that he may have offered regarding days in inventory was outside the scope of his designation and thus not on behalf of or binding on MFS. *Id.* at 21:6-22:16. In any event, the fact that Mr. Hayes *did not know* how long a particular products stays in the Riverside DC prior to delivery does not create a dispute as to whether those products were only temporarily stored there.

| | |
|---|---|
| 48.   The Riverside DC temporarily stores most of the products it receives from suppliers by the Chain Customer's brand for which those products have been ordered, so the majority of those aisles of inventory racks in the Riverside DC are generally dedicated to the temporary storage of products only for a Chain Customer's particular brand of affiliated Restaurant Customers. | Disputed. *See* Response to No. 47. |

**48.   Moving Party's Response**

*See* Moving Party's Response to No. 47.

| | |
|---|---|
| 49.   For example, BWW-branded chicken wings that are received at the Riverside Distribution Center from a supplier in response to an MFS order | Undisputed that items from suppliers are stored in a specific area in the warehouse. But this is not material. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| for that product are stored in an aisle in which only other products that MFS has ordered for purchase by and delivery to BWW-affiliated Restaurant Customers are generally stored. | |

**49.   Moving Party's Response**

The fact that products that MFS orders for sale and delivery to a particular Restaurant Customer are stored in aisles in the Riverside DC in which only other products that MFS has ordered for purchase by and delivery to that Restaurant Customer *is material* because it demonstrates that products ordered by MFS from out-of-state suppliers are intended from the outset for delivery to the particular Chain Customer's restaurants.

| 50.   Only non-proprietary items that are used by multiple Chain Customers' restaurants (e.g., Coke or Pepsi soft drinks) are stored in "common" aisles in the Riverside DC. | Undisputed that items from suppliers are stored in a specific area in the warehouse. But this is not material. |
|---|---|

**50.   Moving Party's Response**

The fact that products that MFS orders for sale and delivery to a particular Restaurant Customer are stored in aisles in the Riverside DC in which only other products that MFS has ordered for purchase by and delivery to that Restaurant Customer *is material* because it demonstrates that products ordered by MFS from out-of-state suppliers are intended from the outset for delivery to the particular Chain Customer's restaurants.

| 51.   MFS order selectors at the Riverside DC pick products ordered by Restaurant Customers for delivery to them by MFS. | Undisputed but not material. |
|---|---|

Baker & Hostetler llp
Attorneys at Law
Los Angeles

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **51.  Moving Party's Response**<br><br>This fact *is material* because it establishes that MFS controls the products while they are in the Riverside DC and tracks product shipments in and out of the Riverside DC. | |
| 52.  Selectors wear a wrist device that tells them which and how many cases of each product to pick, and where the product is in the Riverside DC. | Undisputed but not material. |
| **52.  Moving Party's Response**<br><br>This fact *is material* because it establishes that MFS controls the products while they are in the Riverside DC and tracks product shipments in and out of the Riverside DC. | |
| 53.  The selector scans each case of product as it is picked and places each case on a pallet for delivery to the Restaurant Customer from the Riverside DC. | Undisputed but not material. |
| **53.  Moving Party's Response**<br><br>This fact *is material* because it establishes that MFS controls the products while they are in the Riverside DC and tracks product shipments in and out of the Riverside DC. | |
| 54.  The Riverside DC selector's wrist device prints the number of labels corresponding to the Restaurant Customer's ordered case quantity for that product (*i.e.*, the number of cases of that item ordered). | Undisputed but not material. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **54.   Moving Party's Response**<br><br>This fact *is material* because it establishes that MFS controls the products while they are in the Riverside DC and tracks product shipments in and out of the Riverside DC. | |
| 55.   The Riverside DC selector affixes the printed labels to each selected case placed on the pallet for the order by the Restaurant Customer to be delivered from the Riverside DC. | Undisputed as this is part of McLane's processing of the products it receives. |
| 56.   Each printed label affixed by the MFS selector on each of the cases selected by them at the Riverside DC has a unique barcode on it that ties back to the lot number for the selected case. | Disputed. After McLane receives and stores the shipped products, it does not track the actual products in their interstate journey (only the pallets or boxes they come in). McLane does not know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. Taub Depo., 11:11-13:1, 36:8-25; Tiblier Dep., 61:21-62:18. |
| **56.   Moving Party's Response**<br><br>This UF says nothing about tracking products on their interstate journey to the Riverside DC.  Plaintiff cites to testimony from Mr. Taub in which he ***confirms*** that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC.  Indeed, Mr. Taub also testified that "the order selector scans the case … and it prints labels for him that he puts on the cases." Taub Depo. at 19:18-20:8.  Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC." Tiblier Depo. at 61:9-20.  Such testimony does not create a dispute of fact as to whether printed labels are affixed to each case selected by order selectors.<br><br>Further, documents attached to Mr. Tiblier's declaration establish that MFS can and does track the date on which each case of product is received at the Riverside DC | |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

and the date on which each case of product is delivered to a Restaurant Customer. *See* Tiblier Decl., ¶ 29, Exhs. C-D (tracking products from date of receipt at Riverside DC through date of delivery by Plaintiffs); *id.*, ¶ 30, Exhs. E-F (providing days in inventory for products delivered by Plaintiffs during their employment).

