DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol Ave., Suite 650
Costa Mesa, CA 92626
Tel: (949) 614-5830
Fax: (949) 271-4190
aashish@desai-law.com
adrianne@desai-law.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JORDAN OROZCO MADERO and
ESTEBAN OROSCO on behalf of
themselves and all others similarly
situated,

           Plaintiffs,

v.

McLANE FOODSERVICE, INC., a
Texas Corporation, and DOES 1-10,
inclusive,

           Defendants.

Case No. 5:24-cv-00073-KK-DTB

Hon. Kenly Kiya Kato

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO
REQUIRE AMENDMENT OF
PLAINTIFFS' FIRST AMENDED
COMPLAINT TO ELIMINATE
PUTATIVE CLASS ACTION
ALLEGATIONS AND/OR FOR AN
ORDER STRIKING THE SAME**

**HEARING:**
Judge:    Hon. Kenly Kiya Kato
Date:     February 20, 2025
Time:     9:30 a.m.
Location:  Courtroom 3

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................iii

I.    INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND............................................................................. 1

II.    LEGAL ARGUMENT....................................................................................... 3

    A.    Legal Standard........................................................................................ 3

    B.    McLane Has Not Met the Standard to Strike the Allegations or Force an Amendment ............................................................................ 4

    C.    Federal Jurisdiction Does Not Exist After the Court Dismissed Plaintiffs' Federal Claims...................................................................... 5

    D.    Supplemental Jurisdiction Does Not Exist ........................................... 8

III.    CONCLUSION.................................................................................................. 9

WORD COUNT CERTIFICATION ...................................................................... 11

DECLARATION ................................................................................................... 12

# TABLE OF AUTHORITIES

C<small>ASES</small>

*Conrad Assoc. v. Hartford Ass. & Indem. Co.*,
  994 F.Supp. 1196 (N.D. Cal. 1998 .......................................................... 6

*Faulker v. Astro-Med, Inc.*,
  1999 WL 820198 (N.D. Cal. 1999) ........................................................ 6

*Lazar v. Trans Union LLC*,
  195 F.R.D. 665 (C.D. Cal. 2000) ............................................................ 4

*Martinez v. Morgan Stanley*,
  2010 WL 3123175 (S.D. Cal. Aug. 9, 2010) ......................................... 6

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
  352 F. Supp. 2d 1048 (N.D. Cal. 2004) ................................................ 4

*RDF Media Ltd. v. Fox Broadcasting Co.*,
  372 F. Supp. 2d 556 (C.D. Cal. 2005) .................................................... 4

*Roth v. Comerica Bank*,
  799 F.Supp.2d 1107 (C.D. Cal. 2010) .................................................... 6

*Royal Canin U.S.A. Inc., v. Wullschleger*,
  No. 23-677 (Jan. 15, 2025) ...................................................................... 8

*Sidney-Vinstein v. A.H. Robins Co.*,
  697 F.2d 880 (9th Cir. 1983) .................................................................. 3

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) .................................................................. 4

*Wyshak v. City Nat. Bank*,
  607 F.2d 824 (9th Cir. 1979) .................................................................. 3

R<small>ULES</small>

28 U.S.C. § 1332(a) ....................................................................................... 5

Fed. R. Civ. P. 12(f) ...................................................................................... 3

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................ 4

Fed. R. Civ. P. 16(b) ................................................................................................. 5

Fed. R. Civ. P. 12(f), 23(c)(1)(A), and 23(d)(1)(D) .................................................. 3

S<small>TATUTES</small>

Cal. Labor Code §§ 201-203 ...................................................................................... 7

## I. INTRODUCTION

The Motion to Require Amendment of the First Amended Complaint to Eliminate Class Action Allegations, and/or Strike [Dkt. No. 110] ("Motion") filed by Defendant McLane Foodservice, Inc. ("McLane" or "Defendant"), is, in two words, unfortunate and unnecessary.

On January 14, ***three days*** before McLane filed its Motion, Plaintiffs already confirmed that considering the Court's order regarding Plaintiffs' Request for Dismissal, **it will not move forward with class certification**. Despite this clarification, McLane insists on filing this Motion, and contends that Plaintiffs must amend their Complaint, even though it is well past the September 2024 deadline to amend the pleadings and McLane has made no showing of "good cause" as to why the Scheduling Order should be modified. McLane's Motion is clearly an abuse of the legal process generating unnecessary resources and time from the parties and this Court.

This situation underscores a critical point: there is a lack of federal jurisdiction in this case. The California minimum wage claims do not reach the $75,000 threshold for each plaintiff. Given the absence of jurisdiction, Plaintiffs respectfully request that the Court deny McLane's motion as moot and dismiss these claims under Rule 41.

## II. FACTUAL BACKGROUND

Although McLane's Motion is essentially moot because Plaintiffs have agreed not to move for class certification, Plaintiffs are compelled to respond to McLane's attacks on them.

Plaintiffs did not ignore or miss the class certification. Rather, Plaintiffs diligently followed the Court's phasing of the litigation. As this Court well knows, the Court and the parties effectively proceeded as though there was a stay on the state law claims while the Court adjudicated McLane's MCA exemption defense.

McLane's own conduct exhibits it was operating with this same understanding:

- McLane did not depose or seek to depose the Named Plaintiffs **until after** the Court ruled on the cross-MSJs and only served these deposition notices in late-December;
- McLane served no other written discovery on the state law claims **until after** the Court ruled on the cross-MSJs, again in late December;
- McLane did not move for summary judgment or dismissal on the state law claims; and
- McLane's corporate witness only testified as to issues related to the MCA exemption defense.

McLane's attempt to cast Plaintiffs as idle or neglectful is facially incorrect. The Court, in its order staying the Motion for Conditional Certification, expressly stayed the Motion "to allow the parties to engage in discovery to address the exemption issue." [Dkt. No. 23]. Plaintiffs, in good faith, read this order as limiting discovery to the MCA exemption issue so that the parties could brief this issue, and the Court could rule upon it. Plaintiffs' interpretation was confirmed when **all the parties** operated under the same understanding and limited the litigation and all discovery to just the MCA exemption issue. There was no action or evidence to the contrary. McLane only ever acted contrary to this implicit stay when it sought a "gotcha" moment to threaten a motion to strike Plaintiffs' class allegations just a few weeks ago.[1]

In fact, Plaintiffs filed a request for dismissal because the case is in an unusual procedural posture. The parties briefed the MCA exemption issue in August 2024,

---

[1] Although Defendant claims that the jurisdiction issue was resolved as early as October, its own inaction shows otherwise. Defendant did not meet and confer or move to file either of its "forthcoming motions" until just a few weeks ago; three months after the jurisdiction issue was allegedly resolved and just before the discovery deadline.

and the Court issued its ruling in October 2024, leaving little to no time to file a motion for class certification by McLane's asserted November deadline, even if discovery was permitted on these issues which Plaintiffs understood it was not. And when it issued its ruling, the Court separately asked the parties to brief the issue of jurisdiction over the remaining state law claims. The Court did not make a ruling on this jurisdictional question, effectively placing the case in abeyance until the threshold jurisdictional determination was made. Indeed, the Scheduling Order was not even issued until Aug. 2, 2024. Without jurisdiction, any action by Plaintiffs to litigate the remaining state law claims in this forum would be futile and a waste of resources. Again, this is why Plaintiffs made their request for dismissal to allow them to litigate their state law claims in the proper forum.

In any event, as soon as the Court denied their request for dismissal, and even in the face of this confusion, Plaintiffs worked diligently to move forward with their individual claims, responding to written discovery and informing McLane repeatedly that they will not pursue their class claims. Despite this compromise, McLane insists on bringing this Motion.

## III.    LEGAL ARGUMENT

### A.    Legal Standard

McLane seeks to force Plaintiffs to amend their complaint and/or strike Plaintiffs' class allegations pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).  Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with

those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co*., 697 F.2d 880, 885 (9th Cir. 1983). However, motions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits. *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D. Cal. 2000). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Order, at 6-7. Under Rule 23(c)(1)(A), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). And under Rule 23(d)(1)(D), the court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representations of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

Whether to grant a preemptive motion to strike is within the Court's sound discretion. *See Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 942 (9th Cir. 2009). But a district court's consideration of such a preemptive motion would "be improper if [the plaintiff can] show some procedural prejudice from the timing of the consideration." *Id.*

### B.  <u>McLane Has Not Met the Standard to Strike the Allegations or Force an Amendment</u>

First, McLane does not meet the standard to strike the class allegations or force Plaintiffs to amend the complaint. The pleadings do not require amendment, nor do the pleadings have to be stricken because Plaintiffs ***already agreed not to move for class certification***. If there was any confusion about this, Plaintiffs reiterated this to the Court and to McLane in their request for dismissal.  There is simply no reason

for this motion or any order from the Court striking the pleadings or mandating amendment.

Second, there is no caselaw mandating amendment. McLane cites **zero** case law to support its position that amendment is required after plaintiffs have notified the court and the defendant of their intention not to pursue class claims. Furthermore, since McLane insists that the Court's August 2nd Scheduling Order controls (Dkt. No. 79), Plaintiffs cannot amend the pleadings because the deadline to do so passed on September 12, 2024. Federal Rule of Civil Procedure 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause …." Here, there is simply no good cause to modify the Scheduling Order and McLane makes no effort to show any; nor has McLane even made a request to do so. This conclusion is underscored by McLane's insistence on attacking Plaintiffs vis-à-vis this Motion for failing to meet the deadlines set forth by this very same Scheduling Order.

## C.   Federal Jurisdiction Does Not Exist After the Court Dismissed Plaintiffs' Federal Claims

To start, the Court categorically has not made any ruling on whether it has jurisdiction over the remaining claims. In its prior orders, this Court simply discharged its OSC -- i.e., "The Court is in receipt of the parties' responses." (Doc. No. 105). Even when Plaintiffs requested dismissal, the Court denied the request but made no findings as to jurisdiction.

