DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol Ave., Suite 650
Costa Mesa, CA 92626
Tel: (949) 614-5830
Fax: (949) 271-4190
aashish@desai-law.com
adrianne@desai-law.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN OROZCO MADERO and ESTEBAN OROSCO on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>McLANE FOODSERVICE, INC., a Texas Corporation, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 5:24-cv-00073-KK-DTB<br><br>Hon. Kenly Kiya Kato<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS, OR ALTERNATIVELY, EVIDENTIARY SANCTIONS, AGAINST PLAINTIFFS FOR FAILIURE TO COMPLY WITH DISCOVERY OBLIGATIONS; DECLARATIOJN OF AASHISH Y. DESAI**<br><br>**HEARING:**<br><br>Judge:     Hon. Kenly Kiya Kato<br>Date:      March 6, 2025<br>Time:      9:30 a.m.<br>Location:  Courtroom 3 |

i

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

I.      INTRODUCTION ................................................................ 1

II.     FACTUAL BACKGROUND ................................................ 3

    A.     Plaintiffs Diligently Followed the Court's Phasing of the Litigation Regardless of Any Formal Stay ............................ 3

    B.     McLane Has Not Met the Standard to Strike the Allegations or Force an Amendment ................................................ 5

III.    LEGAL ARGUMENT .......................................................... 6

    A.     McLane's Motion Violates the Scheduling Order ................ 6

    B.     Legal Standard on A Motion for Terminating Sanctions ...... 6

    C.     McLane Has Not Met the High Standard for Terminating Sanctions ................................................................ 8

        1.   *Plaintiffs Acted in Good Faith in Responding to and Propounding Discovery*.................................................................... 9

        2.   *McLane's Cited Authorities Are Inapposite and Show that Terminating Sanctions Are Not Appropriate*........................... 10

    D.     Terminating Sanctions are Not Proper Because McLane Has Shown No Prejudice and Lesser Sanctions Are Available ................ 12

        1.   *Plaintiffs Acted in Good Faith in Responding to and Propounding Discovery*.................................................................... 12

        2.   *Lesser Remedies are Available* ........................................ 14

        3.   *Evidentiary Sanctions are Not Warranted*.......................... 14

IV.     CONCLUSION .................................................................... 15

WORD COUNT CERTIFICATION ................................................... 16

DECLARATION ................................................................................ 17

ii

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Adams v. Michaels Stores, Inc.*,
   2010 WL 4794485 (C.D. Cal. 2010) ..................................................... 14

*Adriana Int'l Corp. v. Lewis & Co.*,
   913 F.2d 1406 (9th Cir. 1990) ............................................................... 8

*Cardenas v. McLane Foodservice, Inc.*,
   *Case No. SACV 10-0473-DOC (FFMx)* ................................................ 1

*Chambers v. NASCO*,
   501 U.S. 32 (1991) ................................................................................. 8

*Computer Task Group, Inc. v. Brotby*,
   364 F.3d 1112, 1115 (9th Cir. 2004) ........................................... 8, 11, 14

*Fair Housing of Marin v. Combs*,
   285 F.3d 899 (9th Cir. 2002) ............................................................. 8, 10

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ........................................... 8

*Henry v. Gill Industries, Inc.*,
   983 F.2d 943 (9th Cir. 1993) ............................................................... 12

*In re Exxon Valdez*,
   102 F.3d 429 (9th Cir. 1996) ................................................................. 7

*In re Heritage Bond Litig.*,
   223 F.R.D. 527 (C.D. Cal. 2004)......................................................... 11

*Madero, Orosco, et al., v. McLane Foodservice, Inc.*,
   Orange County Superior Court, Case No. 30-2024-01385663-CU-OE-CXC ....... 5

*Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001) ................................................................. 9

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ............................................................. 12

*United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,*
    857 F.2d 600, 603 (9th Cir. 1988) ........................................................................ 7

*Wanderer v. Johnston,*
    910 F.2d 652, 656 (9th Cir. 1990) .................................................................. 8, 11

*Wyle v. R.J. Reynolds Indus., Inc.,*
    709 F.2d 585, 589 (9th Cir. 1983) .................................................................. 7, 8

STATUTES

28 U.S.C. § 1927 .......................................................................................................... 15

RULES

Fed. R. Civ. P. 26(e)(1)(A)-(B) ..................................................................................... 7

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) .......................................................................... 7, 8

## I.    __INTRODUCTION__

McLane's improperly filed ___discovery___ motion past the January 24 deadline for such motion generates far more heat than light. McLane's motion should be denied in its entirety because it is plainly a ___discovery motion___ filed past the Scheduling Order's January 24 deadline for discovery and discovery disputes.

More to the point, McLane has wasted the Court's (and counsel's) resources and time in a misguided effort to shift the focus from the merits of this case while continuing to malign Plaintiffs. While McLane accuses Plaintiffs of bad faith conduct, it is McLane that has engaged in a pattern of abusive litigation despite Plaintiffs' efforts to reach informal resolutions. McLane has filed a Motion to Strike Class Allegations (Dkt. 110) after Plaintiffs already confirmed they will not pursue the class claims. And now McLane has filed this Motion for Terminating Sanctions for Plaintiffs' depositions that they have repeatedly said they will be appear for. There is simply no good explanation for why McLane continues to litigate issues for which an informal resolution has been offered and available.

This Motion is completely unnecessary and unwarranted because McLane cannot show any "bad-faith," much less the "extreme circumstances" necessary for terminating sanctions. In fact, under nearly identical facts in a prior case, McLane employed the very same abusive tactics and filed a nearly identical motion for terminating sanctions based on depositions that the plaintiffs there were willing to appear for. Judge David O. Carter flatly denied it and stated: McLane "has not even come close to establishing the appropriateness of terminating sanctions" and "even minimal sanctions are unwarranted here." *See* **Exh. A**, *Cardenas v. McLane Foodservice, Inc.*, *Case No. SACV 10-0473-DOC (FFMx)*, Court Ordering Denying McLane's Motion for Terminating Sanctions, Dkt. No. 246. The Court should reach the same conclusion here.

//

Plaintiffs have repeatedly confirmed **they will appear for depositions** in coordination with McLane's corporate witness. Plaintiffs have offered this even though McLane has mishandled the scheduling of depositions. Although McLane noticed the Plaintiffs' depositions in August and September 2024, it never again pursued them once Plaintiffs informed them that parties were focused on the MCA exemption issue. Instead of objecting to this at the time, McLane allowed months to pass without action, and waited until December 20, 2024 just before the holidays to schedule depositions on the <u>very last day</u> of the discovery cut-off without ever conferring with Plaintiffs about whether these dates were appropriate. McLane intentionally left no room for rescheduling the depositions before the discovery deadline, and set Plaintiffs up to appear as if they were acting in "bad faith" when they sought to reschedule.

To make matters worse, McLane chose not to appear for its corporate deposition that same week, seemingly attempting to evade responsibility altogether. McLane did not respond (and still has not responded) to Plaintiffs' request to discuss rescheduling all the depositions and instead threatened sanctions if Plaintiffs did not respond to its threat within 24 hours. When Plaintiffs requested a meet and confer, Defense Counsel unilaterally scheduled one without confirming Plaintiffs' Counsel's availability. Defense Counsel refused to move the scheduled date even after Plaintiffs informed him of a conflict and only agreed to move the meeting a few hours. Again, McLane's conduct shows it does not seek resolution of the discovery dispute, and instead sought punitive action against the Plaintiffs. McLane's tactics are both manipulative and wasteful and should not be tolerated. If sanctions are at issue, they should be levied against McLane.

Its misrepresentations about the remaining discovery issues are no different. Plaintiffs have **_timely_** responded with document production (much of which are McLane's own payroll documents it generated) and extensive answers to McLane's

second set excessive discovery containing 30 additional Request for admissions, 50 additional Requests for Production, and 12 additional Interrogatories. These responses are in addition to the May 2024 responses Plaintiffs already provided to McLane's first set of discovery consisting of 28 RFAs, 17 RFPs, and 5 Interrogatories. Notably, McLane never had an issue with these responses. To the extent that the discovery contains any "new" information, McLane retains the ability to examine Plaintiffs about it in deposition.

McLane provides no detail about any prejudice it will face resulting from either the depositions (which Plaintiffs have offered to appear for) or the discovery and disclosures. Plaintiffs' disclosures only listed **two** additional witnesses (McLane's former drivers). All the other witnesses are McLane's current and former drivers, managers, and clients who Plaintiffs already named and disclosed to McLane in their response to Special Interrogatory No. 1 on May 7, 2024. Notably, McLane has never sought to depose any of these witnesses so it cannot now claim prejudice for its inability to depose them.