Finally, Plaintiffs' own evidence supports MFS's UF. *See* Orosco Decl. [Dkt. #81-2], ¶ 8 ("[O]n the day the products are scheduled for delivery, McLane creates a new yellow sticker to be affixed on the collection of boxes gathered and 'selected' for each store. These McLane stickers go on all the boxes on the pallet and indicate which store each box should go to …."); Rea Decl. [Dkt. #81-4], ¶ 8 ("Once the products are scheduled for delivery, they get a McLane sticker **to track the product from the McLane warehouse to the store**." (emph. added)).

| 57.   When a MFS driver delivers ordered cases of products to the Restaurant Customer from the Riverside DC, the driver scans the barcode on each of the printed labels affixed by the selector on each of the cases they are delivering, capturing the delivery time and location for each case—which information is saved in MFS's JD Edwards system. | Disputed. After McLane receives and stores the shipped products, it does not track the actual products in their interstate journey (only the pallets or boxes they come in). McLane does not know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries. Taub Depo., 11:11-13:1, 36:8-25; Tiblier Dep., 61:21-62:18 |
|---|---|

### 57.   **Moving Party's Response**

This UF says nothing about tracking products on their interstate journey to the Riverside DC. Plaintiff cites to testimony from Mr. Taub in which he **confirms** that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC. Indeed, Mr. Taub also testified that "when the driver shows up [to deliver products to a Restaurant Customer], he scans the restaurant that says he's at the right place … and then he scans the labels on the cases." Taub Depo. at 22:15-23:11.

Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC." Tiblier Depo. at 61:9-20. Such testimony does not create a dispute of fact as

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| to whether drivers scan the barcode on each case of products when delivering those cases to Restaurant Customers.<br><br>Finally, Plaintiffs' own evidence supports MFS's UF.  *See* Madero Decl. [Dkt. #81-1], ¶ 7 ("When I made deliveries, McLane provided me a scanner…. I was instructed to scan the code on each box as I unloaded it.  The code was a McLane barcode placed on each box."); Lyons Decl. [Dkt. #81-3], ¶ 4 ("I was trained to scan the McLane sticker on each box as I unloaded each box that was part of the store's order."); Rea Decl. [Dkt. #81-4], ¶ 8 ("Once the products are scheduled for delivery, they get a McLane sticker **to track the product from the McLane warehouse to the store**." (emph. added)). | |
| 58.   MFS can and does track on which truck and on which route each product was delivered to the Restaurant Customers' locations from the Riverside DC. | Disputed. After McLane receives and stores the shipped products, it does not track the actual products in their interstate journey (only the pallets or boxes they come in). McLane does not know which McLane customer received which particular bottle of water, chicken wing or box of waffle fries.  Taub Depo., 11:11-13:1, 36:8-25; Tiblier Dep., 61:21-62:18. |

**58.  Moving Party's Response**

This UF says nothing about tracking products on their interstate journey to the Riverside DC.  Plaintiff cites to testimony from Mr. Taub in which he **confirms** that MFS tracks the pallets and cases of products as they come into and are delivered out of the Riverside DC.  Indeed, Mr. Taub also testified that "when the driver shows up [to deliver products to a Restaurant Customer], he scans the restaurant that says he's at the right place … and then he scans the labels on the cases."  Taub Depo. at 22:15-23:11.

Moreover, in the testimony cited by Plaintiffs, Mr. Tiblier testified that he did not know whether products were tracked "by the shipper coming into the Riverside … DC."  Tiblier Depo. at 61:9-20.  Such testimony does not create a dispute of fact as to whether MFS can and does track on which truck and on which route each product was delivered to Restaurant Customers' locations from the Riverside DC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Further, documents attached to Mr. Tiblier's declaration establish that MFS can and does track the date on which each case of product is received at the Riverside DC and the date on which each case of product is delivered to a Restaurant Customer. *See* Tiblier Decl., ¶ 29, Exhs. C-D (tracking products from date of receipt at Riverside DC through date of delivery by Plaintiffs); *id.*, ¶ 30, Exhs. E-F (providing days in inventory for products delivered by Plaintiffs during their employment). Indeed, Plaintiffs' own evidence supports MFS's UF. *See* Orosco Decl. [Dkt. #81-2], ¶ 8 ("[O]n the day the products are scheduled for delivery, McLane creates a new yellow sticker to be affixed on the collection of boxes gathered and 'selected' for each store. These McLane stickers go on all the boxes on the pallet and indicate which store each box should go to …."); Rea Decl. [Dkt. #81-4], ¶ 8 ("Once the products are scheduled for delivery, they get a McLane sticker **to track the product from the McLane warehouse to the store**." (emph. added)). | |

| | |
|---|---|
| 59.   Products received at the Riverside DC from out-of-state suppliers and bound for a Restaurant Customer have an average days in inventory ("DII") count of 13 days. | Undisputed that products sit in general inventory at the McLane distribution center. The products McLane receives at its Riverside distribution center remain in "general inventory" *unless and until* the local franchises in California place *separate* orders for those products, which McLane then **resells** on the retail market for a profit. *See* Hayes Depo., 17:15-23, 18:20-21:13, 25:21-26:15, 37:1114; Taub Dep., 8:17-10:12, 19:1217, 20:9-22:14, 36:3-7. Tiblier Dep., 44:1-17. |

**59.   Moving Party's Response**

This UF does <u>not</u> state that "products sit in general inventory at the McLane distribution center." In any event, Plaintiffs' cited testimony does not create a dispute of fact because none of the cited testimony has anything to do with the amount of time a product stays in the Riverside DC before it is delivered to a Restaurant Customer.