Given this silence, Plaintiffs again reiterate that no federal jurisdiction exists as to the remaining *individual* state claims of the two drivers. Since Plaintiffs will not be moving for class certification, the only basis for federal jurisdiction are the individual state law minimum wage claims. *See* 28 U.S.C. § 1332(a) (individual claims must exceed $75,000). However, as we previously noted to the Court, Defendant misrepresented the damage estimates when it argued for jurisdiction. *See* Def's Response to OSC, Dkt. No. 103 (using a 100% violation rate and unreasonable

estimates for attorney's fees to substantiate the individual $75,000 amount in controversy requirement). In fact, Defendant's assumption of a 100% violation rate for each California wage violation is categorically unsupported by the law. *Martinez v. Morgan Stanley*, 2010 WL 3123175, at*5 (S.D. Cal. Aug. 9, 2010) (just because plaintiffs claimed to consistently work overtime that does not provide a basis to assume that every class member worked any particular number of overtime hours, much less that he or she worked the same number of overtime hours every week of the workday); *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1124 (C.D. Cal. 2010) (defendant's 100% calculation is speculative).

In addition to this speculation, Defendant included *estimated* (not incurred) attorney's fees in their amount in controversy calculation. *See* Def's Response to OSC, Dkt. No. 103, pg.4 (Plaintiffs' counsel "will spend" at least 200 hours litigating). In fact, the vast bulk of the amount in controversy came from the fees:

| PLAINTIFF | CALCULATION |
|---|---|
| **Madero**: $98,563.63 | ($9,489.30 + $9,842.63+$8,891.70+$1,750+ **$68,000 estimated** attorney fees =$98,563.63) |
| **Orosco**: $102,983.63 | ($10,885.20+$11,290.50+$9,957.93+$2,350+$**68,000 estimated** attorney fees=$102,983.63) |

*See* Def's Response to OSC, Dkt. No. 103.

However, the only fees to be considered as part of the amount in controversy calculations are those ***incurred*** (not estimated) "as of the date of removal." *Conrad Assoc. v. Hartford Ass. & Indem. Co*., 994 F.Supp. 1196, 1200 (N.D. Cal. 1998) (estimation of attorneys' fees for inclusion in amount in controversy cannot be speculative and is based *on time of removal*). Given that little to no work had taken place on Plaintiffs' state wage claims at the time the Court dismissed the federal claims under the FLSA, it is completely unreasonable to assume that $68,000 in attorney's fees **were incurred** *per individual* --- bringing a total of over **$136,000 in**

6

**attorney fees** on claims that even today have not really been litigated. *Faulker v. Astro-Med, Inc*., 1999 WL 820198, at *4 (N.D. Cal. 1999) ("the only fees that can be considered are those *incurred* as of the date of removal") (emphasis supplied). Without these estimated fees included there is no chance of reaching the $75,000 amount in controversy requirement for each Plaintiffs' California minimum wage claim – and as such, no federal jurisdiction.

To make matters worse, McLane also included <u>waiting time penalties</u> in its calculation to establish the federal $75,000 amount in controversy requirement. In fact, McLane improperly included "**$8,981.70** [$42.77/hour x 7.0 hours per workday x 30 workdays]" for Plaintiff Madero, and "**$9,957.93** [$45.47/hour x 7.3 hours per workday x 30 workdays]" for Plaintiff Orosco. *See* Def's Response to OSC, Dkt. No. 103, pg.3. These amounts should not be included because the Court <u>struck</u> Plaintiffs' claims for waiting time penalties in its March 31, 2024, Order. *See* Order Granting in Part and Denying in Part Def's Motion to Dismiss and Staying Plaintiffs' Motion for Conditional Certification, Dkt. No. 23, pg.7 fn.5 (holding that Plaintiffs have "failed to state a claim" for waiting time penalties under Cal. Labor Code §§ 201-203). Thus, waiting time penalties cannot be included in the amount in controversy to establish federal court jurisdiction.

As a result, the Plaintiffs' California minimum wage claims are only:

| PLAINTIFF | CALCULATION |
|---|---|
| **Madero**: $21,081 | $9,489+ $9,842+$1,750=**$21,081** |
| **Orosco**: $24,525 | $10,885.20+$11,290.50+$2,350=**$24,525** |

These amounts (even at a 100% violation rate) are nowhere close to satisfying the federal amount in controversy and would also likely serve to "cap" or restrict any future award of attorney's fees. So, for example, it is highly unlikely a court would

award *more* (not to mention substantially more) in fees than the amount awarded for the underlying wage judgment. This is yet another reason why attorney's fees cannot provide a basis for federal jurisdiction under these facts. Indeed, in responses to interrogatories, Plaintiffs again confirmed -- in good faith -- the validity of their California minimum wage claims. *See* Plaintiffs' Response to Interrogatories, No. 6 (detailing state minimum wage claims and providing damage estimates), Ex's. A-B to Desai Decl.[2]

### D.   Supplemental Jurisdiction Does Not Exist

In a seminal case, the United States Supreme Court recently held that a case is properly remanded when a complaint no longer has federal question jurisdiction. *Royal Canin U.S.A. Inc., v. Wullschleger*, No. 23-677 (Jan. 15, 2025). Thus, "there is no discretion to decline supplemental jurisdiction here because there is no supplemental jurisdiction at all. Once the plaintiff has ditched all claims involving federal questions, the leftover state claims are supplemental to nothing – and § 1367 (A) does not authorize a federal court to resolve them." *Royal Canin*, No. 23-677 (Jan. 15, 2025).

These principles are directly on point here. This Court dismissed Plaintiffs' FLSA claims (i.e. the federal question) thus stripping it of jurisdiction because there is no supplemental jurisdiction at all over the California minimum wage claims and these claims should therefore be dismissed without prejudice as requested. *See* Plaintiffs' Request to Dismiss, Dkt. 106.

Plaintiffs here have also filed a concurrent state court PAGA claim against McLane. In that case, Judge McCormick of the Superior Court of California, County of Orange noted in her recent stay order on the PAGA claims:

> The district court has already raised the question of whether plaintiffs' remaining claims should remain in federal court. As evidenced both by their request to dismiss their class claims and by plaintiffs' counsel's

---

[2] Plaintiff Jordan Orozco Madero's Responses to Interrogatories, No. 6 attached as **Exh. A** to Desai Decl. Plaintiff Esteban Orosco's Reponses to Interrogatories, No. 6 attached as **Exh. B** to Desai Decl.

email to defense counsel, plaintiffs appear not to desire to proceed with their state law class claims in federal court. In sum, there appears a reasonable possibility that whatever remains of Plaintiffs' *Madero I* claims after the district court proceedings regarding plaintiffs' efforts to dismiss their class claims and defendant's efforts to strike them may ultimately end up in state court.

*See* Order Staying Claims until May 30, 2025 – **Ex. C** to Desai Decl. Judge McCormick implicitly recognizes that these individual state law claims are likely to end up in the proper venue: California state court.

## IV.    CONCLUSION

McLane's Motion should be denied as moot. Plaintiffs have already confirmed they will not pursue their class claims so there is no good cause to modify the Scheduling Order, and force Plaintiffs to amend the complaint or even strike the class allegations. Plaintiffs again reiterate that no federal jurisdiction exists. The total amount of the wage claims of these two individual drivers are nowhere near the jurisdictional threshold and no supplemental jurisdiction exists over the remaining state court claims. With the dismissal of the FLSA claims, Plaintiffs are now dealing with straightforward state minimum wage claims that are better suited for resolution in state court.

Finally, regardless of jurisdictional issues, we strongly urge the Court to grant the Plaintiffs' request for dismissal without prejudice under Rule 41. This will allow them the opportunity to refile and effectively litigate their individual state minimum wage claims alongside the ongoing PAGA suit. See ECF No. 106 (Request for Dismissal). This approach not only streamlines the litigation process but also ensures that all relevant claims are addressed in a cohesive manner.

//

//

1

2    Dated:  January 30, 2025

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DESAI LAW FIRM, P.C.

By: */s/ Aashish Y. Desai*
    Aashish Y. Desai
    Adrianne DeCastro
    Attorneys for Plaintiffs

1

## **CERTIFICATION**

2

3
　　The undersigned, counsel of record for Plaintiffs, hereby certifies that this brief

4
contains 2,770 words, which complies with the word limit of L.R. 11-6.1.

5

6
　　　　　　　　　　　　　　　　　*/s/ Aashish Y. Desai*

Aashish Y. Desai

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

## <u>DECLARATION OF AASHISH Y. DESAI</u>

I, Aashish Y. Desai, declare as follows:

1.      I am managing partner of Desai Law Firm, P.C., lead counsel for Plaintiffs in the above-entitled action. I am admitted to practice before all state courts throughout California and Texas. I am also admitted to practice before numerous federal courts throughout the nation, including the Central District of California, the Ninth Circuit Court of Appeals, and the United States Supreme Court. If called as a witness, I could, and would testify to the following matters, which are based upon my personal knowledge.

3.      Attached here to as **Exhibit A** is a true and correct copy of McLane's Plaintiff Jordan Orozco Madero's Responses to Interrogatories, Set Two.

4.      Attached here to as **Exhibit B** Plaintiff Esteban Orosco's Reponses to Interrogatories, Set Two.

5.      Attached here to as **Exhibit C** is a true and correct copy of the Order Staying Claims until May 30, 2025.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed this 29th of January at Costa Mesa, California.

/s/ Aashish Y. Desai

Aashish Y. Desai

# EXHIBIT A

# EXHIBIT A

**EXHIBIT A**

DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol St., Suite 650
Costa Mesa, CA 92626
Telephone:  (949) 614-5830
Facsimile:   (949) 271-4190
aashish@desai-law.com
adrianne@desai-law.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JORDAN OROZCO MADERO and ESTEBAN OROSCO on behalf of themselves and all others similarly situated,

            Plaintiffs,

v.

McLANE FOODSERVICE, INC., a Texas Corporation, and DOES 1-10, inclusive,

            Defendants.

Case No. 5:24-cv-00073-KK-DTB

Hon. Kenly Kiya Kato

**PLAINTIFF JORDAN OROZCO MADERO'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET TWO**

1

**EXHIBIT A**

PROPOUNDING PARTY:     DEFENDANT McLANE FOODSERVICE, INC.

RESPONDING PARTY:     PLAINTIFF JORDAN OROZCO MADERO

SET NO.:     TWO

## INTRODUCTORY STATEMENT

1.    These responses are made solely for the purpose of this action. Each response is subject to all objections as to competence, relevance, materiality, propriety, admissibility and any or all other objections and grounds that would require the exclusion of any statement herein, if any admission was asked for, or in any statement contained herein, was made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at time of trial.