Significantly, lesser remedies are certainly available and appropriate here where there has been no showing of bad-faith. These lesser remedies include allowing McLane to take Plaintiffs' depositions which Plaintiffs have already offered.

For all these reasons, McLane's Motion for terminating and evidentiary sanctions should be denied in its entirety. It has not made any showing of bad-faith warranting these extreme remedies.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs Diligently Followed the Court's Phasing of the Litigation Regardless of Any Formal Stay

While McLane may be correct that there was no formal stay, the Court never "declined" any stay and the parties, including McLane, effectively proceeded as

though there was a stay on the state law claims while the Court adjudicated McLane's MCA exemption defense. As we have repeatedly noted, McLane's own conduct exhibits it was operating with this same understanding that the litigation was being phased:

- McLane did not depose or seek to depose the Named Plaintiffs ***until after*** the Court ruled on the cross-MSJs in late-December;
- McLane never sought to depose any other witnesses related to Plaintiffs' individual claims;
- McLane served no other written discovery on the state law claims ***until after*** the Court ruled on the cross-MSJs, again in late December;
- McLane did not move for summary judgment or dismissal on the state law claims;
- McLane's corporate witness only testified as to issues related to the MCA exemption defense;

There is no question that Plaintiffs acted diligently here. The Court, in its order staying the Motion for Conditional Certification, expressly stayed the Motion "to allow the parties to engage in discovery to address the exemption issue." [Dkt. No. 23]. Plaintiffs, in good faith, read this order as limiting discovery to the MCA exemption issue so that the parties could brief this issue, and the Court could rule upon it. Plaintiffs' interpretation was confirmed when ***all the parties*** operated under the same understanding and limited the litigation and all discovery, including serving and Initial Disclosures, to just the MCA exemption issue. There was no action or evidence to the contrary. McLane only ever acted contrary to this implicit stay when it sought a "gotcha" moment to threaten a motion to strike Plaintiffs' class allegations just a few weeks ago. The parties briefed the MCA exemption issue in August 2024, and the Court issued its ruling in October 2024, leaving little to no time to file a

motion for class certification by McLane's asserted November deadline, even if discovery was permitted on these issues which Plaintiffs understood it was not.

Furthermore, as the Court well knows, Plaintiffs filed a request for dismissal because of the ambiguity as to the Court's jurisdiction over the remaining individual claims. *See* Court's Order to Show Cause on Jurisdiction, Dkt. Nos. 97-105. The Court did not rule on this issue and simply discharged the OSC, effectively placing the case in abeyance until the threshold jurisdictional determination is made. Without jurisdiction, any action by Plaintiffs to litigate the remaining state law claims in this forum would prove futile and a waste of resources. Again, this is why Plaintiffs made their request for dismissal to allow them to litigate their state law claims in the proper forum. *Madero, Orosco, et al., v. McLane Foodservice, Inc.*, Orange County Superior Court, Case No. 30-2024-01385663-CU-OE-CXC.

**B.     Plaintiffs Acted in Diligently Once Their Request for Dismissal was Denied**

Despite McLane's desperate attempts to cast Plaintiffs in a negative light, there was no bad-faith or willful abuse of the discovery process. Although the Court did not rule on the jurisdiction issue and then denied Plaintiffs' request to dismiss the individual claims, Plaintiffs proceeded immediately to litigate the remaining two individual claims. Plaintiffs provided disclosures, that were styled as "supplemental" simply because they re-"disclosed" all the information that Plaintiffs had already provided to McLane in their discovery responses in May 2024, with the exception of naming two additional witnesses.

Plaintiffs then also responded with still more document production and substantive, extensive, multi-page answers to McLane's second set excessive discovery (30 additional RFAs, 50 additional RFPs, 12 additional Interrogatories).

Plaintiffs also served a deposition notice to McLane, and made themselves available for depositions. McLane recitation of the narrative conveniently ignores that McLane <u>refused to produce</u> a corporate witness for deposition. In the email

5

McLane cites, Plaintiffs sought to confirm **all three depositions** set to take place: McLane's corporate deposition, and the two named Plaintiffs. Only after McLane refused to respond to this letter at all, then refused to produce a witness did Plaintiffs seek to reschedule **all the depositions**, even after the discovery deadline. Contrary to McLane's assertion, Plaintiffs have never refused to appear for deposition. Rather, they sought to reschedule all three depositions. Plaintiffs confirmed their willingness to appear for deposition when McLane threatened this Motion and its pending Motion to Strike the Class Allegations, but McLane has inexplicably not taken them up on this offer.

## III.   **LEGAL ARGUMENT**

### A.    **McLane's Motion Violates the Scheduling Order**

McLane's Motion is a thinly disguised, late-filed discovery motion that violates the Scheduling Order. Per the Scheduling Order, discovery including "including hearing of discovery motions" had to be completed by **January 24**. McLane is well past this deadline, and did not even seek to meet and confer about this Motion until January 21, just three days before the deadline. Knowing it is in violation of the Scheduling Order, McLane claims this is not a discovery motion. The Court should not be convinced. The heart of this motion is McLane's issue with **discovery** -- i.e., depositions, disclosures. McLane cannot dodge the very discovery deadline that it seeks to hold Plaintiffs accountable for under threat of sanctions.[1]

### B.    **Legal Standard on A Motion for Terminating Sanctions**

Federal Rule of Civil Procedure 37 allows for judicial discretion to impose a "wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d

---

[1] In fact, when Plaintiffs responded that they wanted to meet and confer about these issues, McLane unilaterally scheduled a meet and confer without consulting about when Counsel was available. When Counsel asked to move the date the following day because he was on a flight, Defense Counsel refused and was only willing to move it a few hours that same day. McLane clearly does not want to seek informal resolution of these issues and wants to unjustifiably punish Plaintiffs.

585, 589 (9th Cir. 1983). These discovery rules, under Federal Rule of Civil Procedure Rule 26 require parties to "supplement or correct" responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," or "as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B).

A court responding to a party's failure to comply with these discovery obligations can further impose additional "just orders" that may "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action . . . .; (ii) prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) [strike] pleadings in whole or in part; (iv) stay[] further proceedings . . . ; (v) dismiss the action or proceeding in whole or in part; or (vii) treat[] as contempt of court the failure to obey any court order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

However, because there is a strong preference for adjudicating cases on their merits, courts may only dismiss a case or enter a default judgment as a sanction where the violation is "due to willfulness, bad faith, or fault of the party." *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.,* 857 F.2d 600, 603 (9th Cir. 1988) (quoting *Wyle*, 709 F.2d at 589). The Ninth Circuit has consistently employed a five-factor test to determine whether dismissing a case as a sanction is appropriate. The factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re Exxon Valdez*, 102 F.3d 429, 433 (9th Cir. 1996). Because the first two factors almost always weigh in favor of granting default

judgment and the fourth factor against granting default judgment, the key factors in determining whether a default judgment should be entered are the risk of prejudice and the availability of less drastic sanctions. *See Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th Cir. 1990); *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990).

Dismissal is considered an appropriate response "in extreme circumstances" when a party has "engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle,* 709 F.2d at 589. In order to make determinations about the party's conduct, a court may "make inferences and credibility determinations from evidence received." *Wyle,* 709 F.2d at 592.

Furthermore, the Supreme Court has clarified that a district court also has the inherent power to issue sanctions to parties or attorneys who act in bad faith. *See Chambers v. NASCO,* 501 U.S. 32, 45-46, n.10 (1991) (noting that district courts have the inherent authority to dismiss a lawsuit or assess attorney's fees at their discretion). As the Ninth Circuit explained, "bad faith" accounts for "a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

## C.    McLane Has Not Met the High Standard for Terminating Sanctions

McLane misstates the legal standard for awarding terminating sanctions. In requesting terminating sanctions, McLane's claims this is a low standard -- i.e., a finding of bad-faith, willfulness or fault need not be "substantial." (McLane's Motion, pg. 8.) This is wrong. Terminating sanctions under Rule 37 are appropriate only in "'***extreme circumstances'*** and where the violation is 'due to willfulness, bad faith, or fault of the party.'" *See Fair Housing of Marin v. Combs,* 285 F.3d 899, 905 (9th Cir. 2002); *See also Computer Task Group, Inc. v. Brotby,* 364 F.3d 1112, 1115 (9th Cir. 2004). The sanctions must also bear a "reasonable relationship to the subject of discovery that was frustrated by sanctionable conduct." *Navellier v. Sletten,* 262

F.3d 923, 947 (9th Cir. 2001). The facts here do not come close to the "extreme circumstances" required for terminating sanctions.