<u>First</u>, Mr. Tiblier's and Mr. Taub's cited testimony pertains to how products are received and tracked at the Riverside DC. <u>Second</u>, Mr. Hayes testified that products ordered by MFS from suppliers are delivered to the Riverside DC and that

45

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Restaurant Customers place orders with MFS for those products to be delivered to their restaurant locations. *See also* Hayes Depo. at 23:13-24:5. Nowhere in the testimony cited by Plaintiff did he contend that products remained in the Riverside DC for *longer* than 13 days. The fact that MFS "resells" products that it purchases from suppliers to its Restaurant Customers does not result in a dispute as to the time that those products are in inventory at the Riverside DC prior to delivery to Restaurant Customers. | |
| 60.  Many products received from suppliers at the Riverside DC with short shelf lives, such as produce and meat, have a maximum shelf life of between 2 and 7 days during which they can be sold and delivered to Restaurant Customers. | Undisputed that products sit in general inventory at the McLane distribution center *unless and until* the local franchises in California place *separate* orders for those products, which McLane then **resells** on the retail market for a profit. *See* Hayes Depo., 17:15-23, 18:20-21:13, 25:21-26:15, 37:1114; Taub Dep., 8:17-10:12, 19:12-17, 20:9-22:14, 36:3-7. Tiblier Dep., 44:1-17. |

**60.  Moving Party's Response**

This UF does <u>not</u> state that "products sit in general inventory at the McLane distribution center *unless and until* the local franchises in California place *separate* orders for those products." In any event, Plaintiffs' cited testimony does not create a dispute of fact because none of the cited testimony has anything to do with the amount of time a product stays in the Riverside DC before it is delivered to a Restaurant Customer.

<u>First</u>, Mr. Tiblier's and Mr. Taub's cited testimony pertains to how products are received and tracked at the Riverside DC. <u>Second</u>, Mr. Hayes testified that products ordered by MFS from suppliers are delivered to the Riverside DC and that Restaurant Customers place orders with MFS for those products to be delivered to their restaurant locations. *See also* Hayes Depo. at 23:13-24:5. Nowhere in the testimony cited by Plaintiff did he contend that products with short shelf lives remain in the Riverside DC for *longer* than 2 to 7 days.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| The fact that MFS "resells" products that it purchases from suppliers to its Restaurant Customers does not result in a dispute as to the time that those products are in inventory at the Riverside DC prior to delivery to Restaurant Customers. | |
| 61.   MFS owns the Riverside DC. | Undisputed. |
| 62.   MFS employs all of the individuals who work at the Riverside DC (including receivers, selectors and drivers). | Undisputed. |
| 63.   MFS determines the delivery routing of ordered products from the Riverside DC to the Restaurant Customers and actually performs such transportation using drivers like Plaintiffs employed by MFS. | Undisputed. |
| 64.   MFS's transportation operations are conducted directly or indirectly through its 100% commonly owned affiliates, MFS Fleet, Inc. ("MFS Fleet") and/or Transco, Inc. ("Transco"), which are consolidated fleet entities that support MFS's foodservice delivery operations at its DCs nationwide, including the Riverside DC. | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities. |

**64.   Moving Party's Response**

Plaintiffs do not actually identify any dispute.  They only lodge an objection.

Under the Local Rules, "[f]or each disputed fact, the Statement of Genuine Disputes **must** provide pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."  L.R. 56-2 (emph. added). Because Plaintiffs do not cite to any evidence supporting their attempt to dispute the quoted statement, they have failed to properly dispute this

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

fact. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Moreover, nothing in L.R. 56-2 or FRCP 56 permits Plaintiffs to incorporate an entire document by reference rather than providing pinpoint citations to evidence in the record that supports their contention that the UF is disputed. In any event, "[w]hile objections to evidence may be appropriate, objections to parties' statements of facts are unhelpful. They fail to inform the Court whether the facts are actually disputed, as is required under the local rules, and they fail to serve any other useful purpose." *Brayton*, 2015 WL 13915732, at *2. MFS has substantively responded to Plaintiffs' meritless Evidentiary Objections in its concurrently-filed response thereto. However, for purposes of this response, MFS notes that it produced documents identifying MFS Fleet, Inc. and Transco, Inc., and their relationship to MFS, in discovery (MFS-0000240, MFS-0006122-6127). Plaintiffs' failure to review MFS's document production does not amount to a failure to disclose by MFS.