2.    This responding party is responding to all interrogatories to the extent that the information asked for is known. However, this responding party's discovery and investigation in preparation for trial in this matter has not been completed as of the date of these responses to interrogatories and, therefore, this responding party does not propose to state herein anything more than information presently known and discovered.

3.    This responding party reserves the right to continue discovery and investigation in this matter for facts, witnesses and supporting data that may recall information, which if the responding party had presently within her knowledge, would be included in these responses. Consequently, to the extent that the interrogatories herein ask for "all facts" or the name of "all persons" or the identity of "all documents", etc. they are responded to fully insofar as the information is presently available to the responding party; and this responding party is not precluded from presenting at trial information discovered after the date of these responses to interrogatories.

4.    This preliminary statement is incorporated into each of the responses

1    set forth below.

2        5.    Plaintiff objects to Defendant's interrogatories on the ground that

3    discovery is still ongoing.  The responses set forth below are, therefore, based

4    solely upon the facts and information presently known and available to Plaintiff.

5    Discovery, investigation, research and analysis are ongoing and may disclose

6    additional facts, establish entirely new factual or legal contentions or possibly lead

7    to additions, variations and changes to this response.  Accordingly, without

8    obligating himself to do so, Plaintiff hereby reserves the right to change or

9    supplement this response as additional documents, facts and/or contentions are

10   discovered, revealed, recalled or other ascertained.  Moreover, Plaintiff hereby

11   reserves the right to refer to conduct discovery with reference to, or to offer into

12   evidence at trial, any and all facts or other information related to this action

13   irrespective of whether such information is disclosed herein.

14       6.    Plaintiff objects to Defendant's interrogatories to the extent they call

15   for disclosure of information or documents that are privileged or protected by the

16   attorney-client privilege, the work product doctrine, the right of privacy recognized

17   under Article I, Section I of the California Constitution, or any other Constitutional

18   statutory or common law privilege or protection.  In addition, Plaintiff objects to

19   Defendant's interrogatories to the extent that they seek information that reflects or

20   discloses trade secrets or other confidential or proprietary information.  Plaintiff

21   will not necessarily repeat this objection in each of the individual responses below.

22   Nonetheless, Plaintiff does not intend to waive his right to assert these or other

23   applicable privileges, and intend that all of his responses be subject to these

24   objections.

25       7.    By these responses, Plaintiff makes no admission concerning the

26   relevance or admissibility of any of the information contained herein or any of the

27   subjects that are the subject of Defendant's interrogatories.  Plaintiff hereby

28   reserves the right to make all pertinent evidentiary objections with regard to such

**EXHIBIT A**

matters at trial or at any other stage of the proceedings.

8.     Plaintiff objects generally to Defendant's interrogatories to the extent that they seek information not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

9.     Plaintiff specifically reserves his right to produce documents in lieu of answers, as provided by the *Federal Rules of Civil Procedure*.

## **INTERROGATORY RESPONSES**

**INTERROGATORY NO. 6:**

Set forth fully and in detail all of the relief YOU seek in the COMPLAINT, including the dollar amounts and factual and legal bases for all damages sought.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this interrogatory on the grounds that this request calls for legal conclusion and is vague and ambiguous. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Plaintiffs allege they are owed wages under California Labor Code §§ 1194, 1197, 1197.1 and Wage Order 9 because   Defendant willfully failed to pay Plaintiffs accrued wages for all hours of work performed as required under the California Labor Code, including Labor Code §§ 221, 223, and 1194, and paragraph 4 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order. These wages shall be calculated based on Plaintiff's employment period with the McLane.   Plaintiff Madero worked for Defendant from approximately August 2019 to September 11, 2023.   Plaintiff Orosco worked for Defendant from approximately July 2018 to

**EXHIBIT A**

November 10, 2023.

Plaintiffs allege minimum wages based on the following.

- **Pre-shift time:** Plaintiffs were not paid for performing all their pre-trip work. Plaintiffs are required to make a pre-shift inspection to ensure that (1) The tow-bar or saddle-mount connections are properly secured to the towed and towing vehicle; (2) They function adequately without cramping or binding of any of the parts; and (3) The towed motor vehicle follows substantially in the path of the towing vehicle without whipping or swerving. Additionally, Plaintiffs are required to inspect the following to ensure that they are safe: Service brakes, including trailer brake connections; Parking (hand) brake; Steering mechanism; Lighting devices and reflectors; Tires; Horn; Windshield wiper or wiper; Rear-vision mirror or mirrors; Coupling devices; Wheels and rims; and Emergency equipment. Plaintiffs must also confirm the following components are in good working order when the driver accepted the equipment: Service brake components that are readily visible to a driver performing as thorough a visual inspection as possible without physically going under the vehicle, and trailer brake connections; Lighting devices, lamps, markers, and conspicuity marking material; Wheels, rims, lugs, tires; Air line connections, hoses, and couplers; King pin upper coupling device; Rails or support frames; Tie down bolsters; Locking pins, clevises, clamps, or hooks ; and Sliders or sliding frame lock.

- **Post-trip work:** Plaintiffs were also not paid for all their post-trip work including ensuring that tow-bars and saddle-mounts are disassembled and inspected for worn, bent, cracked, broken, or missing parts. And to identify any parts that need suitable repair or replacement. Plaintiffs are also required to report on the following parts and accessories: (i) Service brakes including trailer brake connections; (ii) Parking brake; (iii) Steering mechanism; (iv) Lighting devices and reflectors; (v) Tires; (vi) Horn; (vii) Windshield wipers; (viii) Rear vision mirrors; (ix) Coupling devices; (x) Wheels and rims; and (xi)

Emergency equipment.

- **Working on "rest breaks":** Plaintiffs were also required to work by monitoring their communication devices, and ensuring the safety of the truck and inventory during their "Rest breaks" such that it was not a legally compliant rest break.

- **Working on "meal breaks":** Similarly, Plaintiffs were also required to work by monitoring their communication devices, and ensuring the safety of the truck and inventory during their "meal breaks" such that it was not a legally compliant meal break.

- **Sleeper Berth:** Plaintiffs were also not paid properly for the time they were required to be in the sleeper berth. McLane's team-driving approach (two Plaintiffs assigned to one route) results in one person driving while the other driver is off duty in the truck's sleeper berth. The Plaintiffs can then switch off when the off-duty driver has completed the required 10-hour period. McLane's pay practice does not separately pay Plaintiffs for their **off-duty** sleeper berth time. McLane broke the law in two ways. First, Plaintiffs are required to have 10 hours of rest. However, McLane sometimes scheduled Plaintiffs to begin routes such that Plaintiffs would not have the full amount of rest, and thus, could not begin "on-duty" driving time per DOT regulations. Plaintiffs were therefore instructed to come to the yard, log-in "off-duty" and finish out their 10 hours or rest in the sleeper berth on-site. Plaintiffs were not paid for this time even though they were required to be in the yard, in McLane's truck to finish their rest time so that their DOT clocks could re-set and they could begin driving again. Second, Plaintiffs assigned to sleeper berth routes often worked to help the other driver load and unload cargo even though they were logged in as "off-duty." For example, Plaintiffs would routinely help their teammate driver with mapping/navigation issues or help load or unload at stops to comply with McLane's tight delivery schedules. McLane's dispatchers and managers

would also routinely call Plaintiffs while they were in the sleeper berth to discuss work-related issues such as scheduling details for upcoming routes. This violates Labor Code § 226.2 which requires separate hourly pay for rest and recovery periods and "nonproductive" time worked by piece-rate employees. Pursuant to LC 226.2 employees must be separately compensate for "other nonproductive time" which is defined as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a price-rate basis." During these rest periods, Plaintiffs could not drink alcohol, have a guest or pet in the cab or carry a personal weapon. Moreover, under McLane's strict policy, Plaintiffs were also required to monitor communication devices and maintain security of the truck and its inventory "at all times" -- even when in the sleeper berth. Helping their teammate driver can take approximately 30-45 minutes for every stop; about 3-4 for every route.  McLane's routes necessitated both drivers assisting because Plaintiffs risked not completing the route within their designated hours.

- **<u>Layover Time:</u>** Plaintiffs were also required to work during layover time because they were required to maintain the safety of their truck and inventory and monitor their communication devices. Plaintiffs were not allowed to drink alcohol, have a guest or pet in the cab or carry a personal weapon

- **<u>Unpaid waiting and delay time:</u>** Plaintiffs were also not paid for the time spent waiting for McLane's customers when dropping off cargo and delays and traffic on the road.

Plaintiffs were not paid for this non-driving work because of McLane's unwritten policy and practice not to record this time.  McLane's managers and supervisors trained Plaintiffs to not record such time to conserve DOT 14-hour working time limit, indeed only 11 hours many be used for driving with **<u>3 for non-driving tasks</u>**. These trainers and other drivers include Nestor Olivas, and Mike Cardenas. Specifically, Plaintiffs performed "ride-alongs" with more senior drivers

**EXHIBIT A**

1   to show Plaintiff how to walk past check-in clocks at McLane's distribution center

2   and conduct pre-shift activities, such as obtaining "keys" for the route, obtaining

3   manifests and other paperwork, and performing the DOT pre-shift duties all **before**

4   **clocking-in** for the day on PeopleNet on their trucks. Plaintiffs were therefore

5   "working for free" to save DOT hours. McLane management including Andrew

6   Martinez, Ryan LKU, and Jose LKU, knew Plaintiffs were working these unpaid

7   hours because they saw Plaintiffs enter and begin working before even logging in.

8   McLane management did not instruct them to log that time.

9       McLane also knew Plaintiffs were working this time because it required its

10  drivers' time sheets ***be the same*** as the electronic records on PeopeNet so as to

11  prevent Plaintiffs from exceeding their DOT time requirements, even if the records

12  were not accurate. For example, McLane would schedule back-to-back trips where

13  the drivers 10-hours of rest would be compromised if the driver did not "fudge the

14  records" for McLane's benefit. Because of the way McLane scheduled Plaintiffs'

15  routes, Plaintiffs were at risk of exceeding their HOS if they recorded their

16  working time accurately.

17      Defendant also reimbursed Plaintiffs for rest breaks at their hourly rate,

18  instead at their "regular rate" as required by California law.  Plaintiffs seek any

19  unpaid wages resulting from this incorrect rate of pay.