### 1. *Plaintiffs Acted in Good Faith in Responding to and Propounding Discovery*

The facts here do not present any "extreme circumstances" nor has there been any showing of Plaintiffs' "willfulness, bad faith, or fault." As explained above, Plaintiffs acted in good faith related to discovery assuming a stay was in place while the parties litigated the MCA exemption issue. There was no evidence to the contrary since neither party litigated the merits of the case via discovery until just a month ago. In fact, McLane did not serve merits discovery until well after the Court even issued its MSJ order. Even then, jurisdiction remained unresolved, so Plaintiffs did not believe discovery was appropriate or necessary at that time.

Plaintiffs then requested a dismissal since it appeared the Court no longer had jurisdiction, an understanding confirmed by the Court's own Order to Show Cause on jurisdiction. (Dkt. No. 97). When the Court denied the request for dismissal, Plaintiffs moved forward with litigating two individual wage claims and participated in discovery before the discovery cut-off. Plaintiffs noticed a corporate deposition, served disclosures, and provided substantive responses to McLane's excessive discovery. As explained above, when Plaintiffs tried to confirm the three scheduled depositions – the Plaintiffs' and McLane's corporate deposition – McLane did not reply with any alternative dates or confer at all. Instead, it cancelled its own corporate deposition (with an objection sent by mail) and threatened discovery sanctions by sending a late-night letter and demanding Plaintiffs respond in 24 hours. Plaintiffs responded that they want to meet and confer and that they are willing to be deposed after the discovery cut-off.[2] McLane omits this letter.

Despite McLane's distortion of the facts leading to this Motion, Plaintiffs' conduct cannot plausibly be described as bad-faith or willful disregard of any Court

---

[2] *See* Response to Defendant's Meet and Confer email attached as **Exh. C** to Desai Decl.

order. The delay in scheduling Plaintiffs' depositions is the result of McLane's conduct. It refused to produce a corporate witness and instead sought to bring this motion for sanctions **despite Plaintiffs continued offer to be deposed even after the discovery deadline**. Plaintiffs are not attempting to impede and obstruct McLane's ability to take the Plaintiffs' depositions. Rather, Plaintiffs were simply seeking the deposition that they are entitled to take. McLane cannot shift the blame to the Plaintiffs for its own refusal to produce a witness before the discovery cut-off. This delay was clearly outside of Plaintiffs' control and thus, there is no showing of bad-faith. *Cf. Fair Housing of Marin, supra,* 285 F.3d at 905 ("disobedient conduct not shown to be outside the litigant's control" meets the standard for showing bad-faith).

### 2. McLane's Cited Authorities Are Inapposite and Show that Terminating Sanctions are Not Appropriate

McLane cites several cases that are inapposite and unpersuasive. In these cases, terminating sanctions were issued because of a continuing and repeated abuses of the discovery process, refusal to participate in discovery at all, and habitual violations of court orders. For example, in *Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002), the court affirmed an order of default sanctions against a defendant for discovery violations because he repeatedly flouted basic discovery obligations, violated several court orders, and misrepresented to both counsel and court that the documents he was ordered to produce did not exist, even though he actually possessed the documents. Certainly, this is not the case.

Plaintiffs have never violated discovery or court orders, nor have they failed to meet their basic discovery obligations. McLane's long (and irrelevant) list of alleged "other incidents of misconduct" is of no consequence. These "incidences" were never an issue for McLane because it has never moved to compel additional or supplemental discovery, never asked this Court to issue evidentiary sanctions for prior discovery issues, and never even met and conferred on any potential discovery

disputes. As a result, this Court has never issued sanctions against the Plaintiffs. McLane only now seeks to conveniently cast this ordinary litigation history as "pattern" of misconduct when in fact, its failure to act on these issues shows otherwise.

McLane's citation to *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115-1116 (9th Cir. 2004) is similarly unpersuasive. The court in *Computer Task* deemed that terminating sanctions were proper because defendant engaged in "a consistent, intentional, and prejudicial practice of obstructing discovery" by "not complying ... with repeated court orders," not heeding multiple court warnings, failing to provide clear answers to interrogatories, giving contradictory responses, making frivolous objections, filing frivolous motions and failing to provide information, and failing to pay one of the monetary sanctions. *Id.* Again, none of these facts exist here.

More to the point, none of the cases McLane cites supports its argument that terminating sanctions are proper based on depositions that **Plaintiffs are willing to appear for**, and the substantive discovery responses outlining Plaintiffs' the factual and legal basis of their claims. McLane's supporting authority only provides clarity that terminating sanctions are only warranted in extreme circumstances that are simply not present here. *Cf. Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990) (terminating sanctions were proper where defendants failure to appear at their depositions was compounded by repeated noncompliance with court orders); *In re Heritage Bond Litig.*, 223 F.R.D. 527 (C.D. Cal. 2004) (terminating sanctions proper where defendant's repeatedly refused to produce relevant documents; failed to timely produce privilege logs; and participate in discovery).

//

//

**D.    Terminating Sanctions are Not Proper Because McLane Has Shown No Prejudice and Lesser Sanctions Are Available**

Though a court considers five factors in granting terminating sanctions,[3] the "***the key factors are prejudice and the availability of lesser sanctions.***" *Henry v. Gill Industries, Inc.,* 983 F.2d 943, 948 (9th Cir. 1993) (internal quotation marks omitted).

       *1.    McLane Will Not be Prejudiced Because Plaintiffs Are Willing to Be Deposed*

McLane claims that it has been prejudiced by its inability to take these Plaintiffs' depositions because it has been "hindered its ability to develop critical evidence to craft its defenses against their purported claims." (McLane's Motion, pgs. 9, 13) Specifically, McLane argues that these depositions are necessary so it can defend against these claims. First, McLane can still take these depositions because **Plaintiffs have repeatedly offered to schedule their depositions** in coordination with McLane's corporate witness. All of McLane's caselaw is based on a parties' ***refusal*** to appear for deposition which is not the case here, despite McLane's bizarre insistence that it is.

As to the witnesses, again, the disclosures only include two more witnesses who are McLane's former drivers. As to all the other witnesses, they too are McLane's own current and former drivers or managers for whom they presumably have contact information. For some of these witnesses, only McLane has their contact information since they are McLane's managers and the managers for McLane's restaurant clients (i.e., the Alexandra LKU, manager at Chik-Fil-A in Riverside; Justin LKU, employee at Chik-Fil-A in La Mirada; Joe LKU, manager at Buffalo Wild Wings in Buena Park; and other McLane Managers).

As Plaintiffs explained, these witnesses may have information as to the wage claims because they worked with or oversaw Plaintiffs during their employment with

---

[3] These are (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.) *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1022 (9th Cir. 2002).

McLane.  McLane has failed to articulate what exact prejudice it would experience particularly when it has never sought to depose any of these very same witnesses they have known about since May 2024.

As to the additional documents, nearly all of these documents are duplicates of **McLane's own documents** (i.e. paystubs, pay summaries) or **documents that McLane itself has** because it involves Plaintiffs' workers' compensation claims against McLane (i.e. the workers compensation deposition transcripts). As to the cell phone bills, these were produced as soon as Plaintiffs had them. Significantly, these were never requested in discovery because the individual claims were not yet at issue because of the litigation was centered on the MCA exemption issue. There is no proof (and McLane cites none) that Plaintiffs sought to hide or conceal these documents, and they produced them as soon as practicable before the discovery deadline.

More importantly, Plaintiffs' discovery responses have detailed the legal and factual basis for their claims in excruciating detail setting forth stated their belief that they were not paid for pre- and post-shift time, a detailed estimate of their damages pulled from McLane's own estimates, a long explanation why they worked this unpaid time, and setting forth why they could not and did not take their meal breaks and rest periods.  (*See* **Exh. B**, Plaintiffs' Responses to Special Interrogatories No. 6.) McLane cannot plausibly claim that it lacks the requisite information to defend against these claims, particularly since Plaintiffs are making themselves available for deposition to make any further inquiry about the responses.