| | |
|---|---|
| 65.  MFS Fleet is an interstate motor carrier registered with the U.S. Department of Transportation ("DOT"). | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities. |

**65.  Moving Party's Response**

*See* Moving Party's Response to UF 64.

| | |
|---|---|
| 66.  Transco is an interstate motor carrier registered with the DOT. | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| **66.    Moving Party's Response**<br><br>*See* Moving Party's Response to UF 64. | |
| 67.    MFS Fleet owns and/or operates the tractors and trailers that are exclusively used by MFS in its foodservice delivery operations. | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities. |
| **67.    Moving Party's Response**<br><br>*See* Moving Party's Response to UF 64. | |
| 68.    A portion of the tractors and trailers operated by MFS Fleet are owned and titled, or leased from third party vendors, in the name of Transco, which in turn leases (or subleases) that equipment to MFS Fleet. | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities. |
| **68.    Moving Party's Response**<br><br>*See* Moving Party's Response to UF 64. | |
| 69.    MFS Fleet operates as MFS's in-house motor carrier. | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities. |
| **69.    Moving Party's Response**<br><br>*See* Moving Party's Response to UF 64. | |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 70.  Drivers employed by MFS at the Riverside DC are leased to MFS Fleet and drive the commercial motor vehicles ("CMVs") operated by MFS Fleet for MFS's foodservice delivery operations. | Disputed. *See* Plaintiffs' Evidentiary Objections filed separately. This information should be stricken because McLane failed to disclose any information about MFS Fleet, Transco, or any other entities |
| **70.**  **Moving Party's Response**<br><br>*See* Moving Party's Response to UF 64. | |
| 71.  Because the CMVs used by MFS in its foodservice delivery operations are operated by a DOT federally-regulated motor carrier, MFS is required to outfit its trucks with an electronic logging device ("ELD") used by its drivers to accurately record their duty status, along with other data elements such as the date, time and geographic location information of the truck when it is in transit. | Undisputed that McLane's trucks have ELD. |
| **71.**  **Moving Party's Response**<br><br>It is unclear whether Plaintiffs dispute any portion of this UF.  If they do claim such a dispute, they have neither identified the disputed portion of this UF nor provided "pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."  L.R. 56-2 (emph. added). As such, they have failed to properly dispute this fact on any basis.  *See, e.g., Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").  | |
| 72.  MFS utilizes the PeopleNet fleet management software and a global positioning system ("GPS") that | Undisputed that McLane's trucks have GPS. |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| provides end-to-end tracking of the CMVs used by MFS in its foodservice delivery operations. | |

**72.   Moving Party's Response**

It is unclear whether Plaintiffs dispute any portion of this UF. If they do claim such a dispute, they have neither identified the disputed portion of this UF nor provided "pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, they have failed to properly dispute this fact on any basis. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

| 73.   The information collected by the ELD and PeopleNet software includes, among other things, the date, time and GPS coordinates (including city and state) associated with each activity a driver logs into the ELD and/or that is automatically logged by the ELD. | Undisputed that McLane collects data with ELD and PeopleNet. |
|---|---|

**73.   Moving Party's Response**

It is unclear whether Plaintiffs dispute any portion of this UF. If they do claim such a dispute, they have neither identified the disputed portion of this UF nor provided "pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed." L.R. 56-2 (emph. added). As such, they have failed to properly dispute this fact on any basis. *See, e.g.*, *Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 74.  MFS provides transportation of goods from the Riverside DC to Restaurant Customers for compensation. | Undisputed. |
| 75.  MFS is a motor carrier. | Undisputed. |
| 76.  Since January 2021, the Riverside DC has had on average approximately 30 weekly routes delivering orders to Restaurant Customers outside California, including in Utah, Nevada, and Arizona, which routes are assigned to and driven by dozens of MFS drivers. | Undisputed that McLane has interstate routes. Disputed that these routes are just randomly assigned to its drivers. More specifically, drivers bid on these routes and 280-290 of other intrastate routes. Tiblier Dep., 20:12-21. McLane drivers do not have to bid on interstate routes – it is voluntary. Tiblier Dep., 21:6-17; 22:11-19 (no discipline for not taking such routes). Defendant's drivers are not required or expected to take any route they are assigned. *Id*. at 25:12-20, 29:2-25. |

**76.  Moving Party's Response**

Plaintiff purports to dispute this UF on the grounds that "routes are [not] just randomly assigned to its drivers."  But this UF contains no such statement.  Moreover, none of the cited testimony disputes that the Riverside DC has had on average approximately 30 weekly routes delivering orders to Restaurant Customers outside of California and that those routes were driven by dozens of drivers.  In any event, it is undisputed that drivers' scheduled interstate routes were reassigned every 6 months through a bidding process, MFS retained discretion to assign Plaintiffs (or any drivers) to drive any route in lieu of or in addition to their scheduled routes, and drivers who refused an open route were assigned disciplinary points for lack of attendance.  Tiblier Decl., ¶¶ 15-18; Tiblier Depo. at 22:11-26:7, 29:2-5.