20      Plaintiffs clarify that the above estimates are the ***minimum*** amounts of

21  monetary relief they are seeking subject to proof at trial.  For example, Plaintiffs

22  estimate that they worked more than an average of 1 hour of unpaid time in a day

23  because they were also required to work through their meal and rest breaks because

24  they were required to monitor their truck and McLane's cargo.

25      Plaintiff also seeks penalties and actual damages California Labor Code §§

26  226 and 226.2(a)(2) and paragraph 7(B) of California Industrial Welfare

27  Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable

28  Wage Order because McLane failed to issue accurate, itemized statements.

McLane's wage statements failed to accurately itemize total hours worked with
respect to the off-the-clock work. Further, Section 226(a)(3) requires inclusion of
"the number of piece-rate units earned and any applicable piece rate if the employee
is paid on a piece-rate basis. However, McLane did not include any breakdown of
piece-rate compensation, instead including only line entries for "cases" and "miles"
without any explanation of its calculation or rates. *Aguirre v. Genesis Logistics*,
2013 U.S. Dist. LEXIS 189815m at *28 (C.D. Cal. July 3, 2013) (nothing in
Section 226 excuses the employer "from including the requisite information 'either
as a detachable part of the check, draft, or voucher paying the employee's wages
simply because additional documentation may be available upon required to an
employee"); *Ward v. United Airlines, Inc.,* 986 F.3d 1234, 1237-38 (9th Cir. 2021)
(must be able to "promptly and easily determine these items of information without
reference to other documents or information"). Accordingly, Plaintiffs are unable to
determine whether they were paid properly under Section 226(a)(3). Moreover,
Section 226.2 adds additional requirements to those set forth in Section 226(a) for
wage statements for "employees who are compensated on a piece-rate basis for any
work performed during a pay period." Here, McLane's wage statements plainly do
not "separately list productive and nonproductive time" S*ee* 226.2(a)(2)(B). In fact,
McLane does not even track Plaintiffs' nonproductive time as required.

Plaintiffs further seek unpaid reimbursements under Labor Code § 2802 for
Defendant's failed to indemnify Plaintiffs for the expenses related to using their
personal smart phones and maintaining access to the internet.

Plaintiffs further seek reasonable attorneys' fees and costs pursuant to Civil
Procedure Code § 1021.5 and California Labor Code.

By McLane's own calculations, (Dkt. No. 103) the minimum wage claims
are ***at least*** worth the following –

**Minimum Wage**:

*Madero: $9,489.30 [$14.10 x 1 hour per workday x 673 workdays].*

*Orosco: $10,885.20 [$14.10 x 1 hour per workday x 772 workdays].*

**Liquidated Damages**:

*Madero: $9,842.63 [$14.625 x 1 hour per workday x 673 workdays].*

*Orosco: $11,290.50 [$14.625 x 1 hour per workday x 772 workdays].*

**Wage Statement Claims:**

By McLane's own calculation the wage statement claims are worth –

*Madero: $1,750*

*Orosco: $2,350*

**Reimbursement Claims:**

Plaintiffs Madero worked approximately 48 months, and Orosco worked approximately 63 months.

Plaintiff Madero's monthly cell phone bill is $ 80 per month and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $ 16 per month. Thus, his damages are approximately $ 768 for his entire employment.

Plaintiff Orosco's monthly cell phone bill is $ 82.26, and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $17.25 per month. Thus, his damages are approximately $1,036.48 for his entire employment.

**INTERROGATORY NO. 7:**

State how all monetary relief YOU claim is owed to YOU by DEFENDANT is calculated.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

**EXHIBIT A**

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows: *See* Response to Rog. No. 6.

**<u>INTERROGATORY NO. 8:</u>**

IDENTIFY each and every PERSON whom YOU contend has knowledge of, or information RELATING TO, the facts ins support of YOUR allegations in the COMPLAINT.

**<u>RESPONSE TO INTERROGATORY NO. 8:</u>**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Plaintiffs believe the following individuals have knowledge about his claims:

- Israel Lopez Medina;
- Israel Jimenez Jr.;
- Robert Lewis;
- Donald Lyon;
- Jose Rea;
- Ibraham LKU;
- Marcello Santos;
- Cesar Orosco;
- Edgar Banda;
- Javier Garcia;
- Juan Ortiz;
- Joe Lopez;
- Jason Hampton;
- Andrew Martinez;
- Michael Cardenas;
- Alexandra LKU, manager at Chik-Fil-A in Riverside;

**EXHIBIT A**

- Justin LKU, employee at Chik-Fil-A in La Mirada;
- Joe LKU, manager at Buffalo Wild Wings in Buena Park;
- Sarah LKU, manager at Chick-fil-A;
- Other drivers who worked with the Plaintiffs;
- And Other McLane Managers.

Discovery and investigation are continuing.

**INTERROGATORY NO. 9:**

For each PERSON identified in response to Interrogatory No. 8, state in detail the facts that YOU know, contend, and/or believe each such person has.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Generally speaking, these individuals, specifically the drivers, have knowledge about their own driving experience with McLane, McLane's unwritten practice and policies for recording time and clocking in and out of shifts, their own unpaid working time, the sleeper berth time and how and if they were paid for this time, the amount of time it took to complete routes, McLane's unwritten practices and policies related to meal and rest breaks, and the number of hours they worked. They can also provide testimony about the paystubs they received. The McLane management witnesses have information as to McLane's policies and procedures.

**INTERROGATORY NO. 10:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to clock out for YOUR meal break and continue

**EXHIBIT A**

working without compensation, including the amount of uncompensated time YOU

worked on each DATE.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad,

burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set

forth above and the specific response and objections herein, and after conducting a

diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, they were regularly

required to checkout for meal periods, yet McLane still required the, to remain

responsible for the safety of their trucks and loads and monitor their communication

devices at all times throughout their shifts, including during meal periods.

Defendant, in fact, required Plaintiffs to remain available to respond to work

demands at any time, including meal breaks. Thus, every time they clocked out for

meal breaks, they were technically still on-duty and working during their meal

breaks.


**INTERROGATORY NO. 11:**

State each and every DATE on and after January 12, 2020 on which YOU

contend that YOUR meal break was interrupted by work, including the amount of

uncompensated time YOU worked on each DATE.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad,

burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set

forth above and the specific response and objections herein, and after conducting a

diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, they were regularly required to checkout for meal periods, yet McLane still required then to remain responsible for the safety of their trucks and loads, and monitor their communication devices "at all times" throughout their shifts, including during meal periods. Defendant, in fact, required Plaintiffs to remain available to respond to work demands at any time, including meal breaks. Thus, every time they clocked out for meal breaks, they were technically still on-duty and working during their meal breaks.

**INTERROGATORY NO. 12:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to perform work prior to clocking in without compensation, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE  TO INTERROGATORY NO. 12:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, Plaintiffs regularly performed work prior to clocking in, i.e. "pre-shift" work as described above in response to Interrogatory No, 6. This occurred every shift and Plaintiffs were not paid for this work. Plaintiff followed McLane's unwritten practice of not recording this time because they were worried above exceeding their HOS maximums because of McLane's routes. In other words, McLane's routes required them to

**EXHIBIT A**

1   work long hours such that Plaintiffs, were at risk of exceeding the HOS

2   requirements if they accurately recorded all their work time, including pre- and

3   post-shift work they were required to perform. Plaintiffs also incorporate their full

4   Response to Rog. No. 6.

5

6   **INTERROGATORY NO. 13:**

7       State each and every DATE on and after January 12, 2020 on which YOU

8   contend that YOU were required to perform work after clocking out without

9   compensation, including the amount of uncompensated time YOU worked on each

10  DATE.

11  **RESPONSE TO INTERROGATORY NO. 13:**

12      Plaintiff objects to this interrogatory on the grounds that it is overbroad,

13  burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

14  the grounds that the requested information is equally available to the Defendants.

15      Without waiving and subject to the general and continuing objections set

16  forth above and the specific response and objections herein, and after conducting a

17  diligent search and making a reasonable inquiry, Plaintiff responds as follows:

18      Throughout the time Plaintiffs worked for McLane, Plaintiffs regularly

19  performed work prior to clocking in, i.e. "post-shift" work as described above in

20  response to Interrogatory No. 6. This occurred every shift and Plaintiffs were not

21  paid for this work. Plaintiff followed McLane's unwritten practice of not recording

22  this time because they were worried above exceeding their HOS maximums

23  because of McLane's routes. In other words, McLane's routes required them to

24  work long hours such Plaintiffs were at risk of exceeding the HOS requirements if

25  they accurately recorded all their work time, including pre- and post-shift work they

26  were required to perform. Plaintiffs also incorporate their full Response to Rog.

27  No. 6.

    //

28

15

**EXHIBIT A**

**INTERROGATORY NO. 14:**

State each and every type of business expense that YOU contend DEFENDANT failed to reimburse YOU for on and after January 12, 2020, including the dollar amount of each type of unreimbursed business expense.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:  It was reasonably necessary for Plaintiffs to use their personal cell phones to communicate with McLane during their shifts because McLane's dispatch and management called and texted them consistently on their personal cell phone to discuss work matters, as explained more fully in response to   Rog. No. 15. Plaintiffs make the following estimate of their reimbursement claims:

**Reimbursement Claims:**

Plaintiffs Madero worked approximately 48 months, and Orosco worked approximately 63 months.

Plaintiff Madero's monthly cell phone bill is $ 80 per month and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $ 16 per month.  Thus, his damages are approximately $ 768 for his entire employment.

Plaintiff Orosco's monthly cell phone bill is $ 82.26 and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $17.25 per month.  Thus, his damages are approximately $1,036.48 for his entire employment.

**INTERROGATORY NO. 15:**

State all facts that support, refute or otherwise RELATE TO YOUR claim that YOU were "required ... to be available to communicate with [DEFENDANT] while driving, as alleged in paragraph 107 of your complaint.

**RESPONSE TO INTERROGATORY NO. 15:**

McLane's own management called and texted Plaintiffs on their personal cell phones during their routes to discuss work-related issues. Thus, Plaintiffs understood that it was reasonable and necessary to use their personal cell phones to communicate with McLane since McLane was calling them on their personal devices while driving. Also, Plaintiffs were told by McLane Human Resources and Rudy Blanco when they were hired by McLane that a cell phone is required for work.