In the absence of any other discovery misconduct, dismissal is not a proper remedy for McLane's dissatisfaction with the discovery responses that it does not dispute are substantive, and McLane's odd refusal to take the Plaintiffs' depositions. None of the cases McLane cites supports such a drastic remedy especially since Plaintiffs have participated in discovery and submitted substantive responses to the discovery explaining the basis of their claims, and agreed to be deposed. *Cf. Adams*

*v. Michaels Stores, Inc.*, 2010 WL 4794485 (C.D. Cal. 2010) (terminating sanctions were proper were plaintiff ***never provided any substantive*** responses to interrogatories); *Cf. Computer Task Group, Inc., supra,* 364 F.3d at 1116 (party dismissed for repeated violations of Court orders, and incoherent or unclear answers to interrogatories).

### 2.    *Lesser Remedies are Available*

If the Court deems McLane is entitled to any relief, lesser remedies are certainly available here. The most obvious solution would be to force McLane to accept Plaintiffs' offer to take their depositions in coordination with the McLane's corporate witness. In fact, this lesser remedy is more than a little ironic since Plaintiffs repeatedly offered to schedule their depositions, even after the discovery cut-off.

McLane has not shown that Plaintiffs have inhibited any pattern of bad-faith with regard to these depositions, discovery responses, or disclosures. Plaintiffs offered themselves up for deposition after the discovery cut-off, provided substantive, detailed, discovery responses and document production. And the disclosures contained much of the information McLane already has, i.e. the names of its own former drivers and managers. To the extent anything is "new," McLane retains the opportunity to examine Plaintiffs on these issues via deposition. Contrary to McLane's unsupported argument, there is clearly no threat that Plaintiffs will engage in misconduct. McLane's hyperbole is belied by the facts.

### 3.    *Evidentiary Sanctions are Not Warranted*

For many of the same reasons already articulated above, evidentiary sanctions are not proper here.  Plaintiffs have not refused to appear for deposition so McLane's cited authority on this issue is inapplicable. Rather, Plaintiffs have sought to resolve and avoid this by offering to appear for deposition in coordination with McLane corporate witness. McLane has still not responded to this offer and instead chose to

file this Motion. Despite ambiguity regarding the Court's continued jurisdiction over the individual claims, Plaintiffs provided timely, substantive responses to McLane's discovery explaining the basis for their claims and producing documents, many of which are McLane's own pay documents. Finally, the witnesses listed in Plaintiffs' disclosures are McLane's own current or former employees or clients.  It has long had access to and notice of these witnesses since at least May 2024 and chose not to depose them.  It cannot now claim they are somehow prejudiced by their "late" disclosure.

## IV.    <u>CONCLUSION</u>

For these reasons, the Court should deny McLane's Motion for Termination Sanctions and Evidentiary Sanctions. Moreover, the Court should give serious consideration to issuing sanctions against McLane and its lawyers for engaging in abusive motion practice. Sanction authority under 28 U.S.C. § 1927 empowers courts to sanction "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously … [by compelling them] to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Respectfully submitted,

Dated:  February 7, 2025              DESAI LAW FIRM, P.C.


By: */s/ Aashish Y. Desai*
_____
Aashish Y. Desai
Adrianne DeCastro
Attorneys for Plaintiffs

1

## **<u>CERTIFICATION</u>**

2

3
    The undersigned, counsel of record for Plaintiffs, hereby certifies that this brief

4
contains 4,606 words, which complies with the word limit of L.R. 11-6.1.

5

6
                                */s/ Aashish Y. Desai*

7
                                  Aashish Y. Desai

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF AASHISH Y. DESAI

I, Aashish Y. Desai, declare as follows:

1.     I am managing partner of Desai Law Firm, P.C., lead counsel for Plaintiffs in the above-entitled action. I am admitted to practice before all state courts throughout California and Texas. I am also admitted to practice before numerous federal courts throughout the nation, including the Central District of California, the Ninth Circuit Court of Appeals, and the United States Supreme Court. If called as a witness, I could, and would testify to the following matters, which are based upon my personal knowledge.

2.     Attached here to as **Exhibit A** is a true and correct copy of the *Cardenas v. McLane Foodservice, Inc.*, *Case No. SACV 10-0473-DOC (FFMx)*, Court Ordering Denying McLane's Motion for Terminating Sanctions, Dkt. No. 246.

3.     Attached here to as **Exhibit B** Plaintiff Jordan Madero's Reponses to Interrogatories, Set Two.

4.     Attached here to as **Exhibit C** is a true and correct copy of Plaintiffs' January 22nd response letter to Defendant's late-night letter regarding discovery sanctions.


I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and this declaration was executed this 7th of February at Costa Mesa, California.


                                   /s/ Aashish Y. Desai
                                   Aashish Y. Desai

# EXHIBIT A



# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

O

## CIVIL MINUTES - GENERAL

Case No. SACV 10-0473-DOC (FFMx)                    Date: May 19, 2011

Title: MICHAEL CARDENAS, ET AL v. MCLANE FOODSERVICE, INC. ET AL

PRESENT:
### THE HONORABLE DAVID O. CARTER, JUDGE

|  Julie Barrera  |  Not Present  |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                    NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING DEFENDANT MCLANE FOODSERVICE, INC.'S MOTION FOR TERMINATING SANCTIONS OR ALTERNATIVELY, EVIDENTIARY SANCTIONS, AND MONETARY SANCTIONS AGAINST PLAINTIFFS AND THEIR COUNSEL FOR VIOLATIONS OF DISCOVERY ORDERS

      Before the Court is a Motion for Terminating Sanctions or Alternatively, Evidentiary Sanctions, and Monetary Sanctions Against Plaintiffs and Their Counsel for Violations of Discovery Orders (Docket 203) filed by Defendant McLane Food Service, Inc ("Defendant") in the above-captioned case. The Court finds this matter appropriate for decision without oral arguments. Fed.R.Civ. P. 78; Local Rule 7-15. The Court has considered the moving, opposing, and replying papers and hereby DENIES the Motion.

## I.    Legal Standard

      Federal Rule of Civil Procedure 37 allows for judicial discretion to impose a "wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). These discovery rules, under Federal Rule of Civil Procedure Rule 26 require parties to "supplement or correct" responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing," or "as

MINUTES FORM 11 DOC                    Initials of Deputy Clerk: jcb
CIVIL - GEN                            Page 1 of 3

ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B).

  A court responding to a party's failure to comply with these discovery obligations can
further impose additional "just orders" that may "direct[] that the matters embraced in the order or other
designated facts be taken as established for purposes of the action . . . .; (ii) prohibit[] the disobedient
party from supporting or opposing designated claims or defenses, or from introducing designated
matters in evidence; (iii) [strike] pleadings in whole or in part; (iv) stay[] further proceedings . . . ; (v)
dismiss the action or proceeding in whole or in part; or (vii) treat[] as contempt of court the failure to
obey any court order except an order to submit to a physical or mental examination." Fed. R. Civ. P.
37(b)(2)(A)(i)-(vii).

  However, because there is a strong preference for adjudicating cases on their merits,
courts may only dismiss a case or enter a default judgment as a sanction where the violation is "due to
willfulness, bad faith, or fault of the party." *United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr.
Co.*, 857 F.2d 600, 603 (9th Cir. 1988) (quoting *Wyle*, 709 F.2d at 589). The Ninth Circuit has
consistently employed a five factor test to determine whether dismissing a case as a sanction is
appropriate. The factors are: "(1) the public's interest in expeditious resolution of litigation; (2) the
court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy
favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *In re
Exxon Valdez,* 102 F.3d 429, 433 (9th Cir. 1996). Because the first two factors almost always weigh in
favor of granting default judgment and the fourth factor against granting default judgment, the key
factors in determining whether a default judgment should be entered are the risk of prejudice and the
availability of less drastic sanctions. *See Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1412 (9th
Cir. 1990); *Wanderer v. Johnston,* 910 F.2d 652, 656 (9th Cir. 1990).

  Dismissal is considered an appropriate response "in extreme circumstances" when a party
has "engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle*, 709 F.2d
at 589. In order to make determinations about the party's conduct, a court may "make inferences and
credibility determinations from evidence received." *Wyle*, 709 F.2d at 592.

  Furthermore, the Supreme Court has clarified that a district court also has the inherent
power to issue sanctions to parties or attorneys who act in bad faith. *See Chambers v. NASCO*, 501
U.S. 32, 45-46, n.10 (1991) (noting that district courts have the inherent authority to dismiss a lawsuit
or assess attorney's fees at their discretion). As the Ninth Circuit explained, "bad faith" accounts for "a
broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 991(9th Cir. 2001).