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 77.   The Riverside DC currently runs approximately 32 routes per week that deliver to Restaurant Customers outside of California, including in Nevada and Utah. | Undisputed. |
| 78.   The Riverside DC runs approximately 300 delivery routes per week that deliver to Restaurant Customers within California. | Undisputed. |
| 79.   MFS's drivers working out of the Riverside DC bid on the regular workdays and scheduled delivery routes they want to be assigned on a semi-annual basis. | Undisputed. |
| 80.   MFS drivers at the Riverside DC with the most seniority get to bid on their preferred workdays and routes first, followed by drivers with progressively less seniority until all of the required workdays and routes are chosen. | Undisputed. |
| 81.   "Bracket drivers" are drivers at the Riverside DC who did not get assigned any routes or a full schedule of routes during the bid process. | Undisputed that McLane has "bracket drivers." |

**81.    Moving Party's Response**

It is unclear whether Plaintiffs dispute any portion of this UF.  If they do claim such a dispute, they have neither identified the disputed portion of this UF nor provided "pinpoint citations (including page and line numbers, if available) to evidence in the record that supports the claim that the fact is disputed."  L.R. 56-2 (emph. added). As such, they have failed to properly dispute this fact on any basis.  *See, e.g., Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|

that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

| 82.   Bracket drivers at the Riverside DC are responsible for covering open routes as and when available and thus can be asked to cover any route, including an interstate route, at any time. | Disputed. Defendant's drivers, including bracket drivers, are not required or expected to take any route they are assigned. *Id*. at 25:1220, 29:2-25. |
|---|---|

**82.   Moving Party's Response**

Plaintiffs' cited testimony does not result in a dispute. <u>First</u>, although not identified, it appears that Plaintiffs are citing to the Tiblier Depo. <u>Second</u>, nothing in the cited testimony pertains to the responsibilities of bracket drivers to cover open routes. To the contrary, Mr. Tiblier testified that interstate routes that are not assigned through the bidding process were assigned on a daily basis to any available driver, including bracket drivers and drivers who drove scheduled routes on other days. Tiblier Depo. at 23:7-26:7, 29:2-5. Indeed, Mr. Tiblier stated that there have been occasions where a driver was pulled off of his scheduled route to cover an open route. Tiblier Decl., ¶ 17. <u>Third</u>, during his deposition, Mr. Tiblier testified that, for example, drivers who were last on call and refused an open route (including an open intrastate route) would be assigned disciplinary points for lack of attendance. Tiblier Depo. at 21:6-23:6, 22:11-19; *see also* Tiblier Decl., ¶ 18.

| 83.   If there are no bracket drivers available to cover an open route at the Riverside DC, another driver — including a driver who bid on and received a regular route — must cover the open route. | Disputed. Defendant's drivers are not required or expected to take any route they are assigned. *Id*. at 25:1220, 29:2-25. |
|---|---|

**83.   Moving Party's Response**

Plaintiffs' cited testimony does not result in a dispute. <u>First</u>, although not identified, it appears that Plaintiffs are citing to the Tiblier Depo. <u>Second</u>, Mr. Tiblier testified that interstate routes that are not assigned through the bidding process were

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| assigned on a daily basis to any available driver, including bracket drivers and drivers who drove scheduled routes on other days. Tiblier Depo. at 23:7-26:7, 29:2-5. Indeed, Mr. Tiblier stated that there have been occasions where a driver was pulled off of his scheduled route to cover an open route. Tiblier Decl., ¶ 17. <u>Third</u>, during his deposition, Mr. Tiblier testified, for example, that drivers who were last on call and refused an open route (including an open intrastate route) would be assigned disciplinary points for lack of attendance. Tiblier Depo. at 21:6-23:6, 22:11-19; *see also* Tiblier Decl., ¶ 18. | |
| 84. In addition to, or at times in lieu of, their regular workdays and routes, non- bracket drivers at the Riverside DC may be required to cover open routes due to vacation, call-offs, injuries, and other circumstances that cause the driver that typically drives the route to be unavailable to do so. | Disputed. Defendant's drivers are not required or expected to take any route they are assigned. *Id*. at 25:1220, 29:2-25. |

**84.** **Moving Party's Response**

Plaintiffs' cited testimony does not result in a dispute. <u>First</u>, although not identified, it appears that Plaintiffs are citing to the Tiblier Depo. <u>Second</u>, Mr. Tiblier testified that interstate routes that are not assigned through the bidding process were assigned on a daily basis to any available driver, including bracket drivers and drivers who drove scheduled routes on other days. Tiblier Depo. at 23:7-26:7, 29:2-5. Indeed, Mr. Tiblier stated that there have been occasions where a driver was pulled off of his scheduled route to cover an open route. Tiblier Decl., ¶ 17. <u>Third</u>, during his deposition, Mr. Tiblier testified, for example, that drivers who were last on call and refused an open route (including an open intrastate route) would be assigned disciplinary points for lack of attendance. Tiblier Depo. at 21:6-23:6, 22:11-19; *see also* Tiblier Decl., ¶ 18.