McLane's dispatch unit including Ryan LKU and Jose Lopez would call Plaintiffs during their routes and even during their sleeper berth hours to discuss their schedule and routes for the following week or day, inform them about customer complaints, convey customer messages, confirm arrival times, ask them to fill in for drivers, and called to discuss other human resources issues like trainings and paperwork. McLane also called Plaintiffs on their cell phones if there was an issue on their current route with a customer or stop. This was a regular, daily occurrence. Plaintiffs cannot recall ever using the messaging system in the truck and only recalls receiving mass texts on this system about road closures or emergencies sent to all drivers. In fact, Plaintiffs understand that the in-truck devices were locked except to receive mass messages, and routing information.

Plaintiffs did not request reimbursement for cell phones because he understood from other drivers that McLane does not pay for these expenses. McLane did not pay Plaintiffs anything for the use of their cell phones, and Plaintiffs are not aware of any reimbursement policy related to the use of their personal cell phones.

**EXHIBIT A**

1    **INTERROGATORY NO. 16:**

2        State all facts that support, refute or otherwise RELATE TO YOUR claim

3    that DEFENDANT "failed to indemnify [YOU] for [YOUR] expenses related to

4    using [YOUR] personal smart phones, and maintaining access to the internet," as

5    alleged in Paragraph 106 of YOUR COMPLAINT.

6    **RESPONSE TO INTERROGATORY NO. 16:**

7        McLane's own management called and texted Plaintiffs on their personal cell

8    phones during their routes to discuss work-related issues. Thus, Plaintiffs

9    understood that it was reasonable and necessary to use their personal cell phones to

10   communicate with McLane since McLane was calling them on their personal

11   devices while driving. Also, the Plaintiffs were told by McLane Human Resources

12   and Rudy Blanco when they were hired by McLane that a cell phone is required for

13   work.

14       McLane's dispatch unit including Ryan LKU and Jose Lopez would call

15   Plaintiffs during their routes and even during their sleeper berth hours to discuss

16   their schedule and routes for the following week or day, inform them about

17   customer complaints, convey customer messages, confirm arrival times, ask them to

18   fill in for drivers, and called to discuss other human resources issues like trainings

19   and paperwork. McLane also called Plaintiffs on their cell phones if there was an

20   issue on their current route with a customer or stop. This was a regular, daily

21   occurrence. Plaintiffs cannot recall ever using the messaging system in the truck

22   and only recalls receiving mass texts on this system about road closures or

23   emergencies sent to all drivers. In fact, Plaintiffs understand that the in-truck

24   devices were locked except to receive mass messages, and routing information.

25       Plaintiffs did not request reimbursement for cell phones because he

26   understood from other drivers that McLane does not pay for these expenses.

27   McLane did not pay Plaintiffs anything for the use of their cell phones, and

28   Plaintiffs are not aware of any reimbursement policy related to the use of their

1    personal cell phones.

2

3    ## INTERROGATORY NO. 17:

4    For each of YOUR responses to DEFENDANT's Requests for Admission,
5    Set Two, served concurrently with these interrogatories that is not an unqualified
6    admission, state all facts that support, refuse, or otherwise relate to each such
7    response.

8    ## RESPONSE TO INTERROGATORY NO. 17:

9    Plaintiff objects to this interrogatory on the grounds that it is overbroad,
10   burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on
11   the grounds that the requested information is equally available to the Defendants.
12   Plaintiffs have already set forth facts in response to prior discovery and their RFAs.
13   Plaintiffs refer Defendant to the responses to RFAs, Set Two.

14

15   ## INTERROGATORY NO. 18:

16   For each of YOUR responses to DEFENDANT's Requests for Admission,
17   Set Two, served concurrently with these interrogatories that is not an unqualified
18   admission, IDENTIFY all DOCUMENTS that support, refute or otherwise
19   RELATE to each such response.

20   ## RESPONSE TO INTERROGATORY NO. 18:

21   Plaintiffs have produced all responsive documents in their possession,
22   custody and control at this time.  These documents include text messages, paystubs,
23   pay records, logs, cell phone bills, and pages of an employee handbook.
24   Additionally, Plaintiffs intend to rely on Defendant's own documents it produced.
25   Plaintiffs reserve the right to supplement this production.

26

27   //

28   //

19

**EXHIBIT A**

Dated:  January 21, 2025                    DESAI LAW FIRM, P.C.

                                            By: _____/s/ *Aashish Y. Desai*_____
                                                Aashish Y. Desai
                                                Adrianne De Castro
                                                Attorneys for Plaintiffs

EXHIBIT A

## PROOF OF SERVICE

I, Sonia Nava, declare

I am a citizen of the United States and employed in Orange County, California.  I am over the age of eighteen years and not a party to the within-entitled action; my business address is Desai Law Firm, P.C., 3200 Bristol Street, Ste. 650, Costa Mesa, California 92626.

On January 21, 2025, I served the foregoing document(s):

**PLAINTIFF MADERO'S RESPONSES TO DEFENDANT'S INTERROGATORIES SET TWO**

| | |
|---|---|
| [x] | **By Mail:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid , the United States mail at Costa Mesa, California addressed as set forth below. |
| [ ] | **Delivery Service:** by placing the document(s) listed above in a sealed Delivery Service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Delivery Service agent for next day delivery. |
| [x] | **By E-Mail or Electronic Transmission:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful |

BAKER & HOSTETLER LLP
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri H. Sakaue, SBN 301043
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Emails: *mkane@bakerlaw.com*
*abeverlin@bakerlaw.com*
*ksakaue@bakerlaw.com*

BAKER & HOSTETLER LLP
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Email: *sjkim@bakerlaw.com*

Under the penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

*Sonia Nava*
_____
Sonia Nava

1

# EXHIBIT B

**EXHIBIT B**

1  DESAI LAW FIRM, P.C.
   Aashish Y. Desai, Esq. (SBN 187394)
2  Adrianne De Castro, Esq. (SBN 238930)
   3200 Bristol St., Suite 650
3  Costa Mesa, CA 92626
   Telephone:  (949) 614-5830
4  Facsimile:   (949) 271-4190
   aashish@desai-law.com
5  adrianne@desai-law.com

6  Attorneys for Plaintiffs

7

          **IN THE UNITED STATES DISTRICT COURT**
8
         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
9

10  JORDAN OROZCO MADERO and          Case No. 5:24-cv-00073-KK-DTB
    ESTEBAN OROSCO on behalf of
11  themselves and all others similarly   Hon. Kenly Kiya Kato
    situated,
12

13              Plaintiffs,            **PLAINTIFF ESTEBAN OROSCO'S**
                                       **RESPONSES TO DEFENDANT'S**
14  v.                                 **INTERROGATORIES, SET TWO**

15  McLANE FOODSERVICE, INC., a
    Texas Corporation, and DOES 1-10,
16  inclusive,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

                               1

**EXHIBIT B**

**PROPOUNDING PARTY:**     **DEFENDANT McLANE FOODSERVICE, INC.**

**RESPONDING PARTY:**     **PLAINTIFF ESTEBAN OROSCO**

**SET NO.:**     **TWO**

## INTRODUCTORY STATEMENT

1.    These responses are made solely for the purpose of this action.  Each response is subject to all objections as to competence, relevance, materiality, propriety, admissibility and any or all other objections and grounds that would require the exclusion of any statement herein, if any admission was asked for, or in any statement contained herein, was made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at time of trial.

2.    This responding party is responding to all interrogatories to the extent that the information asked for is known.  However, this responding party's discovery and investigation in preparation for trial in this matter has not been completed as of the date of these responses to interrogatories and, therefore, this responding party does not propose to state herein anything more than information presently known and discovered.

3.    This responding party reserves the right to continue discovery and investigation in this matter for facts, witnesses and supporting data that may recall information, which if the responding party had presently within her knowledge, would be included in these responses.  Consequently, to the extent that the interrogatories herein ask for "all facts" or the name of "all persons" or the identity of "all documents", etc. they are responded to fully insofar as the information is presently available to the responding party; and this responding party is not precluded from presenting at trial information discovered after the date of these responses to interrogatories.

4.    This preliminary statement is incorporated into each of the responses

1    set forth below.

2       5.     Plaintiff objects to Defendant's interrogatories on the ground that

3    discovery is still ongoing.  The responses set forth below are, therefore, based

4    solely upon the facts and information presently known and available to Plaintiff.

5    Discovery, investigation, research and analysis are ongoing and may disclose

6    additional facts, establish entirely new factual or legal contentions or possibly lead

7    to additions, variations and changes to this response.  Accordingly, without

8    obligating himself to do so, Plaintiff hereby reserves the right to change or

9    supplement this response as additional documents, facts and/or contentions are

10   discovered, revealed, recalled or other ascertained. Moreover, Plaintiff hereby

11   reserves the right to refer to conduct discovery with reference to, or to offer into

12   evidence at trial, any and all facts or other information related to this action

13   irrespective of whether such information is disclosed herein.

14      6.     Plaintiff objects to Defendant's interrogatories to the extent they call

15   for disclosure of information or documents that are privileged or protected by the

16   attorney-client privilege, the work product doctrine, the right of privacy recognized

17   under Article I, Section I of the California Constitution, or any other Constitutional

18   statutory or common law privilege or protection.  In addition, Plaintiff objects to

19   Defendant's interrogatories to the extent that they seek information that reflects or

20   discloses trade secrets or other confidential or proprietary information.  Plaintiff

21   will not necessarily repeat this objection in each of the individual responses below.

22   Nonetheless, Plaintiff does not intend to waive his right to assert these or other

23   applicable privileges, and intend that all of his responses be subject to these

24   objections.

25      7.     By these responses, Plaintiff makes no admission concerning the

26   relevance or admissibility of any of the information contained herein or any of the

27   subjects that are the subject of Defendant's interrogatories.  Plaintiff hereby

28   reserves the right to make all pertinent evidentiary objections with regard to such

**EXHIBIT B**

matters at trial or at any other stage of the proceedings.

8.    Plaintiff objects generally to Defendant's interrogatories to the extent that they seek information not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

9.    Plaintiff specifically reserves his right to produce documents in lieu of answers, as provided by the *Federal Rules of Civil Procedure*.

## INTERROGATORY RESPONSES

### INTERROGATORY NO. 6:

Set forth fully and in detail all of the relief YOU seek in the COMPLAINT, including the dollar amounts and factual and legal bases for all damages sought.