## II. Discussion

### A. Terminating Sanctions

  Defendant has not even come close to establishing the appropriateness of terminating

MINUTES FORM 11 DOC            Initials of Deputy Clerk: jcb
CIVIL - GEN                  Page 2 of 3

sanctions in this case. As described above, the decisive factors in determining the appropriateness of terminal sanctions are the risk of prejudice and the availability of less drastic sanctions. *Adriana Int'l Corp.*, 913 F.2d at 1412. There has been a minimal risk of prejudice to Defendants in missing a handful of the forty depositions they demanded in a two-week time-frame or from the lack of verification forms from individuals who responded to the interrogatories. Furthermore, Defendant certainly has the availability of other sanctions it can pursue, though, as the Court determines below, even minimal sanctions are unwarranted here.

Indeed, the Court can find no cases where terminal sanctions were awarded under similar circumstances. *See, e.g.*, *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905-06 (9th Cir. 2002)(affirming a district court's granting of terminal sanctions against a defendant who "flouted even his basic discovery obligations, often violating court orders", who refused to produce documents, and made misrepresentations to counsel and the court).

## B.    Other Sanctions

Defendant has also not proved that evidentiary or other monetary sanctions are warranted. There has been no showing of bad faith on the part of Plaintiffs, whom the Court believes have attempted to comply with the burdensome demands placed on them by Defendant's requests. Though the Court does not excuse a lack of compliance, it nonetheless does not find that Defendants have shown that sanctions of any sort are appropriate.

## III.    Disposition

For the reasons stated above, the Court hereby DENIES Defendant's Motion.

The Clerk shall serve this minute order on all parties to the action.

# EXHIBIT B

**From:** **aashish desai-law.com** aashish@desai-law.com 📎
**Subject:** Re: Madero, et al. v. McLane Foodservice, Inc.
**Date:** January 22, 2025 at 10:50 AM
**To:** Sakaue, Kerri ksakaue@bakerlaw.com
**Cc:** adrianne desai-law.com adrianne@desai-law.com, Kane, Matthew mkane@bakerlaw.com, Kim, Sylvia sjkim@bakerlaw.com, Beverlin, Amy abeverlin@bakerlaw.com, sonia desai-law.com sonia@desai-law.com

Matt:

It is crucial to highlight the shortcomings in McLane's handling of the depositions of the Plaintiffs. Initially, McLane failed to schedule depositions for all of 2024, which reflects a lack of foresight and planning. Moreover, it was McLane—not the Plaintiffs—who took the initiative to remove the first depositions from the calendar, mistakenly believing they lacked pertinent information regarding the FLSA exemption. Indeed, McLane never issued its initial disclosures and never challenged Plaintiffs on this issue either. Perhaps McLane also believed the federal court lacked supplemental jurisdiction over the state law claims after granting summary judgment on the federal question: the FLSA claims. Indeed, on January 15, 2025, in *Royal Canin U.S.A., Inc. v. Wullschleger*, the US Supreme Court held that even when plaintiffs intentionally amend their complaint after removal to eliminate federal claims, it immediately devests the federal court of supplemental jurisdiction to hear its state-law claims. *Royal Canin U.S.A., et al. v. Wullschleger*, No. 23-677 (January 15, 2025). Thus, as we argued, supplemental jurisdiction is not a discretionary call -- after the federal question has been decided -- and further action in the federal case may well prove futile.

In any event, instead of proactively addressing the situation, McLane allowed months to pass without action, ultimately scheduling depositions on the **very last day** of the discovery cut-off. This approach not only eliminated any opportunity for compromise but also hindered the potential for necessary legal motions.

To make matters worse, McLane chose not to appear for its corporate deposition this week, seemingly attempting to evade responsibility altogether. This pattern of behavior raises serious questions about McLane's commitment to a fair and transparent legal process. It is imperative that we hold McLane accountable for these actions to ensure that all parties are treated justly.

You did not respond to our request to discuss rescheduling all the depositions. Instead, you sent a letter late last night threatening to file a motion for Rule 37 sanctions if we did not respond in 24 hours.

Your actions are in violation of the Court's Civil Trial Scheduling Order and the Central District's Local Rules.

The Court set fact discovery cut-off (including hearing of discovery motions) for **January 24, 2025**. Civil Trial Scheduling Order, Dkt. No. 79. The discovery cut-off date is the last day to complete discovery. It is also the last day for hearing any discovery motion.  Civil Trial Scheduling Order, Section II Discovery, pg.2-3 (emphasis supplied). Thus, it is completely improper, and perhaps sanctionable, for McLane to bring any such motion at this point. This is particularly ironic given that McLane's motion to strike the class allegations lays blame with Plaintiffs for not moving quicker to conduct their class discovery – i.e., before the mandatory class certification cut-off date set by the *same* Civil Trial Scheduling Order that set the January 24, 2025 discovery cut-off date. McLane apparently wants only *part* of the Scheduling Order enforced.

Per your request under Local Rule 7-3, I can discuss this next week – either Tuesday or Wednesday after 1. As you know, the "conference must take place at least 7 days prior to the filing" of any motion. L.R. 7-3 (Conference of Counsel Prior to Filing of Motions).

We therefore ask and expect McLane to follow both the Central District's Local Rules and Judge Kato's Civil Trial Scheduling Order before filing any Rule 37 motion.


**Aashish Desai**
Managing Partner



**Costa Mesa Office**

3200 Bristol Street, Suite 650 | Costa Mesa, CA 92626

T (949) 614-5830 | F (949) 271-4190

**Austin Office**

2025 Guadalupe Street, Suite 260 | Austin, TX 78705

T (512) 370-4023 | F (512) 687-3499

[desai-law.com](desai-law.com)

CONFIDENTIALITY NOTICE: The information in this e-mail (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this e-mail is prohibited except by or on behalf of the intended recipient. If you have received this email in error, please notify me immediately by reply email, delete this email, and do not disclose its contents to anyone.

On Jan 21, 2025, at 6:57 PM, Sakaue, Kerri <ksakaue@bakerlaw.com> wrote:

Counsel, please see the attached time-sensitive correspondence.

Thanks,
Kerri

**Kerri Sakaue**
Associate

BakerHostetler

1900 Avenue of the Stars | Suite 2700
Los Angeles, CA 90067-4301
T +1.310.979.8488

[ksakaue@bakerlaw.com](ksakaue@bakerlaw.com)
[bakerlaw.com](bakerlaw.com)





This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost,

destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

**2025.01.21 LR 7-3 Letter re
Motion for Rule 37 Sanctions.pdf** 

# EXHIBIT C

DESAI LAW FIRM, P.C.
Aashish Y. Desai, Esq. (SBN 187394)
Adrianne De Castro, Esq. (SBN 238930)
3200 Bristol St., Suite 650
Costa Mesa, CA 92626
Telephone:  (949) 614-5830
Facsimile:   (949) 271-4190
aashish@desai-law.com
adrianne@desai-law.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN OROZCO MADERO and ESTEBAN OROSCO on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>McLANE FOODSERVICE, INC., a Texas Corporation, and DOES 1-10, inclusive,<br><br>          Defendants. | Case No. 5:24-cv-00073-KK-DTB<br><br>Hon. Kenly Kiya Kato<br><br><br>**PLAINTIFF JORDAN OROZCO MADERO'S RESPONSES TO DEFENDANT'S INTERROGATORIES, SET TWO** |

1

| | |
|---|---|
| **PROPOUNDING PARTY:** | **DEFENDANT McLANE FOODSERVICE, INC.** |
| **RESPONDING PARTY:** | **PLAINTIFF JORDAN OROZCO MADERO** |
| **SET NO.:** | **TWO** |

**INTRODUCTORY STATEMENT**

1.      These responses are made solely for the purpose of this action.  Each response is subject to all objections as to competence, relevance, materiality, propriety, admissibility and any or all other objections and grounds that would require the exclusion of any statement herein, if any admission was asked for, or in any statement contained herein, was made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at time of trial.

2.      This responding party is responding to all interrogatories to the extent that the information asked for is known.   However, this responding party's discovery and investigation in preparation for trial in this matter has not been completed as of the date of these responses to interrogatories and, therefore, this responding party does not propose to state herein anything more than information presently known and discovered.

3.      This responding party reserves the right to continue discovery and investigation in this matter for facts, witnesses and supporting data that may recall information, which if the responding party had presently within her knowledge, would be included in these responses.   Consequently, to the extent that the interrogatories herein ask for "all facts" or the name of "all persons" or the identity of "all documents", etc. they are responded to fully insofar as the information is presently available to the responding party; and this responding party is not precluded from presenting at trial information discovered after the date of these responses to interrogatories.