| | |
|---|---|
| 85. All Riverside DC drivers (*i.e.*, bracket and non-bracket drivers) can be assigned to cover any route at any time during holidays, natural disasters, emergencies, or otherwise as MFS | Disputed. Defendant's drivers are not required or expected to take any route they are assigned. *Id*. at 25:1220, 29:2-25. Tiblier Dep., 29:1931:1. Bidding occurred every six months and once drivers accepted their local routes, they |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| deems necessary to achieve consistent deliveries to its customers. | were expected to stay on that route for a six-month period. Tiblier Dep., 29:19-31:1. |

**85.   Moving Party's Response**

Plaintiffs' cited testimony does not result in a dispute. <u>First</u>, it is undisputed that drivers' scheduled interstate routes were reassigned every 6 months through a bidding process. *See supra* UF 79-80. <u>Second</u>, Mr. Tiblier testified that interstate routes that are not assigned through the bidding process were assigned on a daily basis to any available driver, including bracket drivers and drivers who drove scheduled routes on other days. Tiblier Depo. at 23:7-26:7, 29:2-5; *see also* Tiblier Decl., ¶¶ 15-18.  Indeed, Mr. Tiblier stated that there have been occasions where a driver was pulled off of his scheduled route to cover an open route.  Tiblier Decl., ¶ 17.  <u>Third</u>, during his deposition, Mr. Tiblier testified, for example, that drivers who were last on call and refused an open route (including an open intrastate route) would be assigned disciplinary points for lack of attendance.  Tiblier Depo. at 21:6-23:6, 22:11-19; *see also* Tiblier Decl., ¶ 18.

| 86.   Riverside DC drivers may be temporarily assigned to work at another MFS DC outside of California. | Undisputed that drivers may be temporarily assigned to work at another MFS DC outside of California. Disputed that driver must work this assignment. Defendant's drivers are not required or expected to take any route they are assigned. *Id*. at 25:12-20, 29:2-25. Bidding occurred every six months and once drivers accepted their local routes, they were expected to stay on that route for a six-month period. Tiblier Dep., 29:19-31:1. |

**86.   Moving Party's Response**

None of Plaintiffs' cited testimony pertains to situations where a driver is assigned to work at another MFS DC outside of California.  Mr. Tiblier stated that, "if the need is great enough and there are insufficient (or no) volunteers, a driver from the Riverside DC will be temporarily assigned to work at another DC."  Tiblier Decl., ¶ 19.  Additionally, during his deposition, Mr. Tiblier testified, for example, that

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| drivers who were last on call and refused an open route (including an open intrastate route) would be assigned disciplinary points for lack of attendance.  Tiblier Depo. at 21:6-23:6, 22:11-19; *see also* Tiblier Decl., ¶ 18.  Plaintiffs' cited testimony is not in conflict with *any* of the foregoing evidence. | |
| 87.    Riverside DC drivers, including Plaintiffs during their employment with MFS, bid on the trucks (i.e., tractors) that they wanted to drive. | Disputed. Drivers do not pick their trucks. McLane assigns drivers truck based on a driver's weekly mileage for the route and then drivers keep the same truck for the 6-month duration of their route assignment. Tiblier Depo., 31:733:17. |
| **87.    Moving Party's Response**<br><br>Plaintiffs' cited testimony does not create a dispute.  Indeed, Plaintiffs blatantly misrepresent the cited testimony in which Mr. Tiblier clearly states that drivers "go through the tractor bid process, whatever truck ***they pick*** is the truck that they have."  Tiblier Depo. at 31:20-32:2 (emph. added); *see also* Tiblier Decl., ¶ 20. | |
| 88.    Riverside DC drivers must meet a minimum miles per week threshold, which changes for each bid depending on staffing levels, route volume, and fleet size, in order to qualify for the tractor bid. | Undisputed but not material. |
| 89.    Depending on the number of weekly miles driven by drivers at the time of the tractor bid and their seniority in comparison to other drivers employed at the Riverside DC, drivers (including Plaintiffs during their employment) can bid on tractors in one of three classes (which are based on the age and milage of the tractors). | Undisputed but not material. |

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 90.   Plaintiff Jordan Orozco Madero ("Madero") was employed by MFS and worked as a driver at the Riverside DC from January 2019 to September 2023. | Undisputed. |
| 91.   Plaintiff Esteban Orosco ("Orosco") was employed by MFS and worked as a driver at the Riverside DC from August 2018 to November 2023. | Undisputed. |
| 92.   All truck drivers employed by MFS, including Plaintiffs during their employment, are required to have and maintain a valid Commercial Driver License ("CDL"). | Undisputed. |
| 93.   All truck driver[s] employed by MFS, including Plaintiffs during their employment, were required to maintain electronic logs of their duty status pursuant to the Federal Motor Carrier Safety Administration's Hours of Service ("HOS") regulations and to use the electronic logging devices in their trucks to accurately record their duty status. | Undisputed that McLane drivers maintained electronic logs using the electronic logging devices in their trucks. Disputed that these logs are accurate. Plaintiffs allege that they were required to log out for their meal periods even though they did not actually take their meal period. Plaintiffs further alleged that the records do not reflect work done before they entered their truck and after they left their trailer. This work was unreported and uncompensated – i.e., paperwork, key checks, routing, and waiting for the load. [So-called "off the clock" work]. First Amended Complaint, ¶¶ 25-44. |