### RESPONSE TO INTERROGATORY NO. 6:

Plaintiff objects to this interrogatory on the grounds that this request calls for legal conclusion and is vague and ambiguous. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Plaintiffs allege they are owed wages under California Labor Code §§ 1194, 1197, 1197.1 and Wage Order 9 because  Defendant willfully failed to pay Plaintiffs accrued wages for all hours of work performed as required under the California Labor Code, including Labor Code §§ 221, 223, and 1194, and paragraph 4 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order. These wages shall be calculated based on Plaintiff's employment period with the McLane.  Plaintiff Madero worked for Defendant from approximately August 2019 to September 11, 2023.  Plaintiff Orosco worked for Defendant from approximately July 2018 to

1  November 10, 2023.

2          Plaintiffs allege minimum wages based on the following.

3  • **Pre-shift time:** Plaintiffs were not paid for performing all their pre-trip work.

4  Plaintiffs are required to make a pre-shift inspection to ensure that (1) The tow-

5  bar or saddle-mount connections are properly secured to the towed and towing

6  vehicle;  (2) They function adequately without cramping or binding of any of

7  the parts; and (3) The towed motor vehicle follows substantially in the path of

8  the towing vehicle without whipping or swerving.  Additionally, Plaintiffs are

9  required to inspect the following to ensure that they are safe: Service brakes,

10  including trailer brake connections; Parking (hand) brake; Steering mechanism;

11  Lighting devices and reflectors; Tires; Horn; Windshield wiper or wiper; Rear-

12  vision mirror or mirrors; Coupling devices; Wheels and rims; and Emergency

13  equipment. Plaintiffs must also confirm the following components are in good

14  working order when the driver accepted the equipment: Service brake

15  components that are readily visible to a driver performing as thorough a visual

16  inspection as possible without physically going under the vehicle, and trailer

17  brake connections; Lighting devices, lamps, markers, and conspicuity marking

18  material; Wheels, rims, lugs, tires; Air line connections, hoses, and couplers;

19  King pin upper coupling device; Rails or support frames; Tie down bolsters;

20  Locking pins, clevises, clamps, or hooks ; and Sliders or sliding frame lock.

21  • **Post-trip work:** Plaintiffs were also not paid for all their post-trip work

22  including ensuring that tow-bars and saddle-mounts are disassembled and

23  inspected for worn, bent, cracked, broken, or missing parts. And to identify any

24  parts that need suitable repair or replacement. Plaintiffs are also required to

25  report on the following parts and accessories: (i) Service brakes including

26  trailer brake connections; (ii) Parking brake; (iii) Steering mechanism; (iv)

27  Lighting devices and reflectors; (v) Tires; (vi) Horn; (vii) Windshield wipers;

28  (viii) Rear vision mirrors; (ix) Coupling devices; (x) Wheels and rims; and (xi)

**EXHIBIT B**

Emergency equipment.

- **Working on "rest breaks":** Plaintiffs were also required to work by monitoring their communication devices, and ensuring the safety of the truck and inventory during their "Rest breaks" such that it was not a legally compliant rest break.

- **Working on "meal breaks":** Similarly, Plaintiffs were also required to work by monitoring their communication devices, and ensuring the safety of the truck and inventory during their "meal breaks" such that it was not a legally compliant meal break.

- **Sleeper Berth:** Plaintiffs were also not paid properly for the time they were required to be in the sleeper berth. McLane's team-driving approach (two Plaintiffs assigned to one route) results in one person driving while the other driver is off duty in the truck's sleeper berth. The Plaintiffs can then switch off when the off-duty driver has completed the required 10-hour period. McLane's pay practice does not separately pay Plaintiffs for their **off-duty** sleeper berth time. McLane broke the law in two ways. First, Plaintiffs are required to have 10 hours of rest. However, McLane sometimes scheduled Plaintiffs to begin routes such that Plaintiffs would not have the full amount of rest, and thus, could not begin "on-duty" driving time per DOT regulations. Plaintiffs were therefore instructed to come to the yard, log-in "off-duty" and finish out their 10 hours or rest in the sleeper berth on-site. Plaintiffs were not paid for this time even though they were required to be in the yard, in McLane's truck to finish their rest time so that their DOT clocks could re-set and they could begin driving again. Second, Plaintiffs assigned to sleeper berth routes often worked to help the other driver load and unload cargo even though they were logged in as "off-duty." For example, Plaintiffs would routinely help their teammate driver with mapping/navigation issues or help load or unload at stops to comply with McLane's tight delivery schedules. McLane's dispatchers and managers

**EXHIBIT B**

would also routinely call Plaintiffs while they were in the sleeper berth to discuss work-related issues such as scheduling details for upcoming routes. This violates Labor Code § 226.2 which requires separate hourly pay for rest and recovery periods and "nonproductive" time worked by piece-rate employees. Pursuant to LC 226.2 employees must be separately compensate for "other nonproductive time" which is defined as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a price-rate basis." During these rest periods, Plaintiffs could not drink alcohol, have a guest or pet in the cab or carry a personal weapon. Moreover, under McLane's strict policy, Plaintiffs were also required to monitor communication devices and maintain security of the truck and its inventory "at all times" -- even when in the sleeper berth. Helping their teammate driver can take approximately 30-45 minutes for every stop; about 3-4 for every route.  McLane's routes necessitated both drivers assisting because Plaintiffs risked not completing the route within their designated hours.

- **Layover Time:** Plaintiffs were also required to work during layover time because they were required to maintain the safety of their truck and inventory and monitor their communication devices. Plaintiffs were not allowed to drink alcohol, have a guest or pet in the cab or carry a personal weapon

- **Unpaid waiting and delay time:** Plaintiffs were also not paid for the time spent waiting for McLane's customers when dropping off cargo and delays and traffic on the road.

Plaintiffs were not paid for this non-driving work because of McLane's unwritten policy and practice not to record this time.  McLane's managers and supervisors trained Plaintiffs to not record such time to conserve DOT 14-hour working time limit, indeed only 11 hours many be used for driving with **3 for non-driving tasks**. These trainers and other drivers include Nestor Olivas, and Mike Cardenas. Specifically, Plaintiffs performed "ride-alongs" with more senior drivers

**EXHIBIT B**

to show Plaintiff how to walk past check-in clocks at McLane's distribution center and conduct pre-shift activities, such as obtaining "keys" for the route, obtaining manifests and other paperwork, and performing the DOT pre-shift duties all **before clocking-in** for the day on PeopleNet on their trucks. Plaintiffs were therefore "working for free" to save DOT hours. McLane management including Andrew Martinez, Ryan LKU, and Jose LKU, knew Plaintiffs were working these unpaid hours because they saw Plaintiffs enter and begin working before even logging in. McLane management did not instruct them to log that time.

McLane also knew Plaintiffs were working this time because it required its drivers' time sheets ***be the same*** as the electronic records on PeopeNet so as to prevent Plaintiffs from exceeding their DOT time requirements, even if the records were not accurate. For example, McLane would schedule back-to-back trips where the drivers 10-hours of rest would be compromised if the driver did not "fudge the records" for McLane's benefit. Because of the way McLane scheduled Plaintiffs' routes, Plaintiffs were at risk of exceeding their HOS if they recorded their working time accurately.

Defendant also reimbursed Plaintiffs for rest breaks at their hourly rate, instead at their "regular rate" as required by California law. Plaintiffs seek any unpaid wages resulting from this incorrect rate of pay.

Plaintiffs clarify that the above estimates are the ***minimum*** amounts of monetary relief they are seeking subject to proof at trial. For example, Plaintiffs estimate that they worked more than an average of 1 hour of unpaid time in a day because they were also required to work through their meal and rest breaks because they were required to monitor their truck and McLane's cargo.

Plaintiff also seeks penalties and actual damages California Labor Code §§ 226 and 226.2(a)(2) and paragraph 7(B) of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order because McLane failed to issue accurate, itemized statements.

McLane's wage statements failed to accurately itemize total hours worked with respect to the off-the-clock work. Further, Section 226(a)(3) requires inclusion of "the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis. However, McLane did not include any breakdown of piece-rate compensation, instead including only line entries for "cases" and "miles" without any explanation of its calculation or rates. *Aguirre v. Genesis Logistics*, 2013 U.S. Dist. LEXIS 189815m at *28 (C.D. Cal. July 3, 2013) (nothing in Section 226 excuses the employer "from including the requisite information 'either as a detachable part of the check, draft, or voucher paying the employee's wages simply because additional documentation may be available upon required to an employee"); *Ward v. United Airlines, Inc.,* 986 F.3d 1234, 1237-38 (9th Cir. 2021) (must be able to "promptly and easily determine these items of information without reference to other documents or information"). Accordingly, Plaintiffs are unable to determine whether they were paid properly under Section 226(a)(3). Moreover, Section 226.2 adds additional requirements to those set forth in Section 226(a) for wage statements for "employees who are compensated on a piece-rate basis for any work performed during a pay period." Here, McLane's wage statements plainly do not "separately list productive and nonproductive time" S*ee* 226.2(a)(2)(B). In fact, McLane does not even track Plaintiffs' nonproductive time as required.

Plaintiffs further seek unpaid reimbursements under Labor Code § 2802 for Defendant's failed to indemnify Plaintiffs for the expenses related to using their personal smart phones and maintaining access to the internet.

Plaintiffs further seek reasonable attorneys' fees and costs pursuant to Civil Procedure Code § 1021.5 and California Labor Code.

By McLane's own calculations, (Dkt. No. 103) the minimum wage claims are **_at least_** worth the following –

**<u>Minimum Wage</u>**:

*Madero: $9,489.30 [$14.10 x 1 hour per workday x 673 workdays].*

*Orosco: $10,885.20 [$14.10 x 1 hour per workday x 772 workdays].*

**Liquidated Damages**:

*Madero: $9,842.63 [$14.625 x 1 hour per workday x 673 workdays].*

*Orosco: $11,290.50 [$14.625 x 1 hour per workday x 772 workdays].*

**Wage Statement Claims:**

By McLane's own calculation the wage statement claims are worth –

*Madero: $1,750*

*Orosco: $2,350*

**Reimbursement Claims:**

Plaintiffs Madero worked approximately 48 months, and Orosco worked approximately 63 months.

Plaintiff Madero's monthly cell phone bill is $ 80 per month and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $ 16 per month. Thus, his damages are approximately $ 768 for his entire employment.