4.      This preliminary statement is incorporated into each of the responses

set forth below.

5.    Plaintiff objects to Defendant's interrogatories on the ground that discovery is still ongoing.  The responses set forth below are, therefore, based solely upon the facts and information presently known and available to Plaintiff. Discovery, investigation, research and analysis are ongoing and may disclose additional facts, establish entirely new factual or legal contentions or possibly lead to additions, variations and changes to this response.  Accordingly, without obligating himself to do so, Plaintiff hereby reserves the right to change or supplement this response as additional documents, facts and/or contentions are discovered, revealed, recalled or other ascertained.  Moreover, Plaintiff hereby reserves the right to refer to conduct discovery with reference to, or to offer into evidence at trial, any and all facts or other information related to this action irrespective of whether such information is disclosed herein.

6.    Plaintiff objects to Defendant's interrogatories to the extent they call for disclosure of information or documents that are privileged or protected by the attorney-client privilege, the work product doctrine, the right of privacy recognized under Article I, Section I of the California Constitution, or any other Constitutional statutory or common law privilege or protection.  In addition, Plaintiff objects to Defendant's interrogatories to the extent that they seek information that reflects or discloses trade secrets or other confidential or proprietary information.  Plaintiff will not necessarily repeat this objection in each of the individual responses below. Nonetheless, Plaintiff does not intend to waive his right to assert these or other applicable privileges, and intend that all of his responses be subject to these objections.

7.    By these responses, Plaintiff makes no admission concerning the relevance or admissibility of any of the information contained herein or any of the subjects that are the subject of Defendant's interrogatories.  Plaintiff hereby reserves the right to make all pertinent evidentiary objections with regard to such

matters at trial or at any other stage of the proceedings.

8.    Plaintiff objects generally to Defendant's interrogatories to the extent that they seek information not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

9.    Plaintiff specifically reserves his right to produce documents in lieu of answers, as provided by the *Federal Rules of Civil Procedure*.

## **INTERROGATORY RESPONSES**

**INTERROGATORY NO. 6:**

Set forth fully and in detail all of the relief YOU seek in the COMPLAINT, including the dollar amounts and factual and legal bases for all damages sought.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiff objects to this interrogatory on the grounds that this request calls for legal conclusion and is vague and ambiguous. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Plaintiffs allege they are owed wages under California Labor Code §§ 1194, 1197, 1197.1 and Wage Order 9 because  Defendant willfully failed to pay Plaintiffs accrued wages for all hours of work performed as required under the California Labor Code, including Labor Code §§ 221, 223, and 1194, and paragraph 4 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order. These wages shall be calculated based on Plaintiff's employment period with the McLane.  Plaintiff Madero worked for Defendant from approximately August 2019 to September 11, 2023.  Plaintiff Orosco worked for Defendant from approximately July 2018 to

November 10, 2023.

Plaintiffs allege minimum wages based on the following.

- **Pre-shift time:** Plaintiffs were not paid for performing all their pre-trip work. Plaintiffs are required to make a pre-shift inspection to ensure that (1) The tow-bar or saddle-mount connections are properly secured to the towed and towing vehicle;  (2) They function adequately without cramping or binding of any of the parts; and (3) The towed motor vehicle follows substantially in the path of the towing vehicle without whipping or swerving.  Additionally, Plaintiffs are required to inspect the following to ensure that they are safe: Service brakes, including trailer brake connections; Parking (hand) brake; Steering mechanism; Lighting devices and reflectors; Tires; Horn; Windshield wiper or wiper; Rear-vision mirror or mirrors; Coupling devices; Wheels and rims; and Emergency equipment. Plaintiffs must also confirm the following components are in good working order when the driver accepted the equipment: Service brake components that are readily visible to a driver performing as thorough a visual inspection as possible without physically going under the vehicle, and trailer brake connections; Lighting devices, lamps, markers, and conspicuity marking material; Wheels, rims, lugs, tires; Air line connections, hoses, and couplers; King pin upper coupling device; Rails or support frames; Tie down bolsters; Locking pins, clevises, clamps, or hooks ; and Sliders or sliding frame lock.

- **Post-trip work:** Plaintiffs were also not paid for all their post-trip work including ensuring that tow-bars and saddle-mounts are disassembled and inspected for worn, bent, cracked, broken, or missing parts. And to identify any parts that need suitable repair or replacement. Plaintiffs are also required to report on the following parts and accessories: (i) Service brakes including trailer brake connections; (ii) Parking brake; (iii) Steering mechanism; (iv) Lighting devices and reflectors; (v) Tires; (vi) Horn; (vii) Windshield wipers; (viii) Rear vision mirrors; (ix) Coupling devices; (x) Wheels and rims; and (xi)

Emergency equipment.

- **Working on "rest breaks":** Plaintiffs were also required to work by monitoring their communication devices, and ensuring the safety of the truck and inventory during their "Rest breaks" such that it was not a legally compliant rest break.

- **Working on "meal breaks":** Similarly, Plaintiffs were also required to work by monitoring their communication devices, and ensuring the safety of the truck and inventory during their "meal breaks" such that it was not a legally compliant meal break.

- **Sleeper Berth:** Plaintiffs were also not paid properly for the time they were required to be in the sleeper berth. McLane's team-driving approach (two Plaintiffs assigned to one route) results in one person driving while the other driver is off duty in the truck's sleeper berth. The Plaintiffs can then switch off when the off-duty driver has completed the required 10-hour period. McLane's pay practice does not separately pay Plaintiffs for their **off-duty** sleeper berth time. McLane broke the law in two ways. First, Plaintiffs are required to have 10 hours of rest. However, McLane sometimes scheduled Plaintiffs to begin routes such that Plaintiffs would not have the full amount of rest, and thus, could not begin "on-duty" driving time per DOT regulations. Plaintiffs were therefore instructed to come to the yard, log-in "off-duty" and finish out their 10 hours or rest in the sleeper berth on-site. Plaintiffs were not paid for this time even though they were required to be in the yard, in McLane's truck to finish their rest time so that their DOT clocks could re-set and they could begin driving again. Second, Plaintiffs assigned to sleeper berth routes often worked to help the other driver load and unload cargo even though they were logged in as "off-duty." For example, Plaintiffs would routinely help their teammate driver with mapping/navigation issues or help load or unload at stops to comply with McLane's tight delivery schedules. McLane's dispatchers and managers

would also routinely call Plaintiffs while they were in the sleeper berth to discuss work-related issues such as scheduling details for upcoming routes. This violates Labor Code § 226.2 which requires separate hourly pay for rest and recovery periods and "nonproductive" time worked by piece-rate employees. Pursuant to LC 226.2 employees must be separately compensate for "other nonproductive time" which is defined as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a price-rate basis." During these rest periods, Plaintiffs could not drink alcohol, have a guest or pet in the cab or carry a personal weapon. Moreover, under McLane's strict policy, Plaintiffs were also required to monitor communication devices and maintain security of the truck and its inventory "at all times" -- even when in the sleeper berth. Helping their teammate driver can take approximately 30-45 minutes for every stop; about 3-4 for every route.  McLane's routes necessitated both drivers assisting because Plaintiffs risked not completing the route within their designated hours.

- **Layover Time:** Plaintiffs were also required to work during layover time because they were required to maintain the safety of their truck and inventory and monitor their communication devices. Plaintiffs were not allowed to drink alcohol, have a guest or pet in the cab or carry a personal weapon

- **Unpaid waiting and delay time:** Plaintiffs were also not paid for the time spent waiting for McLane's customers when dropping off cargo and delays and traffic on the road.

Plaintiffs were not paid for this non-driving work because of McLane's unwritten policy and practice not to record this time.  McLane's managers and supervisors trained Plaintiffs to not record such time to conserve DOT 14-hour working time limit, indeed only 11 hours many be used for driving with **3 for non-driving tasks**. These trainers and other drivers include Nestor Olivas, and Mike Cardenas. Specifically, Plaintiffs performed "ride-alongs" with more senior drivers

to show Plaintiff how to walk past check-in clocks at McLane's distribution center and conduct pre-shift activities, such as obtaining "keys" for the route, obtaining manifests and other paperwork, and performing the DOT pre-shift duties all **before clocking-in** for the day on PeopleNet on their trucks. Plaintiffs were therefore "working for free" to save DOT hours. McLane management including Andrew Martinez, Ryan LKU, and Jose LKU, knew Plaintiffs were working these unpaid hours because they saw Plaintiffs enter and begin working before even logging in. McLane management did not instruct them to log that time.