**93.   Moving Party's Response**

Plaintiffs claim to dispute this UF on the grounds that HOS logs are not "accurate"—but this UF does not say anything about the accuracy of HOS logs.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Because Plaintiffs do not dispute that "McLane drivers maintained electronic logs using the electronic logging devices in their trucks," they have not identified any genuine dispute with respect to this UF.  Moreover, Plaintiffs' cannot rely on their allegations in their First Amended Complaint to machinate a genuine dispute.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (party opposing summary judgment cannot resist a properly made motion by reference only to its pleadings). | |
| 94.   Throughout their employment with MFS, Plaintiffs were employed as drivers. | Undisputed. |
| 95.   As drivers, Plaintiffs' primary job duty was to operate large CMVs on public roads and highways to deliver products to MFS's Restaurant Customers. | Undisputed. |
| 96.   The CMVs driven by drivers at the Riverside DC all have a gross vehicle weight rating of over 10,000 pounds— and usually 33,000 to 80,000 pounds. | Undisputed. |
| 97.   At no time during their employment did Plaintiffs drive a CMV or other vehicle weighing less than 10,000 pounds. | Undisputed. |
| 98.   Plaintiff Madero drove interstate routes for MFS on over 10 occasions between January 2020 and March 2022. | Undisputed. However, Plaintiffs Madero and Orosco last out-of-state trip was on March 3, 2022 and November 28, 2021 respectively. *See* HOS records attached to McLane's Motion to Dismiss, Decl. of Marcus Tiblier. Exh. C. |
| 99.   Plaintiff Orosco drove interstate routes for MFS on over 20 occasions | Undisputed. However, Plaintiffs Madero and Orosco last out-of-state trip was on March 3, 2022 and November |

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| between December 2019 and November 2021. | 28, 2021 respectively. See HOS records attached to McLane's Motion to Dismiss, Decl. of Marcus Tiblier. Exh. C. |
| 100. During his employment with MFS, Orosco routinely traveled to MFS distribution centers in other states on temporary assignments to work as a driver at those distribution centers. | Disputed. Orosco did not "routinely travel" to MFS distribution centers in other states. There was only a handful of times that he drove for McLane outside of California. In 2019, he drove one route that went to St. George in Utah, and Las Vegas, Nevada. I drove this route for about a month. During that time, my other routes were still local, within the state of California. Orosco Decl. ¶ 4. Any assignments out of state were for a limited time period and only at the beginning of their employment. |

**100. <u>Moving Party's Response</u>**

Plaintiffs' cited evidence does not create a genuine dispute. <u>First</u>, Plaintiffs' dispute focuses on routes that Orosco drove while working out of the Riverside DC. However, this UF pertains to instances where Orosco traveled to and worked out of *a different* distribution center in *another state*. <u>Second</u>, Plaintiffs do not dispute that Orosco traveled to other distribution centers on multiple occasions. <u>Third</u>, Orosco did not only drive out-of-state assignments at the beginning of his employment. His HOS logs establish that he traveled to and worked as a driver on a temporary assignment at MFS's distribution center in Portland, Oregon in September-November 2021—three years into his 4-years of employment. Tiblier Decl., ¶¶ 26-27 & Exh. B.

| | |
|---|---|
| 101. During his employment with MFS, Madero also traveled to MFS distribution centers in other states on temporary assignments to work as a driver at those distribution centers. | Disputed. Madero's out of state travel was very limited at the beginning of his employment. At the start of his employment, he worked out of Wisconsin for a month. Then he drove |

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| | a route to Utah and Las Vegas as part of his training, for about 2 weeks, for 2-3 days a week. Around 2020, he also drove in Kansas for about a month. Approximately two years ago, he drove in Nevada for about a month. Madero Decl. ¶ 4. However, he was not required to take these routes and was simply offered them. Defendant's drivers are not required or expected to take any route they are assigned. Tiblier Depo., 25:12-20, 29:2-25. |

**101. Moving Party's Response**

Plaintiffs do not identify a genuine dispute.  Indeed, Plaintiffs admit that Madero traveled out-of-state to work at other MFS distribution centers.  Whether he was "required or expected to take" any routes or when he drove such routes does not alter the fact that he *did* travel to MFS distribution centers in other states on temporary assignments to work as a driver at those distribution centers.

| | |
|---|---|
| 102. Products ordered by MFS and received at the Riverside DC from out-of-state suppliers for delivery to its Restaurant Customers therefrom were transported by Plaintiffs on every California intrastate delivery route they drove during their employment in the applicable limitations period. | Disputed that these goods were in "interstate travel." McLane's suppliers/shippers lack the requisite fixed and persistent intent for a **continuous** movement in interstate commerce concerning any goods that Plaintiffs transported *beyond* the distribution center. Tiblier Dep. 40:22-24, 43:4-7, 46:4-24, 47:4-24, 48:4-10; Hayes Dep., 24:2-5 (all products are for resale); Corporate FRCP 30(b)(6) Representative Mike Taub Deposition ("Taub Dep."), 36:3-7 (same). All of McLane's suppliers intended to ship products directly to McLane's distribution center in Riverside, California. Tiblier Depo., 40:22-24, |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| | 43:4-7. ., 47:4-24 (confirming that McLane's suppliers ship directly to the distribution center; 43:4-7, 46:4-24, 48:4-10. (explaining explained that shipper, Simmons Foods, Inc. according to **one order** ships boxes of chicken wings from Gentry, Arkansas **directly to** Defendant's distribution center in Riverside, California). |