Plaintiff Orosco's monthly cell phone bill is $ 82.26, and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $17.25 per month. Thus, his damages are approximately $1,036.48 for his entire employment.

**INTERROGATORY NO. 7:**

State how all monetary relief YOU claim is owed to YOU by DEFENDANT is calculated.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

**EXHIBIT B**

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows: *See* Response to Rog. No. 6.

**INTERROGATORY NO. 8:**

IDENTIFY each and every PERSON whom YOU contend has knowledge of, or information RELATING TO, the facts ins support of YOUR allegations in the COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Plaintiffs believe the following individuals have knowledge about his claims:

- Israel Lopez Medina;
- Israel Jimenez Jr.;
- Robert Lewis;
- Donald Lyon;
- Jose Rea;
- Ibraham LKU;
- Marcello Santos;
- Cesar Orosco;
- Edgar Banda;
- Javier Garcia;
- Juan Ortiz;
- Joe Lopez;
- Jason Hampton;
- Andrew Martinez;
- Michael Cardenas;
- Alexandra LKU, manager at Chik-Fil-A in Riverside;

**EXHIBIT B**

- Justin LKU, employee at Chik-Fil-A in La Mirada;
- Joe LKU, manager at Buffalo Wild Wings in Buena Park;
- Sarah LKU, manager at Chick-fil-A;
- Other drivers who worked with the Plaintiffs;
- And Other McLane Managers.

Discovery and investigation are continuing.


**INTERROGATORY NO. 9:**

For each PERSON identified in response to Interrogatory No. 8, state in detail the facts that YOU know, contend, and/or believe each such person has.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Generally speaking, these individuals, specifically the drivers, have knowledge about their own driving experience with McLane, McLane's unwritten practice and policies for recording time and clocking in and out of shifts, their own unpaid working time, the sleeper berth time and how and if they were paid for this time, the amount of time it took to complete routes, McLane's unwritten practices and policies related to meal and rest breaks, and the number of hours they worked. They can also provide testimony about the paystubs they received. The McLane management witnesses have information as to McLane's policies and procedures.


**INTERROGATORY NO. 10:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to clock out for YOUR meal break and continue

**EXHIBIT B**

working without compensation, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, they were regularly required to checkout for meal periods, yet McLane still required the, to remain responsible for the safety of their trucks and loads and monitor their communication devices at all times throughout their shifts, including during meal periods. Defendant, in fact, required Plaintiffs to remain available to respond to work demands at any time, including meal breaks. Thus, every time they clocked out for meal breaks, they were technically still on-duty and working during their meal breaks.

**INTERROGATORY NO. 11:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOUR meal break was interrupted by work, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a

diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, they were regularly required to checkout for meal periods, yet McLane still required then to remain responsible for the safety of their trucks and loads, and monitor their communication devices "at all times" throughout their shifts, including during meal periods. Defendant, in fact, required Plaintiffs to remain available to respond to work demands at any time, including meal breaks. Thus, every time they clocked out for meal breaks, they were technically still on-duty and working during their meal breaks.

**INTERROGATORY NO. 12:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to perform work prior to clocking in without compensation, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE  TO INTERROGATORY NO. 12:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, Plaintiffs regularly performed work prior to clocking in, i.e. "pre-shift" work as described above in response to Interrogatory No, 6. This occurred every shift and Plaintiffs were not paid for this work. Plaintiff followed McLane's unwritten practice of not recording this time because they were worried above exceeding their HOS maximums because of McLane's routes. In other words, McLane's routes required them to

work long hours such that Plaintiffs, were at risk of exceeding the HOS requirements if they accurately recorded all their work time, including pre- and post-shift work they were required to perform. Plaintiffs also incorporate their full Response to Rog. No. 6.

**INTERROGATORY NO. 13:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to perform work after clocking out without compensation, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, Plaintiffs regularly performed work prior to clocking in, i.e. "post-shift" work as described above in response to Interrogatory No. 6. This occurred every shift and Plaintiffs were not paid for this work. Plaintiff followed McLane's unwritten practice of not recording this time because they were worried above exceeding their HOS maximums because of McLane's routes. In other words, McLane's routes required them to work long hours such Plaintiffs were at risk of exceeding the HOS requirements if they accurately recorded all their work time, including pre- and post-shift work they were required to perform. Plaintiffs also incorporate their full Response to Rog. No. 6.

//

**INTERROGATORY NO. 14:**

State each and every type of business expense that YOU contend DEFENDANT failed to reimburse YOU for on and after January 12, 2020, including the dollar amount of each type of unreimbursed business expense.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows: It was reasonably necessary for Plaintiffs to use their personal cell phones to communicate with McLane during their shifts because McLane's dispatch and management called and texted them consistently on their personal cell phone to discuss work matters, as explained more fully in response to Rog. No. 15. Plaintiffs make the following estimate of their reimbursement claims:

**Reimbursement Claims:**

Plaintiffs Madero worked approximately 48 months, and Orosco worked approximately 63 months.

Plaintiff Madero's monthly cell phone bill is $ 80 per month and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $ 16 per month. Thus, his damages are approximately $ 768 for his entire employment.

Plaintiff Orosco's monthly cell phone bill is $ 82.26 and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $17.25 per month. Thus, his damages are approximately $1,036.48 for his entire employment.

16

**EXHIBIT B**

1 **INTERROGATORY NO. 15:**

2    State all facts that support, refute or otherwise RELATE TO YOUR claim

3 that YOU were "required ... to be available to communicate with [DEFENDANT]

4 while driving, as alleged in paragraph 107 of your complaint.

5 **RESPONSE TO INTERROGATORY NO. 15:**

6    McLane's own management called and texted Plaintiffs on their personal cell

7 phones during their routes to discuss work-related issues.  Thus, Plaintiffs

8 understood that it was reasonable and necessary to use their personal cell phones to

9 communicate with McLane since McLane was calling them on their personal

10 devices while driving.  Also, Plaintiffs were told by McLane Human Resources and

11 Rudy Blanco when they were hired by McLane that a cell phone is required for

12 work.

13    McLane's dispatch unit including Ryan LKU and Jose Lopez would call

14 Plaintiffs during their routes and even during their sleeper berth hours to discuss

15 their schedule and routes for the following week or day, inform them about

16 customer complaints, convey customer messages, confirm arrival times, ask them to

17 fill in for drivers, and called to discuss other human resources issues like trainings

18 and paperwork.  McLane also called Plaintiffs on their cell phones if there was an

19 issue on their current route with a customer or stop.  This was a regular, daily

20 occurrence.  Plaintiffs cannot recall ever using the messaging system in the truck

21 and only recalls receiving mass texts on this system about road closures or

22 emergencies sent to all drivers. In fact, Plaintiffs understand that the in-truck

23 devices were locked except to receive mass messages, and routing information.

24    Plaintiffs did not request reimbursement for cell phones because he

25 understood from other drivers that McLane does not pay for these expenses.

26 McLane did not pay Plaintiffs anything for the use of their cell phones, and

27 Plaintiffs are not aware of any reimbursement policy related to the use of their

28 personal cell phones.

**INTERROGATORY NO. 16:**

State all facts that support, refute or otherwise RELATE TO YOUR claim that DEFENDANT "failed to indemnify [YOU] for [YOUR] expenses related to using [YOUR] personal smart phones, and maintaining access to the internet," as alleged in Paragraph 106 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 16:**

McLane's own management called and texted Plaintiffs on their personal cell phones during their routes to discuss work-related issues. Thus, Plaintiffs understood that it was reasonable and necessary to use their personal cell phones to communicate with McLane since McLane was calling them on their personal devices while driving. Also, the Plaintiffs were told by McLane Human Resources and Rudy Blanco when they were hired by McLane that a cell phone is required for work.

McLane's dispatch unit including Ryan LKU and Jose Lopez would call Plaintiffs during their routes and even during their sleeper berth hours to discuss their schedule and routes for the following week or day, inform them about customer complaints, convey customer messages, confirm arrival times, ask them to fill in for drivers, and called to discuss other human resources issues like trainings and paperwork. McLane also called Plaintiffs on their cell phones if there was an issue on their current route with a customer or stop. This was a regular, daily occurrence. Plaintiffs cannot recall ever using the messaging system in the truck and only recalls receiving mass texts on this system about road closures or emergencies sent to all drivers. In fact, Plaintiffs understand that the in-truck devices were locked except to receive mass messages, and routing information.

Plaintiffs did not request reimbursement for cell phones because he understood from other drivers that McLane does not pay for these expenses. McLane did not pay Plaintiffs anything for the use of their cell phones, and Plaintiffs are not aware of any reimbursement policy related to the use of their

**EXHIBIT B**

1    personal cell phones.

2

3    **INTERROGATORY NO. 17:**

4        For each of YOUR responses to DEFENDANT's Requests for Admission,

5    Set Two, served concurrently with these interrogatories that is not an unqualified

6    admission, state all facts that support, refuse, or otherwise relate to each such

7    response.

8    **RESPONSE TO INTERROGATORY NO. 17:**

9        Plaintiff objects to this interrogatory on the grounds that it is overbroad,

10   burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

11   the grounds that the requested information is equally available to the Defendants.

12   Plaintiffs have already set forth facts in response to prior discovery and their RFAs.

13   Plaintiffs refer Defendant to the responses to RFAs, Set Two.

14

15   **INTERROGATORY NO. 18:**

16       For each of YOUR responses to DEFENDANT's Requests for Admission,

17   Set Two, served concurrently with these interrogatories that is not an unqualified

18   admission, IDENTIFY all DOCUMENTS that support, refute or otherwise

19   RELATE to each such response.

20   **RESPONSE TO INTERROGATORY NO. 18:**

21       Plaintiffs have produced all responsive documents in their possession,

22   custody and control at this time.  These documents include text messages, paystubs,

23   pay records, logs, cell phone bills, and pages of an employee handbook.

24   Additionally, Plaintiffs intend to rely on Defendant's own documents it produced.

25   Plaintiffs reserve the right to supplement this production.

26

27   //

28   //

**EXHIBIT B**

1

Dated:  January 21, 2025                              DESAI LAW FIRM, P.C.

2

By:        /s/ *Aashish Y. Desai*

3                                                                  Aashish Y. Desai
                                                                   Adrianne De Castro
4                                                                  Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B

# PROOF OF SERVICE

I, Sonia Nava, declare

    I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action; my business address is Desai Law Firm, P.C., 3200 Bristol Street, Ste. 650, Costa Mesa, California 92626.