McLane also knew Plaintiffs were working this time because it required its drivers' time sheets *be the same* as the electronic records on PeopeNet so as to prevent Plaintiffs from exceeding their DOT time requirements, even if the records were not accurate. For example, McLane would schedule back-to-back trips where the drivers 10-hours of rest would be compromised if the driver did not "fudge the records" for McLane's benefit. Because of the way McLane scheduled Plaintiffs' routes, Plaintiffs were at risk of exceeding their HOS if they recorded their working time accurately.

Defendant also reimbursed Plaintiffs for rest breaks at their hourly rate, instead at their "regular rate" as required by California law. Plaintiffs seek any unpaid wages resulting from this incorrect rate of pay.

Plaintiffs clarify that the above estimates are the ***minimum*** amounts of monetary relief they are seeking subject to proof at trial. For example, Plaintiffs estimate that they worked more than an average of 1 hour of unpaid time in a day because they were also required to work through their meal and rest breaks because they were required to monitor their truck and McLane's cargo.

Plaintiff also seeks penalties and actual damages California Labor Code §§ 226 and 226.2(a)(2) and paragraph 7(B) of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order because McLane failed to issue accurate, itemized statements.

McLane's wage statements failed to accurately itemize total hours worked with respect to the off-the-clock work. Further, Section 226(a)(3) requires inclusion of "the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis. However, McLane did not include any breakdown of piece-rate compensation, instead including only line entries for "cases" and "miles" without any explanation of its calculation or rates. *Aguirre v. Genesis Logistics*, 2013 U.S. Dist. LEXIS 189815m at *28 (C.D. Cal. July 3, 2013) (nothing in Section 226 excuses the employer "from including the requisite information 'either as a detachable part of the check, draft, or voucher paying the employee's wages simply because additional documentation may be available upon required to an employee"); *Ward v. United Airlines, Inc.,* 986 F.3d 1234, 1237-38 (9th Cir. 2021) (must be able to "promptly and easily determine these items of information without reference to other documents or information"). Accordingly, Plaintiffs are unable to determine whether they were paid properly under Section 226(a)(3). Moreover, Section 226.2 adds additional requirements to those set forth in Section 226(a) for wage statements for "employees who are compensated on a piece-rate basis for any work performed during a pay period." Here, McLane's wage statements plainly do not "separately list productive and nonproductive time" S*ee* 226.2(a)(2)(B). In fact, McLane does not even track Plaintiffs' nonproductive time as required.

Plaintiffs further seek unpaid reimbursements under Labor Code § 2802 for Defendant's failed to indemnify Plaintiffs for the expenses related to using their personal smart phones and maintaining access to the internet.

Plaintiffs further seek reasonable attorneys' fees and costs pursuant to Civil Procedure Code § 1021.5 and California Labor Code.

By McLane's own calculations, (Dkt. No. 103) the minimum wage claims are ***at least*** worth the following –

**<u>Minimum Wage</u>**:

*Madero: $9,489.30 [$14.10 x 1 hour per workday x 673 workdays].*

*Orosco: $10,885.20 [$14.10 x 1 hour per workday x 772 workdays].*

      **Liquidated Damages**:

*Madero: $9,842.63 [$14.625 x 1 hour per workday x 673 workdays].*

*Orosco: $11,290.50 [$14.625 x 1 hour per workday x 772 workdays].*

**Wage Statement Claims:**

      By McLane's own calculation the wage statement claims are worth –

*Madero: $1,750*

*Orosco: $2,350*

**Reimbursement Claims:**

      Plaintiffs Madero worked approximately 48 months, and Orosco worked approximately 63 months.

      Plaintiff Madero's monthly cell phone bill is $ 80 per month and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $ 16 per month. Thus, his damages are approximately $ 768 for his entire employment.

      Plaintiff Orosco's monthly cell phone bill is $ 82.26, and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $17.25 per month. Thus, his damages are approximately $1,036.48 for his entire employment.

**INTERROGATORY NO. 7:**

      State how all monetary relief YOU claim is owed to YOU by DEFENDANT is calculated.

**RESPONSE TO INTERROGATORY NO. 7:**

      Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows: *See* Response to Rog. No. 6.

**INTERROGATORY NO. 8:**

IDENTIFY each and every PERSON whom YOU contend has knowledge of, or information RELATING TO, the facts ins support of YOUR allegations in the COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Plaintiffs believe the following individuals have knowledge about his claims:

- Israel Lopez Medina;
- Israel Jimenez Jr.;
- Robert Lewis;
- Donald Lyon;
- Jose Rea;
- Ibraham LKU;
- Marcello Santos;
- Cesar Orosco;
- Edgar Banda;
- Javier Garcia;
- Juan Ortiz;
- Joe Lopez;
- Jason Hampton;
- Andrew Martinez;
- Michael Cardenas;
- Alexandra LKU, manager at Chik-Fil-A in Riverside;

- Justin LKU, employee at Chik-Fil-A in La Mirada;
- Joe LKU, manager at Buffalo Wild Wings in Buena Park;
- Sarah LKU, manager at Chick-fil-A;
- Other drivers who worked with the Plaintiffs;
- And Other McLane Managers.

Discovery and investigation are continuing.

**INTERROGATORY NO. 9:**

For each PERSON identified in response to Interrogatory No. 8, state in detail the facts that YOU know, contend, and/or believe each such person has.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Generally speaking, these individuals, specifically the drivers, have knowledge about their own driving experience with McLane, McLane's unwritten practice and policies for recording time and clocking in and out of shifts, their own unpaid working time, the sleeper berth time and how and if they were paid for this time, the amount of time it took to complete routes, McLane's unwritten practices and policies related to meal and rest breaks, and the number of hours they worked. They can also provide testimony about the paystubs they received. The McLane management witnesses have information as to McLane's policies and procedures.

**INTERROGATORY NO. 10:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to clock out for YOUR meal break and continue

12

1  working without compensation, including the amount of uncompensated time YOU

2  worked on each DATE.

3  **RESPONSE TO INTERROGATORY NO. 10:**

4      Plaintiff objects to this interrogatory on the grounds that it is overbroad,

5  burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

6  the grounds that the requested information is equally available to the Defendants.

7      Without waiving and subject to the general and continuing objections set

8  forth above and the specific response and objections herein, and after conducting a

9  diligent search and making a reasonable inquiry, Plaintiff responds as follows:

10      Throughout the time Plaintiffs worked for McLane, they were regularly

11  required to checkout for meal periods, yet McLane still required the, to remain

12  responsible for the safety of their trucks and loads and monitor their communication

13  devices at all times throughout their shifts, including during meal periods.

14  Defendant, in fact, required Plaintiffs to remain available to respond to work

15  demands at any time, including meal breaks. Thus, every time they clocked out for

16  meal breaks, they were technically still on-duty and working during their meal

17  breaks.

18

19  **INTERROGATORY NO. 11:**

20      State each and every DATE on and after January 12, 2020 on which YOU

21  contend that YOUR meal break was interrupted by work, including the amount of

22  uncompensated time YOU worked on each DATE.

23  **RESPONSE TO INTERROGATORY NO. 11:**

24      Plaintiff objects to this interrogatory on the grounds that it is overbroad,

25  burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

26  the grounds that the requested information is equally available to the Defendants.

27      Without waiving and subject to the general and continuing objections set

28  forth above and the specific response and objections herein, and after conducting a

diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, they were regularly required to checkout for meal periods, yet McLane still required then to remain responsible for the safety of their trucks and loads, and monitor their communication devices "at all times" throughout their shifts, including during meal periods.  Defendant, in fact, required Plaintiffs to remain available to respond to work demands at any time, including meal breaks. Thus, every time they clocked out for meal breaks, they were technically still on-duty and working during their meal breaks.

**INTERROGATORY NO. 12:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to perform work prior to clocking in without compensation, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE  TO INTERROGATORY NO. 12:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, Plaintiffs regularly performed work prior to clocking in, i.e. "pre-shift" work as described above in response to Interrogatory No, 6. This occurred every shift and Plaintiffs were not paid for this work. Plaintiff followed McLane's unwritten practice of not recording this time because they were worried above exceeding their HOS maximums because of McLane's routes. In other words, McLane's routes required them to

work long hours such that Plaintiffs, were at risk of exceeding the HOS requirements if they accurately recorded all their work time, including pre- and post-shift work they were required to perform. Plaintiffs also incorporate their full Response to  Rog. No. 6.