**102. <u>Moving Party's Response</u>**

Plaintiff does <u>not</u> dispute that products that originated from out-of-state suppliers were transported by Plaintiffs on every California intrastate delivery route they drove during their employment in the applicable limitations period.   Instead, Plaintiffs make a *legal argument* as to whether MFS's suppliers/shippers lacked the requisite "fixed and persisting intent" that the products that they supplied continue in interstate commerce—and then cite to testimony that they contend supports that *legal argument*.   Plaintiffs' cited testimony simply confirms that MFS purchases products from out-of-state suppliers, directs that those products be shipped to the Riverside DC, and resells and distributes those products to Restaurant Customers. As such, Plaintiffs' cited testimony is not in conflict with the stated UF.

| | |
|---|---|
| 103. As an example, on August 18, 2021, Madero drove a California intrastate delivery route on which (a) he delivered 1,202 cases of product to Restaurant Customers from the Riverside DC that had been temporarily stored in the Riverside DC for an average of 11.5 days, (b) 686 or 57.1% of those 1,202 cases had been received at the Riverside DC from non-California suppliers, (c) those 686 cases received from non-California suppliers had been temporarily stored at the Riverside DC for an average of 12.0 days, and (d) 548 or 45.6% of those | Disputed. *See* Response to No. 102. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 1,202 cases received from non-California Suppliers had been temporarily stored in the Riverside DC for up to 12.0 days. | |
| **103. Moving Party's Response**<br><br>*See* Moving Party's Response to UF 102. | |
| 104. As an example, on April 26, 2021, Orosco drove a California intrastate delivery route on which (a) he delivered 937 cases of product to Restaurant Customers from the Riverside DC that had been temporarily stored in the Riverside DC for an average of 11.8 days, (b) 492 or 52.5% of those 937 cases had been received at the Riverside DC from non-California suppliers, c those 492 cases received from non-California suppliers had been temporarily stored at the Riverside DC for an average of 13.9 days, and (d) 388 or 41.4% of those 937 cases received from non-California Suppliers. | Disputed. *See* Response to No. 102. |
| **104. Moving Party's Response**<br><br>*See* Moving Party's Response to UF 102. | |
| 105. During their employment in the applicable limitations period, Madero and Orosco delivered 495,943 and 402,499 total cases of product, respectively, to Restaurant Customers from the Riverside DC on California intrastate delivery routes, which cases had been temporarily stored in the | Disputed. *See* Response to No. 102. |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| Riverside DC for an average of 13.2 and 13.3 days, respectively. | |

**105. <u>Moving Party's Response</u>**

*See* Moving Party's Response to UF 102.

| | |
|---|---|
| 106. With respect to the cases of product that Plaintiffs delivered to Restaurant Customers from the Riverside DC on California intrastate delivery routes during their employment in the applicable limitations period, over 50% of those cases originated from suppliers outside of California. | Disputed. *See* Response to No. 102. |

**106. <u>Moving Party's Response</u>**

*See* Moving Party's Response to UF 102.

| | |
|---|---|
| 107. With respect to the cases of product that Plaintiffs delivered to Restaurant Customers from the Riverside DC on California intrastate delivery routes during their employment in the applicable limitations period, those cases were in the Riverside DC for an average of 13.9 and 14.2 days as to Madero's and Orosco's routes, respectively, before being delivered to the Restaurant Customers. | Disputed. *See* Response to No. 102. |

**107. <u>Moving Party's Response</u>**

*See* Moving Party's Response to UF 102.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANT'S RESPONSE TO STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

| Defendant's Alleged Unconverted Facts and Supporting Evidence | Plaintiffs' Response and Evidence |
|---|---|
| 108. With respect to the cases of product that Plaintiffs delivered to Restaurant Customers from the Riverside DC on California intrastate delivery routes during their employment in the applicable limitations period, 218,426 or 44.0% of those cases delivered by Madero were in the Riverside DC for up to 13.9 days and 170,794 or 42.4% of those cases delivered by Orosco were in the Riverside DC for up to 14.2 days before being delivered to the Restaurant Customers. | Disputed. *See* Response to No. 102. |

**108. Moving Party's Response**

*See* Moving Party's Response to UF 102.

Dated:  September 5, 2024          **BAKER & HOSTETLER LLP**

By:   */s/ Matthew C. Kane*
              Matthew C. Kane
              Sylvia J. Kim
              Amy E. Beverlin
              Kerri H. Sakaue
              Attorneys for Defendant
              MCLANE FOODSERVICE, INC.