    On January 21, 2025, I served the foregoing document(s):

**PLAINTIFF ESTEBAN OROSCO'S RESPONSES TO DEFENDANT'S INTERROGATORIES SET TWO**

| | |
|---|---|
| [x] | **By Mail:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid , the United States mail at Costa Mesa, California addressed as set forth below. |
| [ ] | **Delivery Service:** by placing the document(s) listed above in a sealed Delivery Service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Delivery Service agent for next day delivery. |
| [x] | **By E-Mail or Electronic Transmission:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful |

BAKER & HOSTETLER LLP
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri H. Sakaue, SBN 301043
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Emails: *mkane@bakerlaw.com*
*abeverlin@bakerlaw.com*
*ksakaue@bakerlaw.com*

BAKER & HOSTETLER LLP
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Email: *sjkim@bakerlaw.com*

    Under the penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

*Sonia Nava*
_____
Sonia Nava

1

**EXHIBIT C**

# EXHIBIT C

**EXHIBIT C**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE** | |
| Civil Complex Center | |
| 751 W. Santa Ana Blvd | |
| Santa Ana, CA 92701 | |

**SHORT TITLE:** Madero vs. McLane Foodservice, Inc.

| **CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE** | CASE NUMBER: **30-2024-01385663-CU-OE-CXC** |
|---|---|

I certify that I am not a party to this cause. I certify that that the following document(s), Minute Order dated 01/23/25, was transmitted electronically by an Orange County Superior Court email server on January 28, 2025, at 3:35:34 PM PST. The business mailing address is Orange County Superior Court, 700 Civic Center Dr. W, Santa Ana, California 92701. Pursuant to Code of Civil Procedure section 1013b, I electronically served the document(s) on the persons identified at the email addresses listed below:

BAKER & HOSTETLER LLP
ABEVERLIN@BAKERLAW.COM

BAKER & HOSTETLER LLP
KSAKAUE@BAKERLAW.COM

BAKER & HOSTETLER LLP
MKANE@BAKERLAW.COM

BAKER & HOSTETLER LLP
SJKIM@BAKERLAW.COM

DESAI LAW FIRM, P.C.
AASHISH@DESAI-LAW.COM

DESAI LAW FIRM, P.C.
ADRIANNE@DESAI-LAW.COM

Clerk of the Court, by: _V Harting_ , Deputy

---

**CLERK'S CERTIFICATE OF MAILING/ELECTRONIC SERVICE**

**EXHIBIT C**

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**MINUTE ORDER**

DATE: 01/23/2025          TIME: 02:00:00 PM          DEPT: CX104

JUDICIAL OFFICER PRESIDING: Melissa R. McCormick
CLERK: V. Harting
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT: I. Olivares

CASE NO: **30-2024-01385663-CU-OE-CXC**    CASE INIT.DATE: 03/15/2024
CASE TITLE: **Madero vs. McLane Foodservice, Inc.**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Other employment

---

EVENT ID/DOCUMENT ID: 74351101

**EVENT TYPE:** Motion for Order to Stay Proceedings
MOVING PARTY: McLane Foodservice, Inc.
CAUSAL DOCUMENT/DATE FILED: Motion for Order to Stay Proceedings, 07/31/2024

---

EVENT ID/DOCUMENT ID: 74351325

**EVENT TYPE:** Motion to Strike Portions Of Complaint
MOVING PARTY: McLane Foodservice, Inc.
CAUSAL DOCUMENT/DATE FILED: Motion to Strike Portions of Complaint, 07/31/2024

---

**APPEARANCES**

Sylvia Kim, from Baker & Hostetler LLP, present for Defendant(s) remotely.

Hearing held, defendant appearing remotely. There is no appearance by plaintiff.

Tentative Ruling posted on the Internet.

The Court hears oral argument and confirms the tentative ruling as follows:

Defendant McLane Foodservice, Inc.'s Motion to Stay

Defendant McLane Foodservice, Inc. moves to stay this PAGA action pending completion of a wage-and-hour class action pending in federal district court. For the following reasons, defendant's motion is granted in part.

On January 12, 2024 plaintiffs filed a class action against defendant in the Central District of California (*Madero I*). Plaintiffs alleged the following causes of action: (1) an FLSA claim for alleged failure to pay overtime compensation; (2) declaratory relief; (3) failure to pay all wages earned; (4) failure to issue accurate itemized wage statements; (5) failure to reimburse business expenses; and (6) unfair business practices in violation of the UCL. Defendant's Request for Judicial Notice (RJN) (ROA 38) Ex. A.

On March 13, 2024 the district court granted defendant's motion to dismiss the second cause of action for declaratory relief and the fifth cause of action for failure to reimburse business expenses. RJN Ex. B. On March 14, 2024 plaintiffs filed a first amended complaint alleging the following causes of action: (1) an FLSA claim for alleged failure to pay overtime compensation; (2) failure to pay all wages owed; (3) failure to issue accurate itemized wage statements; (4) failure to reimburse business expenses; and (5)

---

DATE: 01/23/2025                    MINUTE ORDER                    Page 1
DEPT: CX104                                                    Calendar No.

CASE TITLE: Madero vs. McLane Foodservice, Inc.        CASE NO:
**EXHIBIT C**
**30-2024-01385663-CU-OE-CXC**

unfair business practices in violation of the UCL. RJN Ex. C.

On October 17, 2024 the district court granted defendant's motion for partial summary judgment as to plaintiffs' first cause of action for violation of the FLSA. Supp. RJN (ROA 67) Ex. H. The district court's order also stated: "In light of the dismissal of the only federal claim, Plaintiffs are ordered to show cause why this Court should retain jurisdiction over the instant action no later than October 24, 2024." *Id.* at 14. The district court later took the October 24, 2024 OSC hearing off calendar. Supp. RJN Ex. I.

On January 10, 2025 the district court denied plaintiffs' January 6, 2025 request to dismiss their state law class claims without prejudice. Supp. RJN Ex. J; Joint Initial Case Management Conference Statement (ROA 71) 3:15-16. The district court's order states: "[T]o the extent defendant McLane Foodservice, Inc. intends to file a motion to strike, defendant McLane Foodservice, Inc. shall do so no later than 14 days from the date of this Order." Supp. RJN Ex. J. Defendant states in the parties' Joint Initial Case Management Conference statement filed in this case on January 16, 2025 (ROA 71) that defendant intends to file a motion to strike plaintiffs' class action allegations in *Madero I* by January 24, 2025. Joint Initial Case Management Conference Statement (ROA 71) 3:15-19. Defendant states that if the district court grants its motion to strike plaintiffs' class action allegations, only plaintiffs' individual Labor Code and UCL claims would remain to be adjudicated in *Madero I. Id.* In their portions of the Joint Initial Case Management Conference statement, plaintiffs do not dispute the potential effect of defendant's motion to strike the class action allegations on plaintiffs' *Madero I* claims.

On January 14, 2025 plaintiffs' counsel informed defense counsel by email that "[i]n light of the [district] Court's order, [plaintiffs] do not intend to move forward with [their] class claims and will move forward with [their] individual state law Labor Code claims." Joint Initial Case Management Conference Statement (ROA 71) 3:20-4:28.

"'[A] court ordinarily has inherent power, in its discretion, to stay proceedings when such a stay will accommodate the ends of justice.' [Citation.] As the court in *Landis v. North American Co.* (1936) 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 explained, 'the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 141. In addition, "[i]t is black letter law that, when a federal action has been filed covering the same subject matter as is involved in a California action, the California court has the discretion but not the obligation to stay the state court action." *Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 804.

The parties debate whether the claims and the parties in the pending federal case and this PAGA case are the same. Irrespective of which side has the more persuasive position on those issues, it is clear based on the proceedings and status of *Madero I* that efficiency and economy favor staying the PAGA case, at least temporarily, while the district court and the parties resolve the pending issues regarding the status of plaintiffs' individual and class claims in *Madero I*, which appears to include whether *Madero I* will remain pending in federal court at all.

All of plaintiffs' remaining claims in *Madero I* are state law claims. The district court has already raised the question of whether plaintiffs' remaining claims should remain in federal court. As evidenced both by their request to dismiss their class claims and by plaintiffs' counsel's email to defense counsel, plaintiffs appear not to desire to proceed with their state law class claims in federal court. In sum, there appears a reasonable possibility that whatever remains of plaintiffs' *Madero I* claims after the district court proceedings regarding plaintiffs' efforts to dismiss their class claims and defendant's efforts to strike them may ultimately end up in state court.

Under these circumstances, a stay of plaintiffs' PAGA action promotes efficiency and economy for the parties and the court. The court exercises its discretion to stay the PAGA action and orders this case

CASE TITLE: Madero vs. McLane Foodservice, Inc. CASE NO: 30-2024-01385663-CU-OE-CXC

EXHIBIT C

stayed until May 30, 2025 or further order of the court.

Defendant's Request for Judicial Notice (ROA 38) and Supplemental Request for Judicial Notice (ROA 67) are granted.

Plaintiffs' Request for Judicial Notice (ROA 73) of Exhibit A is granted. Plaintiffs' Request for Judicial Notice (ROA 73) of Exhibit B is denied.

A status conference is scheduled for <u>May 22, 2025 at 9:00 a.m.</u> in Department CX104. The parties are ordered to file a joint status conference statement at least 5 court days before the hearing.

Defendant to give notice.

<u>Defendant McLane Foodservice, Inc.'s Motion to Strike Portions of Plaintiffs' Complaint</u>

Defendant McLane Foodservice, Inc. moves for an order striking portions of the complaint filed by plaintiffs Jordan Orozco Madero and Esteban Orosco. In light of the court's concurrently-issued order addressing defendant's motion to stay, defendant's motion to strike is denied without prejudice to being refiled, if necessary, if and when the court lifts the stay of this action.

Defendant to give notice.

<u>Status Conference</u>

The court has read and considered the parties' Joint Initial Case Management Conference statement filed January 16, 2025 (ROA 71).

As set forth in the court's concurrently-issued order granting in part defendant McLane Foodservice, Inc.'s motion to stay this action, a status conference is scheduled for <u>May 22, 2025 at 9:00 a.m.</u> in Department CX104.

The parties are ordered to file a joint status conference statement at least 5 court days before the hearing.

Clerk to give notice.