**INTERROGATORY NO. 13:**

State each and every DATE on and after January 12, 2020 on which YOU contend that YOU were required to perform work after clocking out without compensation, including the amount of uncompensated time YOU worked on each DATE.

**RESPONSE TO INTERROGATORY NO. 13:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:

Throughout the time Plaintiffs worked for McLane, Plaintiffs regularly performed work prior to clocking in, i.e. "post-shift" work as described above in response to  Interrogatory No. 6.  This occurred every shift and Plaintiffs were not paid for this work. Plaintiff followed McLane's unwritten practice of not recording this time because they were worried above exceeding their HOS maximums because of McLane's routes.  In other words, McLane's routes required them to work long hours such Plaintiffs were at risk of exceeding the HOS requirements if they accurately recorded all their work time, including pre- and post-shift work they were required to perform. Plaintiffs also incorporate their full Response to  Rog. No. 6.

//

15

**INTERROGATORY NO. 14:**

State each and every type of business expense that YOU contend DEFENDANT failed to reimburse YOU for on and after January 12, 2020, including the dollar amount of each type of unreimbursed business expense.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiff objects to this interrogatory on the grounds that it is overbroad, burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on the grounds that the requested information is equally available to the Defendants.

Without waiving and subject to the general and continuing objections set forth above and the specific response and objections herein, and after conducting a diligent search and making a reasonable inquiry, Plaintiff responds as follows:  It was reasonably necessary for Plaintiffs to use their personal cell phones to communicate with McLane during their shifts because McLane's dispatch and management called and texted them consistently on their personal cell phone to discuss work matters, as explained more fully in response to   Rog. No. 15. Plaintiffs make the following estimate of their reimbursement claims:

**Reimbursement Claims:**

Plaintiffs Madero worked approximately 48 months, and Orosco worked approximately 63 months.

Plaintiff Madero's monthly cell phone bill is $ 80 per month and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $ 16 per month.  Thus, his damages are approximately $ 768 for his entire employment.

Plaintiff Orosco's monthly cell phone bill is $ 82.26 and he estimates that he spent approximately 20% of the time on this phone for work, for a total amount of $17.25 per month.  Thus, his damages are approximately $1,036.48 for his entire employment.

**INTERROGATORY NO. 15:**

State all facts that support, refute or otherwise RELATE TO YOUR claim that YOU were "required ... to be available to communicate with [DEFENDANT] while driving, as alleged in paragraph 107 of your complaint.

**RESPONSE TO INTERROGATORY NO. 15:**

McLane's own management called and texted Plaintiffs on their personal cell phones during their routes to discuss work-related issues. Thus, Plaintiffs understood that it was reasonable and necessary to use their personal cell phones to communicate with McLane since McLane was calling them on their personal devices while driving. Also, Plaintiffs were told by McLane Human Resources and Rudy Blanco when they were hired by McLane that a cell phone is required for work.

McLane's dispatch unit including Ryan LKU and Jose Lopez would call Plaintiffs during their routes and even during their sleeper berth hours to discuss their schedule and routes for the following week or day, inform them about customer complaints, convey customer messages, confirm arrival times, ask them to fill in for drivers, and called to discuss other human resources issues like trainings and paperwork. McLane also called Plaintiffs on their cell phones if there was an issue on their current route with a customer or stop. This was a regular, daily occurrence. Plaintiffs cannot recall ever using the messaging system in the truck and only recalls receiving mass texts on this system about road closures or emergencies sent to all drivers. In fact, Plaintiffs understand that the in-truck devices were locked except to receive mass messages, and routing information.

Plaintiffs did not request reimbursement for cell phones because he understood from other drivers that McLane does not pay for these expenses. McLane did not pay Plaintiffs anything for the use of their cell phones, and Plaintiffs are not aware of any reimbursement policy related to the use of their personal cell phones.

**INTERROGATORY NO. 16:**

State all facts that support, refute or otherwise RELATE TO YOUR claim that DEFENDANT "failed to indemnify [YOU] for [YOUR] expenses related to using [YOUR] personal smart phones, and maintaining access to the internet," as alleged in Paragraph 106 of YOUR COMPLAINT.

**RESPONSE TO INTERROGATORY NO. 16:**

McLane's own management called and texted Plaintiffs on their personal cell phones during their routes to discuss work-related issues. Thus, Plaintiffs understood that it was reasonable and necessary to use their personal cell phones to communicate with McLane since McLane was calling them on their personal devices while driving. Also, the Plaintiffs were told by McLane Human Resources and Rudy Blanco when they were hired by McLane that a cell phone is required for work.

McLane's dispatch unit including Ryan LKU and Jose Lopez would call Plaintiffs during their routes and even during their sleeper berth hours to discuss their schedule and routes for the following week or day, inform them about customer complaints, convey customer messages, confirm arrival times, ask them to fill in for drivers, and called to discuss other human resources issues like trainings and paperwork. McLane also called Plaintiffs on their cell phones if there was an issue on their current route with a customer or stop. This was a regular, daily occurrence. Plaintiffs cannot recall ever using the messaging system in the truck and only recalls receiving mass texts on this system about road closures or emergencies sent to all drivers. In fact, Plaintiffs understand that the in-truck devices were locked except to receive mass messages, and routing information.

Plaintiffs did not request reimbursement for cell phones because he understood from other drivers that McLane does not pay for these expenses. McLane did not pay Plaintiffs anything for the use of their cell phones, and Plaintiffs are not aware of any reimbursement policy related to the use of their

1   personal cell phones.

2

3   **INTERROGATORY NO. 17:**

4       For each of YOUR responses to DEFENDANT's Requests for Admission,

5   Set Two, served concurrently with these interrogatories that is not an unqualified

6   admission, state all facts that support, refuse, or otherwise relate to each such

7   response.

8   **RESPONSE TO INTERROGATORY NO. 17:**

9       Plaintiff objects to this interrogatory on the grounds that it is overbroad,

10  burdensome and oppressive. Additionally, Plaintiff objects to this interrogatory on

11  the grounds that the requested information is equally available to the Defendants.

12  Plaintiffs have already set forth facts in response to prior discovery and their RFAs.

13  Plaintiffs refer Defendant to the responses to RFAs, Set Two.

14

15  **INTERROGATORY NO. 18:**

16      For each of YOUR responses to DEFENDANT's Requests for Admission,

17  Set Two, served concurrently with these interrogatories that is not an unqualified

18  admission, IDENTIFY all DOCUMENTS that support, refute or otherwise

19  RELATE to each such response.

20  **RESPONSE TO INTERROGATORY NO. 18:**

21      Plaintiffs have produced all responsive documents in their possession,

22  custody and control at this time.  These documents include text messages, paystubs,

23  pay records, logs, cell phone bills, and pages of an employee handbook.

24  Additionally, Plaintiffs intend to rely on Defendant's own documents it produced.

25  Plaintiffs reserve the right to supplement this production.

26

27  //

28  //

Dated:  January 21, 2025                          DESAI LAW FIRM, P.C.

By: _____ */s/ Aashish Y. Desai* _____
       Aashish Y. Desai
       Adrianne De Castro
       Attorneys for Plaintiffs

# PROOF OF SERVICE

I, Sonia Nava, declare

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action; my business address is Desai Law Firm, P.C., 3200 Bristol Street, Ste. 650, Costa Mesa, California 92626.

On January 21, 2025, I served the foregoing document(s):

**PLAINTIFF MADERO'S RESPONSES TO DEFENDANT'S INTERROGATORIES SET TWO**

| | |
|---|---|
| [x] | **By Mail:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid , the United States mail at Costa Mesa, California addressed as set forth below. |
| [ ] | **Delivery Service:** by placing the document(s) listed above in a sealed Delivery Service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Delivery Service agent for next day delivery. |
| [x] | **By E-Mail or Electronic Transmission:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail address above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful |

BAKER & HOSTETLER LLP
Matthew C. Kane, SBN 171829
Amy E. Beverlin, SBN 284745
Kerri H. Sakaue, SBN 301043
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Emails: *mkane@bakerlaw.com*
*abeverlin@bakerlaw.com*
*ksakaue@bakerlaw.com*

BAKER & HOSTETLER LLP
Sylvia J. Kim, SBN 258363
Transamerica Pyramid
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Email: *sjkim@bakerlaw.com*

Under the penalty of perjury under the laws of the United States of America and the State of California that the above is true and correct.

*Sonia Nava*
Sonia Nava

1